JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ann Smith

**DEFENDANTS**
New Jersey Education Assoc, National Education Association, Clearview Regional High School District Board, Phil Murphy, Burbir S.

**(b)** County of Residence of First Listed Plaintiff   Gloucestor
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Mercer
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Wally Zimonlong: Zimolong LLC, P.O Box 552, Villanova, PA 19085 (215) 665-0842. Jonathan F. Mitchell: Mitchell Law PLLC 106 East Sixth Street Suite 900, Austin, Texas 78701, (512) 686-3940

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability   ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine   Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -   Product Liability | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | Medical Malpractice | Leave Act | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | 26 USC 7609 | ☒ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other   ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983, 28 U.S.C. § 2201
Brief description of cause:
Class-action lawsuit challenging the constitutionality of "representation fees" imposed on non-union members

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Unspecified amount

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
June 11, 2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **Ann Smith**, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>**New Jersey Education Association**; **Clearview Education Association**, as representative of the class of all chapters and affiliates of the New Jersey Education Association; **National Education Association**; **Clearview Regional High School District Board of Education**, as representative of the class of all school boards in New Jersey; **Phil Murphy**, in his official capacity as Governor of New Jersey; **Gurbir S. Grewal**, in his official capacity as Attorney General of New Jersey; **Joel M. Weisblatt**, **Paul Boudreau**, **Paula B. Voos**, **John Bonanni**, and **David Jones**, in their official capacities as chairman and members of the New Jersey Public Employment Relations Commission; **John F. Tesauro**, **Raymond T. Bolanowski**, and **Charles J. DeCicco**, in their official capacities as chairman and members of the New Jersey Public Employment Relations Commission Appeal Board,<br><br>          Defendants. | Case No. _____<br><br><br><br><br><br><br><br><br><br>**Plaintiff's Class-Action Complaint** |

Ann Smith is a public-school teacher in Gloucestor County who brings this class action on behalf of herself and all others similarly situated, seeking redress for the defendants' past and ongoing violations of her constitutionally protected rights. The

defendants have violated Ms. Smith's constitutional rights by forcing her to pay "representation fees" as a condition of her employment as a public-school teacher—even though Ms. Smith refuses to join the teachers union and does not wish to subsidize the union's activities. Ms. Smith sues to recover these "representation fees" that were unconstitutionally taken from her and her fellow class members. She also seeks declaratory and injunctive relief against the laws that authorize union shops in public employment.

## JURISDICTION AND VENUE

1.   The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2.   Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

3.   Because Ms. Smith teaches and resides in Gloucestor County and because the cause of action arose in Gloucestor County, assignment to the Camden vicinage is proper. *See* Local Civil Rule 40.1(b).

## PARTIES

4.   Plaintiff Ann Smith resides in Gloucestor County, New Jersey.

5.   Defendant New Jersey Education Association (NJEA) is a labor union whose headquarters are located at 180 West State Street, Trenton, New Jersey 08608.

6.   Defendant Clearview Education Association is a local union chapter affiliated with the NJEA. It is sued as representative of the class of all chapters and affiliates of the NJEA.

7.   Defendant National Education Association (NEA) is a labor union whose headquarters are located at 1201 16th Street NW, Washington, D.C. The NEA is affiliated with the NJEA.

8.   Defendant Clearview Regional High School District Board of Education is a school board located in Gloucestor County, New Jersey. It is sued as representative of the class of all school boards and school districts in the state of New Jersey.

9.   Defendant Phil Murphy is the governor of New Jersey. His office is in Trenton, New Jersey. Governor Murphy is the representative of the State and he is sued in his official capacity.

10.   Defendant Gurbir S. Grewal is the Attorney General of New Jersey. His office is in Trenton, New Jersey. He is charged with enforcing the state's laws, including N.J.S.A. § 34:13A-5.5 and N.J.S.A. § 34:13A-5.6, which Ms. Smith is challenging as unconstitutional, and he is sued in his official capacity.

11.   Defendant Joel M. Weisblatt is chair of the New Jersey Public Employment Relations Commission (PERC), and defendants Paul Boudreau, Paula B. Voos, John Bonanni, and David Jones are members of PERC. They are charged with enforcing the New Jersey Employer–Employee Relations Act, which includes N.J.S.A. § 34:13A-5.5 and N.J.S.A. § 34:13A-5.6, the provisions that Ms. Smith is challenging as unconstitutional. These defendants are also charged with enforcing the rules and regulations that they have issued pursuant to the Employer–Employee Relations Act. *See* N.J.S.A. § 34:13A-5.9.

12.   Defendant John F. Tesauro is chairman of the New Jersey Public Employment Relations Commission Appeal Board, and defendants Raymond T. Bolanowski and Charles J. DeCicco are members of the PERC Appeal Board. They are charged with considering the petitions of non-union members who object to the amount of "representation fees" that the union has imposed on them. *See* N.J.A.C. § 19:17 (attached as Exhibit 2).

## FACTS

13.  Ms. Smith is a public-school teacher in the Clearview Regional High School District in Gloucestor County, New Jersey. She refuses to join the NJEA or its affiliates because she disapproves of the union's political and ideological advocacy, as well as the excessively high salaries that are paid to the union's leaders.

14.  Nevertheless, the collective-bargaining agreements negotiated by the NJEA and its affiliates have compelled Ms. Smith and her fellow class members to pay a financial penalty for exercising their constitutional right to not join a public-employee union. This penalty is called a "representation fee," and the law of New Jersey authorizes public-employee unions to negotiate for compelled representation fees in their collective-bargaining agreements. *See* N.J.S.A. § 34:13A-5.5; N.J.S.A. § 34:13A-5.6 (attached as Exhibit 1, at pages 6–7).

15.  The collective-bargaining agreement negotiated between the Clearview Education Association and the Clearview Regional High School District Board of Education specifically allows the union to extract "representation fees" from non-union members such as Ms. Smith. *See* Exhibit 3, at pages 25–27.

16.  The collective-bargaining agreement also promises that the union will "indemnify and hold the [School] Board harmless against any and all claims, demands, suits and other forms of liability, including liability for reasonable counsel fees and other legal costs and expenses that may arise out of, or by reason of, any action taken or not taken by the Board in conformance with this provision." *See* Exhibit 3, at page 26.

17.  The union has attempted to accommodate Ms. Smith's objections by allowing her to divert her "representation fees" to Habitat for Humanity rather than remitting those fees to the union itself. *See* Exhibit 4.

## STATEMENT OF THE CLAIM

18.    The NJEA's compelled extraction of money from Ms. Smith and her fellow class members violates their constitutional rights—regardless of whether the money is directed to the union or a union-approved charity. Ms. Smith has a constitutional right to refrain from joining or lending financial support to a public-employee union, and she cannot be subject to any financial penalty for that decision.

19.    The laws of New Jersey that allow the NJEA and other public-employee unions to extract money from non-union members as a condition of their employment are unconstitutional. *See* N.J.S.A. § 34:13A-5.5; N.J.S.A. § 34:13A-5.6.

20.    The NJEA is acting under color of state law by imposing these "representation fees" on Ms. Smith and her fellow class members. *See* N.J.S.A. § 34:13A-5.5; N.J.S.A. § 34:13A-5.6.

21.    The Clearview Regional High School District Board of Education is violating the Constitution by entering into and enforcing collective-bargaining agreements that require non-union members to pay "representation fees" to the NJEA or its affiliates. Other school boards throughout the State that are enforcing similar provisions in collective-bargaining agreements are likewise acting in violation of the Constitution.

22.    The NJEA and the Clearview Regional High School District Board of Education have committed the tort of conversion by appropriating Ms. Smith's money (and the money of her fellow class members) without their consent. The NJEA and the school board cannot defend their tortious conduct by relying on N.J.S.A. § 34:13A-5.5 or N.J.S.A. § 34:13A-5.6, because each of those statutes is unconstitutional to the extent it purports to shield a public-employee union's compelled extraction of money from nonmembers. Unconstitutional statutes cannot confer immunity on tortious conduct.

23.   Earlier this year, New Jersey enacted A.3686 in an attempt to dissuade union objectors such as Ms. Smith from withholding their support for the NJEA. *See* Exhibit 5 (reprinting the text of A.3686). At least two provisions in this statute violate the constitutional rights of Ms. Smith and her fellow union objectors.

24.   Section 3(c) of A.3686 violates the Constitution by requiring public employers to turn over to the union their employees' "name, job title, worksite location, home address, work telephone numbers, and any home and personal cellular telephone numbers on file with the public employer, date of hire, and work email address and any personal email address on file with the public employer." *See* Exhibit 5. This provision unconstitutionally chills the exercise of First Amendment freedoms by allowing public-employee unions to acquire the personal information of every employee who exercises his constitutional right not to join or financially support the union. Employees are given no right to prevent this forcible disclosure of their personal information, and the statute contains no restrictions on what the unions may do with the personal information that they obtain. Labor unions have a long history of bullying and intimidating anti-union employees, and the courts do not and cannot tolerate compelled-disclosure laws that chill the exercise of First Amendment freedoms. *See NAACP v. Alabama*, 357 U.S. 449 (1958).

25.   Section 6 of A.3686 also violates the Constitution by forbidding a public employee to revoke his consent to the deduction of union dues from his paycheck unless he does so "during the 10 days following each anniversary date of their employment." *See* Exhibit 5. A public employee has a constitutional right to revoke his membership and financial support of a public-employee union at any time, and it cannot be limited by a state-imposed "open-enrollment" period. When a public employee informs his employer that he no longer wants to contribute money to the union, the employer must honor that decision—and the employer must immediately cease diverting the employee's paycheck to a union that he no longer supports.

## CLASS ALLEGATIONS

26.   Ms. Smith brings this class action under Fed. R. Civ. P. 23(b)(1), (b)(2), and (b)(3). The class includes all individuals who: (1) are or previously were employed by the State of New Jersey or any of its subunits, including any school district in the State; (2) are or were non-union members who were compelled by the NJEA or its affiliates to pay "representation fees"—regardless of whether those "representation fees" are paid directly to the union or remitted to a third-party entity. The class includes everyone who has ever fallen within this definition, including retired teachers or teachers who have moved to other States, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

27.   The number of persons in the class makes joinder of the individual class members impractical.

28.   There are questions of fact and law common to all class members. Factually, all class members are public employees and union nonmembers who were forced to pay "representation fees" as a condition of their employment. Legally, the U.S. Constitution and New Jersey tort law afford the same rights to every member of the class.

29.   Ms. Smith's claims are typical of other class members, as each class member has objected to NJEA membership yet was subject to "representation fees" for exercising their constitutional right not to join a union.

30.   Ms. Smith adequately represents the interests of her fellow class members, and she has no interests antagonistic to the class.

31.   A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

32.   A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of compulsory "representation fees" will, as a practical matter, be dispositive of the interests of all class members.

33.   A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violation of their constitutional and state-law rights, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## CAUSES OF ACTION

34.   Ms. Smith is suing the NJEA and its affiliates and chapters, the school boards and school districts, Governor Murphy, Attorney General Grewal, and the PERC officials under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that she is requesting.

35.   Ms. Smith is also suing the NJEA, its affiliates and chapters, and the school boards and school districts under the state-law tort of conversion, and she invokes the supplemental jurisdiction of this court over that state-law claim. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF

36.   Ms. Smith respectfully requests that the court:

    a.   certify a class of all individuals who have opted out of NJEA membership but have been compelled to pay "representation fees" as condition of their employment—regardless of whether those "representation fees" were paid to the union or to a third-party organization;

    b.   declare that Ms. Smith and her fellow class members have a constitutional right to decline to join or financially support a public-employee union, and that they cannot be penalized or forced to pay money to

the union or a third-party organization as a consequence for exercising this constitutional right;

c.    declare that state tort law protects the right of Ms. Smith and her fellow class members not to have their wages garnished or redirected by the NJEA or by their employers without their affirmative, written, and freely given consent, and that any state or federal law or collective-bargaining agreement that purports to override these protections of state tort law by allowing the NJEA to help itself to the wages and paychecks of school employees—or that compels school employees to consent the garnishment of their wages by the NJEA as a condition of their employment—is unconstitutional and without legal effect;

d.    declare N.J.S.A. § 34:13A-5.5 and N.J.S.A. § 34:13A-5.6 unconstitutional because they allow public-employee unions to extract "representation fees" from nonmembers, and permanently enjoin Governor Murphy, Attorney General Grewal, the members of the state Public Employment Relations Commission and the Public Employment Relations Commission Appeal Board, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing N.J.S.A. § 34:13A-5.5 and N.J.S.A. § 34:13A-5.6;

e.    order the New Jersey Education Association, along with its affiliates and chapters, including the National Education Association, to repay any and all "representation fees" that they unconstitutionally extracted from Ms. Smith and her fellow class members, regardless of whether the unions kept those fees for themselves or diverted them toward third-party organizations, along with pre-judgment and post-judgment interest;

f.      permanently enjoin the New Jersey Education Association, along with its affiliates and chapters, as well as their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from taking or redirecting any type of money from Ms. Smith and her fellow class members without first obtaining their affirmative, written, and freely given consent;

g.      declare that all collective-bargaining agreements that compel Ms. Smith and her fellow class members to pay "representation fees" to the union (or to a third-party organization) violate the constitutional rights of Ms. Smith and her fellow class members;

h.      permanently enjoin the Clearview Regional High School District Board of Education, along with every school board in the State, from deducting "representation fees" from the paychecks of non-union members;

i.      permanently enjoin the Clearview Regional High School District Board of Education, along with every school board in the State, from entering into any collective-bargaining agreement that allows a public-employee union to collect or redirect any type of money from a non-union member;

j.      permanently enjoin the Clearview Regional High School District Board of Education, along with every school board in the State, from entering into any collective-bargaining agreement that allows a public-employee union to collect or redirect any type of money from any school employee without first securing the employee's affirmative, written, and freely given consent;

k.      permanently enjoin all of the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity

in active concert or participation with them, from enforcing any pro-
vision of New Jersey law, or any provision of a collective-bargaining
agreement, that requires the payment of money as a consequence for
exercising one's constitutional right not to join or financially support
a public-employee union, regardless of whether that compelled pay-
ment of money is received by the union or diverted to a third-party
organization;

l.    declare that section 3(c) of A.3686 violates the Constitution by re-
quiring public employers to turn over their employees' personal in-
formation to a union without the employee's consent, and perma-
nently enjoin Governor Murphy, Attorney General Grewal, the mem-
bers of the state Public Employment Relations Commission and the
Public Employment Relations Commission Appeal Board, and all of
their officers, agents, servants, employees, attorneys, and any other
person or entity in active concert or participation with them, from
enforcing section 3(c) of A.3686;

m.    permanently enjoin the Clearview Regional High School District
Board of Education, along with every school board in the State, from
disclosing the personal information of its employees to the NJEA or
any other public-employee union without first securing the em-
ployee's affirmative, written, and freely given consent;

n.    permanently enjoin the NJEA and its affiliates and chapters, along
with their officers, agents, servants, employees, attorneys, and any
other person or entity in active concert or participation with them,
from seeking or obtaining the personal information of any employee
who has chosen not to join or financially support the union, or any

employee who has have declined to give his employer permission to disclose his personal information to the NJEA;

o.    declare that section 6 of A.3686 violates the Constitution by preventing public employees from withdrawing their financial support of a union unless they do so during a designated 10-day time period, and permanently enjoin all of the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing the provisions of section 6 that prevent or deter public employees from cancelling their union membership and withdrawing financial support of the union at any time during the calendar year;

p.    order the NJEA, its affiliates and chapters, the Clearview Regional High School District Board of Education, and every school board in the State to immediately honor and enforce a public employee's decision to withdraw his financial support of a public-employee union, regardless of the time of year that the decision is made;

q.    award costs and attorneys' fees under 42 U.S.C. § 1988;

r.    grant all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

 /s/ Walter S. Zimolong

JONATHAN F. MITCHELL*
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940
jonathan@mitchell.law

* *pro hac vice* application pending

Dated: June 11, 2018

WALTER S. ZIMOLONG
Zimolong LLC
P.O. Box 552
Villanova, PA 19085
(215) 665-0842
wally@zimolonglaw.com

*Counsel for Plaintiffs and
the Proposed Class*

# Exhibit 1

## Chapter 13A

## NEW JERSEY EMPLOYER-EMPLOYEE RELATIONS ACT

**Section**

34:13A-1.          Short title.
34:13A-2.          Declaration of policy.
34:13A-3.          Definitions.
34:13A-4.          State Board of Mediation; establishment; membership.
34:13A-5.          Objective.
34:13A-5.1.        Establishment of division of public employment relations and division of private employment dispute settlement.
34:13A-5.2.        Public Employment Relations Commission.
34:13A-5.3.        Employee organizations; right to form or join; collective negotiations; grievance procedures.
34:13A-5.4.        Unfair practices; proceedings for enforcement; determination of questions within scope of collective negotiations; appeal; rules for representation elections and negotiations; order of enforcement.
34:13A-5.5.        Representation fee in lieu of dues.
34:13A-5.6.        Representation fee in lieu of dues by payroll deduction.
34:13A-5.7.        Discrimination between nonmembers and members on basis of payment of fee; unfair practice.
34:13A-5.8.        Payment to majority representative.
34:13A-5.9.        Rules and regulations.
34:13A-5.10       Findings, declarations relative to collective negotiations units for Executive Branch employees; units designated.
34:13A-6.          Powers and duties.
34:13A-6.1.        Priority of reorganization plan of department of labor and industry.
34:13A-7.          Arbitration.
34:13A-8.          Strikes.
34:13A-8.1.        Effect of act upon prior agreements or upon pension statutes.
34:13A-8.2.        Filed contracts in public employment.
34:13A-8.3          Development and maintenance of programs.
34:13A-9.          Personnel; compensation.
34:13A-10.         Disqualifications.
34:13A-10.1.       Board members; participation; membership or employment in other agencies.
34:13A-11.         Rules.
34:13A-12.         Construction
34:13A-13.         Separability of provisions.
34:13A-14.         Findings, declaration relative to compulsory arbitration procedure.
34:13A-14a.        Short title.
34:13A-15.         Definitions.
34:13A-16.         Negotiations between public fire, police department and exclusive representative; binding arbitration.
34:13A-16.1.       Annual continuing education program for arbitrators.
34:13A-16.2.       Guidelines for determining comparability of jurisdictions.
34:13A-16.3.       Fee schedule; commission costs

34:13A-16.4.       Biennial reports.
34:13A-16.5.       Rules, regulations.
34:13A-16.6.       Survey of private sector wage increases.
34:13A-17.         Powers of arbitrator
34:13A-18.         Limitations on finding, opinion, order of arbitrator.
34:13A-19.         Decision; enforcement; venue; effective date of award; amendment or modification.
34:13A-21.         Change in condition during pendency of proceedings; prohibition without consent.
34:13A-22.         Definitions.
34:13A-23.         Assignment to extracurricular activities; subject to collective negotiations.
34:13A-24.         Imposition of minor discipline.
34:13A-25.         Transfers of employees.
34:13A-26.         Withholding increment for disciplinary reasons.
34:13A-27.         Resolution of disputes.
34:13A-28.         Additional rights.
34:13A-29.         Grievance procedures; binding arbitration.
34:13A-30.         Employment with public employee labor organizations, certain; prohibited.
34:13A-31.         Short title.
34:13A-32.         Definitions relative to school employee collective negotiations.
34:13A-33.         Terms, conditions of employment under expired agreements.
34:13A-34.         Participation in mandatory fact finding; report; appointment of super conciliator.
34:13A-35.         Investigatory proceedings.
34:13A-36.         Final report.
34:13A-37.         Confidentiality; exceptions.
34:13A-38.         Report to Governor, Legislature.
34:13A-39.         Rules, regulations.

**34:13A-1. Short title.**

This act shall be known and may be cited as "New Jersey Employer-Employee Relations Act."

L. 1941, c. 100, p. 228, s. 1. Amended by L. 1968, c. 303, s. 2, eff. July 1, 1968.

**34:13A-2. Declaration of policy**

It is hereby declared as the public policy of this State that the best interests of the people of the State are served by the prevention or prompt settlement of labor disputes, both in the private and public sectors; that strikes, lockouts, work stoppages and other forms of employer and employee strife, regardless where the merits of the controversy lie, are forces productive ultimately of economic and public waste; that the interests and rights of the consumers and the people of the State, while not direct parties thereto, should always be considered, respected and protected; and that the voluntary mediation of such public and private employer-employee disputes under the guidance and supervision of a governmental agency will tend to promote permanent, public and private employer-employee peace and the health, welfare, comfort and safety of the people of the State.  To carry out such policy, the necessity for the enactment of the provisions of this act is hereby declared as a matter of legislative determination.

L. 1941, c. 100, p. 228, s. 2. Amended by L. 1968, c. 303, s. 3,

eff. July 1, 1968.

**34:13A-3. Definitions.**

When used in this act:

(a) The term "board" shall mean New Jersey State Board of Mediation.

(b) The term "commission" shall mean New Jersey Public Employment Relations Commission.

(c) The term "employer" includes an employer and any person acting, directly or indirectly, on behalf of or in the interest of an employer with the employer's knowledge or ratification, but a labor organization, or any officer or agent thereof, shall be considered an employer only with respect to individuals employed by such organization. This term shall include "public employers" and shall mean the State of New Jersey, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board, or any branch or agency of the public service. The term shall also include the Delaware River Port Authority, established pursuant to R.S.32:3-1 et seq.

(d) The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer unless this act explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of or in connection with any current labor dispute or because of any unfair labor practice and who has not obtained any other regular and substantially equivalent employment. This term, however, shall not include any individual taking the place of any employee whose work has ceased as aforesaid, nor shall it include any individual employed by his parent or spouse, or in the domestic service of any person in the home of the employer, or employed by any company owning or operating a railroad or railway express subject to the provisions of the Railway Labor Act. This term shall include any public employee, i.e., any person holding a position, by appointment or contract, or employment in the service of a public employer, including the Delaware River Port Authority, except elected officials, members of boards and commissions, managerial executives and confidential employees.

(e) The term "representative" is not limited to individuals but shall include labor organizations, and individual representatives need not themselves be employed by, and the labor organization serving as a representative need not be limited in membership to the employees of, the employer whose employees are represented. This term shall include any organization, agency or person authorized or designated by a public employer, public employee, group of public employees, or public employee association to act on its behalf and represent it or them.

(f) "Managerial executives" of a public employer, in the case of the State of New Jersey, means persons who formulate management policies and practices, but shall not mean persons who are charged with the responsibility of directing the effectuation of such management policies and practices, except that in the case of the Executive Branch of the State of New Jersey, "managerial executive" shall include only personnel at or above the level of assistant commissioner.

In the case of any public employer other than the State of New Jersey, "managerial executive" of a public employer means persons who formulate management policies and practices, and person who are charged with the responsibility of directing the effectuation of such management policies and practices, except in any school district this term shall include only the superintendent or other chief administrator, and the assistant superintendent of the district.

(g) "Confidential employees" of a public employer means employees whose functional responsibilities or knowledge in connection with the issues involved in the collective negotiations process would make their membership in any appropriate negotiating unit incompatible with their official duties.

"Confidential employees" of the State of New Jersey means employees who have direct involvement in representing the State in the collective negotiations process making their membership in any appropriate negotiating unit incompatible with their official duties.

L. 1941, c. 100, p. 228, s. 3. Amended by L. 1941, c. 299, p. 812, s. 1; L. 1968, c. 303, s. 4, eff. July 1, 1968; L. 1974, c. 123, s. 2; L. 2009, c. 314, eff. January 18, 2010.

**34:13A-4. State Board of Mediation; establishment; membership.**

There is hereby established in the Department of Labor and Industry a board to be known as the New Jersey State Board of Mediation. The membership of such board shall consist of seven persons to be appointed by the Governor, by and with the advice and consent of the Senate. Of such members, two shall be representative of employees, two shall be representative of employers and three shall be representative of the public. Of the members first appointed, one shall be appointed for a term of 1 year; two for a term of 2 years and two for a term of 3 years. Of the two additional members provided for by this amendment, the original appointees shall hold office for 2 years. Their successors shall be appointed for terms of 3 years. The chairman of the board shall be a member who shall have been designated a representative of the public and who shall be named as chairman by the Governor: the chairman so named shall serve as chairman during his term as a member of the board. A vacancy occurring in the membership of the board for any cause, other than expiration of term, shall be filled by the Governor and the person so appointed shall hold office for the unexpired term of the member whose office has become vacant.

Of the members whose terms have not expired, the Governor shall designate each as a representative of either employees or employers or the public, which designation shall be filed with the Secretary of State, and all appointments hereafter made shall include a designation indicating that such appointee is to be a representative of employees, employers or the public, as the case may be.

For the purpose of complying with the provisions of Article V, Section IV, paragraph 1 of the New Jersey Constitution, the New Jersey State Board of Mediation is hereby allocated within the Department of Labor and Industry and assigned for administrative

purposes to the Assistant Commissioner of Labor for Labor Relations and Work Place Standards, but notwithstanding said allocation and assignment, the board shall be independent of any supervision or control by the department or by any board or officer thereof.

L. 1941, c. 100, p. 229, s. 4. Amended by L. 1945, c. 32, p. 88, s. 1; L. 1973, c. 326, s. 1, eff. Dec. 18, 1973; L.2009, c.210

### 34:13A-5. Objective.

It shall be the objective of the board hereby established to take such steps as will most effectively and expeditiously carry out the policy declared in section two of this act and the powers and duties conferred and imposed upon the board by this act or by law shall at all times be performed and discharged with the accomplishment of such objective as the ultimate goal.

L. 1941, c. 100, p. 230, s. 5.

### 34:13A-5.1. Establishment of division of public employment relations and division of private employment dispute settlement.

There is hereby established a Division of Public Employment Relations and a Division of Private Employment Dispute Settlement.

(a) The Division of Public Employment Relations shall be concerned exclusively with matters of public employment related to determining negotiating units, elections, certifications and settlement of public employee representative and public employer disputes and grievance procedures. For the purpose of complying with the provisions of Article V, Section IV, paragraph 1 of the New Jersey Constitution, the Division of Public Employment Relations is hereby allocated within the Department of Labor and Workforce Development, and located in the city of Trenton, but notwithstanding said allocation, the office shall be independent of any supervision or control by the department or by any board or officer thereof.

(b) The Division of Private Employment Dispute Settlement shall assist the New Jersey State Board of Mediation in the resolution of disputes in private employment. The New Jersey State Board of Mediation, its objectives and the powers and duties granted by this act and the act of which this act is amendatory and supplementary shall be concerned exclusively with matters of private employment and the office shall continue to be located in the city of Newark.

(c) In the case of a private employer not regulated by the National Labor Relations Board pursuant to the National Labor Relations Act (29 U.S.C. 151 et seq.), the New Jersey State Board of Mediation shall designate a representative for a unit of employees of the private employer for the purposes of collective bargaining when:

(1) In any case in which the board determines that only one employee organization is seeking to be the majority representative, that organization demonstrates that a majority of employees in the unit have shown their preference to have that organization be their representative by signing authorization

cards indicating that preference; or

(2) The employees in the unit have selected a representative by an election that conforms with the procedures outlined in section 159 of the National Labor Relations Act (29 U.S.C. s.159).

For the purposes of paragraph (1) of this subsection, an authorization card indicating preference shall not be valid unless it is printed in a language understood by the employee who signs it.

Any employer who refuses to provide information requested by the New Jersey State Board of Mediation or otherwise acts to prevent the board from carrying out its responsibilities pursuant to this subsection (c) shall have violated this subsection and shall be liable to a fine of not more than $1,000, to be recovered under the "Penalty Enforcement Law of 1999," P.L.1999, c.274 (C.2A:58-10 et seq.) in the name of the board and to be used by the board for costs of implementing this subsection. In addition, an employee organization seeking to represent the employees of the employer may institute an action in a court of competent jurisdiction to obtain an injunction to restrain any continuation of the violation, to reimburse the employee organization or any affected employee for any damages caused by the violation plus reasonable costs and attorney's fees of the action.

The provisions of this subsection (c) shall not apply to religious or parochial schools or their employees or to any private nonprofit organization exempt from federal taxation under section 501 of the Internal Revenue Code of 1986 (26 U.S.C. 501).

(d) In the case of a private employer regulated by the National Labor Relations Board pursuant to the National Labor Relations Act (29 U.S.C. 151 et seq.), the New Jersey State Board of Mediation shall, based on the mutual agreement of the private employer and an organization seeking to represent employees of the employer, designate a representative for a unit of employees of the private employer for the purposes of collective bargaining when:

(1) In any case in which the board determines that only one employee organization is seeking to be the majority representative, that organization demonstrates, in a manner mutually agreed upon by the representative and the employer, that a majority of employees in the unit have shown their preference to have that organization be their representative by signing authorization cards indicating that preference; or

(2) the employees in the unit have selected the representative by an election that conforms with the procedures outlined in section 159 of the National Labor Relations Act (29 U.S.C. s.159).

(e) For the purposes of subsections (c) and (d) of this section, "employee unit" means an appropriate group of employees for the purposes of collective bargaining as determined, if necessary, by the New Jersey State Board of Mediation.

L. 1968, c. 303, s. 5. Amended by L. 1973, c. 326, s. 2, eff. Dec. 18, 1973; Amended by L. 2005, c. 161, eff. July 19, 2005.

**34:13A-5.2. Public Employment Relations Commission.**

There is hereby established in the Division of Public Employment Relations a commission to be known as the New Jersey Public Employment Relations Commission. This commission, in addition to the powers and duties granted by this act, shall have in the public employment area the same powers and duties granted to the labor mediation board in sections 7 and 10 of P.L. 1941, c.100, and in sections 2 and 3 of P.L. 1945, c.32. This commission shall make policy and establish rules and regulations concerning employer-employee relations in public employment relating to dispute settlement, grievance procedures and administration including enforcement of statutory provisions concerning representative elections and related matters and to implement fully all the provisions of this act. The commission shall consist of seven members to be appointed by the Governor, by and with the advice and consent of the Senate. Of such members, two shall be representative of public employers, two shall be representative of public employee organizations and three shall be representative of the public including the appointee who is designated as chairman. Of the first appointees, two shall be appointed for two years, two for a term of three years and three, including the chairman, for a term of four years. Their successors shall be appointed for terms of three years each, and until their successors are appointed and qualified, except that any person chosen to fill a vacancy shall be appointed only for the unexpired term of the member whose office has become vacant.

The members of the commission, other than the chairman, shall be compensated at the rate of $250.00 for each six hour day spent in attendance at meetings and consultations and shall be reimbursed for necessary expenses in connection with the discharge of their duties except that no commission member who receives a salary or other form of compensation as a representative of any employer or employee group, organization or association, shall be compensated by the commission for any deliberations directly involving members of said employer or employee group, organization or association. Compensation for more, or less than, six hours per day, shall be prorated in proportion to the time involved.

The chairman of the commission shall be its chief executive officer and administrator, shall devote his full time to the performance of his duties as chairman of the Public Employment Relations Commission and shall receive such compensation as shall be provided by law.

L. 1968, c. 303, s. 6 eff. July 1, 1968. Amended by L. 1974, c. 123, s. 3; L. 1987, c. 456, s. 1, eff. Jan. 19, 1988.

**34:13A-5.3. Employee organizations; right to form or join; collective negotiations; grievance procedures.**

Except as hereinafter provided, public employees shall have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization or to refrain from any such activity; provided, however, that this right shall not extend to elected officials, members of boards and commissions, managerial executives, or confidential employees, except in a school district the term managerial executive shall mean the superintendent of schools or his equivalent, nor, except where established practice, prior agreement or special circumstances dictate the contrary, shall any supervisor having the power to hire, discharge, discipline, or to

effectively recommend the same, have the right to be represented in collective negotiations by an employee organization that admits nonsupervisory personnel to membership, and the fact that any organization has such supervisory employees as members shall not deny the right of that organization to represent the appropriate unit in collective negotiations; and provided further, that, except where established practice, prior agreement, or special circumstances dictate the contrary, no policeman shall have the right to join an employee organization that admits employees other than policemen to membership. The negotiating unit shall be defined with due regard for the community of interest among the employees concerned, but the commission shall not intervene in matters of recognition and unit definition except in the event of a dispute.

Representatives designated or selected by public employees for the purposes of collective negotiation by the majority of the employees in a unit appropriate for such purposes, by the majority of the employees voting in an election conducted by the commission as authorized by this act or, at the option of the representative in a case in which the commission finds that only one representative is seeking to be the majority representative, by a majority of the employees in the unit signing authorization cards indicating their preference for that representative, shall be the exclusive representatives for collective negotiation concerning the terms and conditions of employment of the employees in such unit. An authorization card indicating preference shall not be valid unless it is printed in a language understood by the employee who signs it. Nothing herein shall be construed to prevent any official from meeting with an employee organization for the purpose of hearing the views and requests of its members in such unit so long as (a) the majority representative is informed of the meeting; (b) any changes or modifications in terms and conditions of employment are made only through negotiation with the majority representative; and (c) a minority organization shall not present or process grievances. Nothing herein shall be construed to deny to any individual employee his rights under Civil Service laws or regulations. When no majority representative has been selected as the bargaining agent for the unit of which an individual employee is a part, he may present his own grievance either personally or through an appropriate representative or an organization of which he is a member and have such grievance adjusted.

A majority representative of public employees in an appropriate unit shall be entitled to act for and to negotiate agreements covering all employees in the unit and shall be responsible for representing the interest of all such employees without discrimination and without regard to employee organization membership. Proposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established. In addition, the majority representative and designated representatives of the public employer shall meet at reasonable times and negotiate in good faith with respect to grievances, disciplinary disputes, and other terms and conditions of employment. Nothing herein shall be construed as permitting negotiation of the standards or criteria for employee performance.

When an agreement is reached on the terms and conditions of employment, it shall be embodied in writing and signed by the authorized representatives of the public employer and the majority representative.

4

Public employers shall negotiate written policies setting forth grievance and disciplinary review procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements, and administrative decisions, including disciplinary determinations, affecting them, provided that such grievance and disciplinary review procedures shall be included in any agreement entered into between the public employer and the representative organization. Such grievance and disciplinary review procedures may provide for binding arbitration as a means for resolving disputes. Except as otherwise provided herein, the procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws, except that such procedures may provide for binding arbitration of disputes involving the minor discipline of any public employees protected under the provisions of section 7 of P.L.1968, c.303 (C.34:13A-5.3), other than public employees subject to discipline pursuant to R.S.53:1

10. Grievance and disciplinary review procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement. For the purposes of this section, minor discipline shall mean a suspension or fine of less than five days unless the employee has been suspended or fined an aggregate of 15 or more days or received more than three suspensions or fines of five days or less in one calendar year.

Where the State of New Jersey and the majority representative have agreed to a disciplinary review procedure that provides for binding arbitration of disputes involving the major discipline of any public employee protected under the provisions of this section, other than public employees subject to discipline pursuant to R.S.53:110, the grievance and disciplinary review procedures established by agreement between the State of New Jersey and the majority representative shall be utilized for any dispute covered by the terms of such agreement. For the purposes this section, major discipline shall mean a removal, disciplinary demotion, suspension or fine of more than five days, or less where the aggregate number of days suspended or fined in any one calendar year is 15 or more days or unless the employee received more than three suspensions or fines of five days or less in one calendar year.

In interpreting the meaning and extent of a provision of a collective negotiation agreement providing for grievance arbitration, a court or agency shall be bound by a presumption in favor of arbitration. Doubts as to the scope of an arbitration clause shall be resolved in favor of requiring arbitration.

L. 1968, c. 303, s. 7, eff. July 1, 1968. Amended by 1974, c. 123, s. 4; L. 1982, c. 103, s. 1, eff. July 30, 1982; L. 1996, c. 115, s. 4, eff. Jan. 9, 1997; L. 2003, c. 119, s. 2, eff. July 1, 2003, L. 2005, c.161; L. 2005, c. 380

**34:13A-5.4. Unfair practices; proceedings for enforcement; determination of questions within scope of collective negotiations; appeal; rules for representation elections and negotiations; order of enforcement.**

a. Public employers, their representatives or agents are prohibited from:

(1) Interfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act.

(2) Dominating or interfering with the formation, existence or administration of any employee organization.

(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage employees in the exercise of the rights guaranteed to them by this act.

(4) Discharging or otherwise discriminating against any employee because he has signed or filed an affidavit, petition or complaint or given any information or testimony under this act.

(5) Refusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative.

(6) Refusing to reduce a negotiated agreement to writing and to sign such agreement.

(7) Violating any of the rules and regulations established by the commission.

b. Employee organizations, their representatives or agents are prohibited from:

(1) Interfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act.

(2) Interfering with, restraining or coercing a public employer in the selection of his representative for the purposes of negotiations or the adjustment of grievances.

(3) Refusing to negotiate in good faith with a public employer, if they are the majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit.

(4) Refusing to reduce a negotiated agreement to writing and to sign such agreement.

(5) Violating any of the rules and regulations established by the commission.

c. The commission shall have exclusive power as hereinafter provided to prevent anyone from engaging in any unfair practice listed in subsections a. and b. above. Whenever it is charged that anyone has engaged or is engaging in any such unfair practice, the commission, or any designated agent thereof, shall have authority to issue and cause to be served upon such party a complaint stating the specific unfair practice charged and including a notice of hearing containing the date and place of hearing before the commission or any designated agent thereof; provided that no complaint shall issue based upon any unfair practice occurring more than 6 months prior to the filing of the charge unless the person aggrieved thereby was prevented from filing such charge in which event the 6-month period shall be computed from the day

he was no longer so prevented.

In any such proceeding, the provisions of the Administrative Procedure Act P.L.1968, c. 410 (C. 52:14B-1 et seq.) shall be applicable. Evidence shall be taken at the hearing and filed with the commission. If, upon all the evidence taken, the commission shall determine that any party charged has engaged or is engaging in any such unfair practice, the commission shall state its findings of fact and conclusions of law and issue and cause to be served on such party an order requiring such party to cease and desist from such unfair practice, and to take such reasonable affirmative action as will effectuate the policies of this act. All cases in which a complaint and notice of hearing on a charge is actually issued by the commission, shall be prosecuted before the commission or its agent, or both, by the representative of the employee organization or party filing the charge or his authorized representative.

d. The commission shall at all times have the power and duty, upon the request of any public employer or majority representative, to make a determination as to whether a matter in dispute is within the scope of collective negotiations. The commission shall serve the parties with its findings of fact and conclusions of law. Any determination made by the commission pursuant to this subsection may be appealed to the Appellate Division of the Superior Court.

e. The commission shall adopt such rules as may be required to regulate the conduct of representation elections, and to regulate the time of commencement of negotiations and of institution of impasse procedures so that there will be full opportunity for negotiations and the resolution of impasses prior to required budget submission dates.

f. The commission shall have the power to apply to the Appellate Division of the Superior Court for an appropriate order enforcing any order of the commission issued under subsection c. or d. hereof, and its findings of fact, if based upon substantial evidence on the record as a whole, shall not, in such action, be set aside or modified; any order for remedial or affirmative action, if reasonably designed to effectuate the purposes of this act, shall be affirmed and enforced in such proceeding.

L. 1974, c. 123, s. 1. Amended by L. 1979, c. 477, s. 1, eff. July 1, 1980.

### 34:13A-5.5. Representation fee in lieu of dues.

a. Notwithstanding any other provisions of law to the contrary, the majority representative and the public employer of public employees in an appropriate unit shall, where requested by the majority representative, negotiate concerning the subject of requiring the payment by all nonmember employees in the unit to the majority representative of a representation fee in lieu of dues for services rendered by the majority representative. Where agreement is reached it shall be embodied in writing and signed by the authorized representatives of the public employer and the majority representative. If no agreement is reached, the majority representative may petition the commission to conduct an investigation. If the commission determines during the investigation that a majority of the employees in the negotiations unit are voluntary dues paying members of the majority representative and that the majority representative maintains a

demand and return system as required by subsection c. of this section and section 3 of P.L.1979, c.477 (C.34:13A-5.6), the commission shall order the public employer to institute a payroll deduction of the representation fee in lieu of dues from the wages or salaries of the employees in the negotiations unit who are not members of the majority representative.

b. The representation fee in lieu of dues shall be in an amount equivalent to the regular membership dues, initiation fees and assessments charged by the majority representative to its own members less the cost of benefits financed through the dues, fees and assessments and available to or benefitting only its members, but in no event shall such fee exceed 85% of the regular membership dues, fees and assessments.

c. Any public employee who pays a representation fee in lieu of dues shall have the right to demand and receive from the majority representative, under proceedings established and maintained in accordance with section 3 of P.L.1979, c.477 (C.34:13A-5.6), a return of any part of that fee paid by him which represents the employee's additional pro rata share of expenditures by the majority representative that is either in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment or applied toward the cost of any other benefits available only to members of the majority representative. The pro rata share subject to refund shall not reflect, however, the costs of support of lobbying activities designed to foster policy goals in collective negotiations and contract administration or to secure for the employees represented advantages in wages, hours, and other conditions of employment in addition to those secured through collective negotiations with the public employer.

L. 1979, c. 477, s. 2. Amended by L. 2002, c. 46, s. 1.

### 34:13A-5.6. Representation fee in lieu of dues by payroll deduction.

Where a negotiated agreement is reached, pursuant to section 2 of P.L.1979, c.477 (C.34:13A-5.5), or where the public employer has been ordered by the commission to institute a payroll deduction of the representation fee in lieu of dues, a majority representative of public employees in an appropriate unit shall be entitled to a representation fee in lieu of dues by payroll deduction from the wages or salaries of the employees in such unit who are not members of a majority representative; provided, however, that membership in the majority representative is available to all employees in the unit on an equal basis and that the representation fee in lieu of dues shall be available only to a majority representative that has established and maintained a demand and return system which provides pro rata returns as described in subsection c. of section 2 of P.L.1979, c.477 (C.34:13A-5.5). The demand and return system shall include a provision by which persons who pay a representation fee in lieu of dues may obtain review of the amount returned through full and fair proceedings placing the burden of proof on the majority representative. Such proceedings shall provide for an appeal to a board consisting of three members to be appointed by the Governor, by and with the advice and consent of the Senate, who shall serve without compensation but shall be reimbursed for actual expenses reasonably incurred in the performance of their official duties.
Of such members, one shall be representative of public employers, one shall be representative of public employee

6

organizations and one, as chairman, who shall represent the interest of the public as a strictly impartial member not having had more than a casual association or relationship with any public employers, public employer organizations or public employee organizations in the 10 years prior to appointment. Of the first appointees, one shall be appointed for one year, one for a term of two years and the chairman, for a term of three years. Their successors shall be appointed for terms of two years each and until their successors are appointed and qualified, except that any person chosen to fill a vacancy shall be appointed only for the unexpired term of the member whose office has become vacant. Nothing herein shall be deemed to require any employee to become a member of the majority representative.

L. 1979, c. 477, s. 3. Amended by L. 2002, c. 46, s. 2.

**34:13A-5.7. Discrimination between nonmembers and members on basis of payment of fee; unfair practice.**

Any action engaged in by a public employer, its representatives or agents, or by an employee organization, its representatives or agents, which discriminates between nonmembers who pay the said representation fee and members with regard to the payment of such fee other than as allowed under this act, shall be treated as an unfair practice within the meaning of subsection 1(a) or subsection 1(b) of this act.

L. 1979, c. 477, s. 4, eff. July 1, 1980.

**34:13A-5.8. Payment to majority representative.**

Payment of the representation fee in lieu of dues shall be made to the majority representative during the term of the collective negotiation agreement affecting such nonmember employees and during the period, if any, between successive agreements so providing, on or after, but in no case sooner than the thirtieth day following the beginning of an employee's employment in a position included in the appropriate negotiations unit, and the tenth day following reentry into the appropriate unit for employees who previously served in a position included in the appropriate unit who continued in the employ of the public employer in an excluded position and individuals being reemployed in such unit from a reemployment list. For the purposes of this section, individuals employed on a 10-month basis or who are reappointed from year to year shall be considered to be in continuous employment.

L. 1979, c. 477, s. 5, eff. July 1, 1980.

**34:13A-5.9. Rules and regulations.**

The commission may promulgate rules or regulations to effectuate the purposes of this act.

L. 1979, c. 477, s. 6, eff. July 1, 1980.

**34:13A-5.10. Findings, declarations relative to collective negotiations units for Executive Branch employees; units designated.**

a. The Legislature finds and declares that, for more than three decades, there have been broad-based collective negotiations units for the employees in the Executive Branch of State government. This existing unit structure has contributed to the stability of labor relations between the public employees and the Executive Branch and has served to avoid disruption of services to the public. To foster continued harmonious labor relations between State employees and the Executive Branch, the existing structure for collective negotiations units must be codified.

In addition, the Legislature finds and declares that the structure should be expanded to permit collective negotiations for managers and deputy attorneys general who are not covered by the ten units for civilian employees of the Executive Branch.

b. (1) There shall be only twelve collective negotiations units for civilian employees of the Executive Branch of State government. The units shall be as follows: administrative and clerical; professional; primary level supervisory; high level supervisory; operations, maintenance and services; crafts; inspection and security; health care and rehabilitation services; State colleges and universities; State colleges and universities adjuncts; deputy attorneys general; and State government managers.

(2) An existing or newly established title that is not assigned managerial, executive or confidential duties, as defined in subsections (f) and (g) of section 3 of P.L.1941, c.100 (C.34:13A-3), may be placed in one of the twelve collective negotiations units for civilian employees by the Governor's Office of Employee Relations. Such placements may be challenged through a unit clarification procedure pursuant to the rules of the New Jersey Public Employment Relations Commission.

L.2005,c.142, s.1, eff. July 7, 2005; L.2009, c. 314, eff. January 18, 2010.

**34:13A-6. Powers and duties.**

(a) Upon its own motion, in an existing, imminent or threatened labor dispute in private employment, the board, through the Division of Private Employment Dispute Settlement, may, and, upon the request of the parties or either party to the dispute, must take such steps as it may deem expedient to effect a voluntary, amicable and expeditious adjustment and settlement ofthe differences and issues between employer and employees which have precipitated or culminated in or threaten to precipitate or culminate in such labor dispute.

(b) Whenever negotiations between a public employer and an exclusive representative concerning the terms and conditions of employment shall reach an impasse, the commission, through the Division of Public Employment Relations shall, upon the request of either party, take such steps as it may deem expedient to effect a voluntary resolution of the impasse. In the event of a failure to resolve the impasse by mediation the Division of Public Employment Relations is empowered to recommend or invoke factfinding with recommendation for settlement, the cost of which shall be borne by the commission.

(c) The board in private employment, through the Division of Private Employment Dispute Settlement, and the commission in public employment, through the Division of Public Employment

Relations, shall take the following steps to avoid or terminate labor disputes: (1) to arrange for, hold, adjourn or reconvene a conference or conferences between the disputants or one or more of their representatives or any of them; (2) to invite the disputants or their representatives or any of them to attend such conference and submit, either orally or in writing, the grievances of and differences between the disputants; (3) to discuss such grievances and differences with the disputants and their representatives; and (4) to assist in negotiating and drafting agreements for the adjustment in settlement of such grievances and differences and for the termination or avoidance, as the case may be, of the existing or threatened labor dispute.

(d) The commission, through the Division of Public Employment Relations, is hereby empowered to resolve questions concerning representation of public employees by conducting a secret ballot election or utilizing any other appropriate and suitable method designed to ascertain the free choice of the employees. The division shall decide in each instance which unit of employees is appropriate for collective negotiation, provided that, except where dictated by established practice, prior agreement, or special circumstances, no unit shall be appropriate which includes (1) both supervisors and nonsupervisors, (2) both professional and nonprofessional employees unless a majority of such professional employees vote for inclusion in such unit or, (3) both craft and noncraft employees unless a majority of such craft employees vote for inclusion in such unit. All of the powers and duties conferred or imposed upon the division that are necessary for the administration of this subdivision, and not inconsistent with it, are to that extent hereby made applicable. Should formal hearings be required, in the opinion of said division to determine the appropriate unit, it shall have the power to issue subpoenas as described below, and shall determine the rules and regulations for the conduct of such hearing or hearings.

(e) For the purposes of this section the Division of Public Employment Relations shall have the authority and power to hold hearings, subpoena witnesses, compel their attendance, administer oaths, take the testimony or deposition of any person under oath, and in connection therewith, to issue subpoenas duces tecum, and to require the production and examination of any governmental or other books or papers relating to any matter described above.

(f) In carrying out any of its work under this act, the board may designate one of its members, or an officer of the board to act in its behalf and may delegate to such designee one or more of its duties hereunder and, for such purpose, such designee shall have all the powers hereby conferred upon the board in connection with the discharge of the duty or duties so delegated. In carrying out any of its work under this act, the commission may designate one of its members or an officer of the commission to act on its behalf and may delegate to such designee one or more of its duties hereunder and, for such purpose, such designee shall have all of the powers hereby conferred upon the commission in connection with the discharge of the duty or duties so delegated.

(g) The board and commission may also appoint and designate other persons or groups of persons to act for and on its behalf and may delegate to such persons or groups of persons any and all of the powers conferred upon it by this act so far as it is reasonably necessary to effectuate the purposes of this act. Such persons shall serve without compensation but shall be reimbursed for any necessary expenses.

(h) The personnel of the Division of Public Employment Relations shall include only individuals familiar with the field of public employee-management relations. The commission's determination that a person is familiar in this field shall not be reviewable by any other body.

L. 1941, c. 100, p. 230, s. 6. Amended by L. 1968, c. 303, s. 8, eff. July 1, 1968; L. 1974, c. 123, s. 5.

**34:13A-6.1. Priority of reorganization plan of department of labor and industry.**

To the extent that the reorganization plan of the Department of Labor and Industry which was submitted to the Legislature on May 11, 1972 (effective July 10, 1972) is inconsistent with, changes or alters the powers of either the New Jersey Public Employment Relations Commission in the Division of Public Employment Relations or the Board of Mediation in the Division of Private Employment Dispute Settlement as they existed prior to the effective date of said reorganization, such reorganization plan shall be to such extent superseded and inoperative.

L. 1973, c. 326, s. 3, eff. Dec. 18, 1973.

**34:13A-7. Arbitration.**

Whenever a controversy shall arise between an employer and his employees which is not settled either in conference between representatives of the parties or through mediation in the manner provided by this act, such controversy may, by agreement of the parties, be submitted to arbitration, one person to be selected by the employer, one person to be selected by the employees, and a third selected by the representatives of the employer and employees, and in the event of any such appointment or selection not being made upon the request of the parties in the controversy, the department may select the third person to arbitrate the matter submitted; provided, however, that the failure or refusal of either party to submit a controversy to arbitration shall not be construed as a violation of the policy or purpose of this act, or of any provision thereof, nor shall failure or refusal to arbitrate constitute a basis for any action at law or suit in equity.

L. 1941, c. 100, p. 231, s. 7.

**34:13A-8. Strikes.**

Nothing in this act shall be construed to interfere with, impede or diminish in any way the right of private employees to strike or engage in other lawful concerted activities.

L. 1941, c. 100, p. 231, s. 8. Amended by L. 1968, c. 303, s. 9, eff. July 1, 1968.

**34:13A-8.1. Effect of act upon prior agreements or upon pension statutes.**

Nothing in this act shall be construed to annul or modify, or to preclude the continuation of any agreement during its current term heretofore entered into between any public employer and any employee organization nor shall any provision hereof annul or modify any pension statute or statutes of this State.

8

L. 1968, c. 303, s. 10, eff. July 1, 1968. Amended by L. 1974, c. 123, s. 6.

### 34:13A-8.2. Filed contracts in public employment.

The commission shall collect and maintain a current file of filed contracts in public employment. Public employers shall file with the commission a copy of any contracts it has negotiated with public employee representatives following the consummation of negotiations.

L. 1968, c. 303, s. 11, eff. July 1, 1968.

### 34:13A-8.3. Development and maintenance of programs.

The commission in conjunction with the Institute of Management and Labor of Rutgers, The State University, shall develop and maintain a program for the guidance of public employees and public employers in employee-management relations, to provide technical advice to public employees and public employers on employee-management programs, to assist in the development of programs for training employee and management personnel in the principles and procedures of consultation, negotiation and the settlement of disputes in the public service, and for the training of employee and management officials in the discharge of their employee-management relations responsibilities in the public interest.

L. 1968, c. 303, s. 12, eff. July 1, 1968. Amended by L. 1974, c. 123, s. 7.

### 34:13A-9. Personnel; compensation.

(1) For the performance of its work, under this act, the board may request and shall avail itself of and utilize the service of any officer or employee of the Department of Labor and Industry who shall render such assistance as the board may require without additional compensation. The board may, within the amount available therefor by appropriation, appoint a secretary and such other assistants and employees as it may require for the consummation of its work, prescribe their duties and fix their compensation. (2) Each member of the board shall be entitled to be reimbursed for his traveling and other expenses actually and necessarily incurred by him in the performance of his duties, and, in addition, shall receive a per diem allowance of $50.00 for each day, or part thereof, spent in the rendition of service to or for the board under this act; provided, however, that no member shall in any case receive per diem compensation as such member in an amount in excess of $5,000.00 for any 1 fiscal year.

L. 1941, c. 100, p. 231, s. 9. Amended by L. 1945, c. 32, p. 89, s. 2; L. 1967, c. 110, s. 1, eff. June 15, 1967.

### 34:13A-10. Disqualifications.

No member or officer of the board having any financial or other interest in a trade, business, industry or occupation in which a labor dispute exists or is threatened and of which the board has taken cognizance, shall be qualified to participate in any way in the acts or efforts of the board in connection with the settlement or avoidance thereof.

L. 1941, c. 100, p. 232, s. 10.

### 34:13A-10.1. Board members; participation; membership or employment in other agencies.

No member of the board shall take any part, directly or indirectly, in any proceeding involving any relation between employees and employers before any board, bureau, commission, officer or court, unless such member in such proceeding takes the part of the same group whether employees, employers, or the public, as he represents on the Board of Mediation.

No member of the board shall be a member or employee of any other public board, body, commission, bureau or agency which deals with employer and employee relations, whether Federal, State or local, except that he may be a member of any such board, body, commission, bureau or agency if his membership thereon is as a representative of the same group, whether employees, employers or the public, as it is on the Board of Mediation.

L. 1945, c. 32, p. 90, s. 3.

### 34:13A-11. Rules.

The board shall have power to adopt, alter, amend or repeal such rules in connection with the voluntary mediation of labor disputes in private employment and the commission shall have the same powers in public employment, as may be necessary for the proper administration and enforcement of the provisions of this act.

L. 1941, c. 100, p. 232, s. 11. Amended by L. 1968, c. 303, s. 13, eff. July 1, 1968.

### 34:13A-12. Construction.

Nothing contained in this act shall be construed as interfering with, impeding or diminishing in any way any right guaranteed by law or by the Constitution of the State or of the United States.

L. 1941, c. 100, p. 232, s. 12.

### 34:13A-13. Separability of provisions.

If any clause, sentence, paragraph or part of this act, or the application thereof to any person or circumstances, shall for any reason be adjudged by a court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder of this act, and the application of such provisions to other persons or circumstances, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof, directly involved in the controversy in which such judgment shall have been rendered and to the person or circumstances involved. It is hereby declared to be the legislative intent that this act would have been adopted had such invalid provisions not been included herein.

L. 1941, c. 100, p. 232, s. 13.

### 34:13A-14. Findings, declaration relative to compulsory arbitration procedure.

The Legislature finds and declares:

a. Recognizing the unique and essential duties which law enforcement officers and firefighters perform for the benefit and protection of the people of this State, cognizant of the life threatening dangers these public servants regularly confront in the daily pursuit of their public mission, and fully conscious of the fact that these public employees, by legal and moral precept, do not enjoy the right to strike, it is the public policy of this State that it is requisite to the high morale of such employees, the efficient operation of such departments, and to the general well-being and benefit of the citizens of this State to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes; and

b. It also is the public policy of this State to ensure that the procedure so established fairly and adequately recognizes and gives all due consideration to the interests and welfare of the taxpaying public; and

c. Further, it is the public policy of this State to prescribe the scope of the authority delegated for the purposes of this reform act; to provide that the authority so delegated be statutorily limited, reasonable, and infused with stringent safeguards, while at the same time affording arbitrators the decision making authority necessary to protect the public good; and to mandate that in exercising the authority delegated under this reform act, arbitrators fully recognize and consider the public interest and the impact that their decisions have on the public welfare, and fairly and reasonably perform their statutory responsibilities to the end that labor peace between the public employer and its employees will be stabilized and promoted, and that the general public interest and welfare shall be preserved; and, therefore,

d. To that end the provisions of this reform act, providing for compulsory arbitration, shall be liberally construed.

L. 1977, c. 85, s. 1, eff. May 10, 1977. Amended by L. 1995, c. 425, s. 2, eff. Jan. 10, 1996.

### 34:13A-14a. Short title.

This act shall be known and may be cited as the "Police and Fire Public Interest Arbitration Reform Act."

L. 1995, c. 425, s. 1.

### 34:13A-15. Definitions.

"Public fire department" means any department of a municipality, county, fire district or the State or any agency thereof having employees engaged in firefighting provided that such firefighting employees are included in a negotiating unit exclusively comprised of firefighting employees.

"Public police department" means any police department or organization of a municipality, county or park, or the State, or any agency thereof having employees engaged in performing police services including but not necessarily limited to units composed of State troopers, police officers, detectives and investigators of counties, county parks and park commissions, grades of sheriff's

officers and investigators; State motor vehicle officers, inspectors and investigators of the Alcoholic Beverage Commission, conservation officers in Fish, Game and Shell Fisheries, rangers in parks, marine patrolmen; correction officers, keepers, cottage officers, interstate escort officers, juvenile officers in the Department of Corrections and patrolmen of the Human Services and Corrections Departments; patrolmen of Capitol police and patrolmen of the Palisades Interstate Park Commission.

L. 1977, c. 85, s. 2, eff. May 10, 1977.

### 34:13A-16. Negotiations between public fire, police department and exclusive representative; binding arbitration.

a. (1) Negotiations between a public fire or police department and an exclusive representative concerning the terms and conditions of employment shall begin at least 120 days prior to the day on which their collective negotiation agreement is to expire. The parties shall meet at least three times during that 120-day period. The first of those three meetings shall take place no later than the 90th day prior to the day on which their collective negotiation agreement is to expire. By mutual consent, the parties may agree to extend the period during which the second and third meetings are required to take place beyond the day on which their collective negotiation agreement is to expire. A violation of this paragraph shall constitute an unfair practice and the violator shall be subject to the penalties prescribed by the commission pursuant to rule and regulation.

(2) Whenever those negotiations concerning the terms and conditions of employment shall reach an impasse, the commission, through the Division of Public Employment Relations shall, upon the request of either party, or upon its own motion take such steps, including the assignment of a mediator, as it may deem expedient to effect a voluntary resolution of the impasse.

b. (1) In the event of a failure to resolve the impasse by mediation, the Division of Public Employment Relations, at the request of either party, shall invoke fact-finding with recommendation for settlement of all issues in dispute unless the parties reach a voluntary settlement prior to the issuance of the fact finder's report and recommended terms of settlement. Factfindings shall be limited to those issues that are within the required scope of negotiations unless the parties to the fact-finding agree to fact-finding on permissive subjects of negotiation. In the event of a continuing failure to resolve an impasse by means of the procedure set forth in this paragraph, and notwithstanding the fact that such procedures have not been exhausted, the parties shall notify the commission, at a time and in a manner prescribed by the commission, as to whether or not they have agreed upon a terminal procedure for resolving the issues in dispute. Any terminal procedure mutually agreed upon by the parties shall be reduced to writing, provide for finality in resolving the issues in dispute, and shall be submitted to the commission for approval.

(2) Notwithstanding the provisions of paragraph (2) of subsection a. of this section or paragraph (1) of this subsection, either party may petition the commission for arbitration on or after the date on which their collective negotiation agreement expires. The petition shall be filed in a manner and form prescribed by the commission. The party filing the petition shall notify the other party of its action. The notice shall be

given in a manner and form prescribed by the commission.

Within 10 days of the receipt of the notice by the non-petitioning party, the parties shall notify the commission as to whether or not they have agreed upon a terminal procedure for resolving the issues in dispute. Any terminal procedure mutually agreed upon by the parties shall be reduced to writing, provide for finality in resolving the issues in dispute, and shall be submitted to the commission for approval. If the parties fail to agree on a terminal procedure, they shall be subject to the provisions of subsection d. of this section.

c. Terminal procedures that are approvable include, but shall not be limited to the following:

(1) Conventional arbitration of all unsettled items.

(2) Arbitration under which the award by an arbitrator or panel of arbitrators is confined to a choice between (a) the last offer of the employer and (b) the last offer of the employees' representative, as a single package.

(3) Arbitration under which the award is confined to a choice between (a) the last offer of the employer and (b) the last offer of the employees' representative, on each issue in dispute, with the decision on an issue-by-issue basis.

(4) If there is a factfinder's report with recommendations on the issues in dispute, the parties may agree to arbitration under which the award would be confined to a choice among three positions: (a) the last offer of the employer as a single package, (b) the last offer of the employees' representative as a single package, or (c) the factfinder's recommendations as a single package.

(5) If there is a factfinder's report with a recommendation on each of the issues in dispute, the parties may agree to arbitration under which the award would be confined to a choice on each issue from among three positions:  (a) the last offer of the employer on the issue, (b) the employee representative's last offer on the issue, or (c) the factfinder's recommendation on the issue.

(6) Arbitration under which the award on the economic issues in dispute is confined to a choice between (a) the last offer of the employer on the economic issues as a single package and (b) the employee representative's last offer on the economic issues as a single package; and, on any noneconomic issues in dispute, the award is confined to a choice between (a) the last offer of the employer on each issue in dispute and (b) the employee representative's last offer on that issue.

d. The following procedure shall be utilized if parties fail to agree on a terminal procedure for the settlement of an impasse dispute:

(1) In the event of a failure of the parties to agree upon an acceptable terminal procedure the parties shall separately so notify the commission in writing, indicating all issues in dispute and the reasons for their inability to agree on the procedure. The substance of a written notification shall not provide the basis for any delay in effectuating the provisions of this subsection.

(2) Upon receipt of such notification from either party or on the commission's own motion, the procedure to provide finality for the resolution of issues in dispute shall be binding arbitration under which the award on the unsettled issues is determined by conventional arbitration. The arbitrator shall separately determine whether the total net annual economic changes for each year of the agreement are reasonable under the eight statutory criteria set forth in subsection g. of this section.

e.  (1) The commission shall take measures to assure the impartial selection of an arbitrator or arbitrators from its special panel of arbitrators. Unless the parties, in a time and manner prescribed by the commission, mutually agree upon the selection of an arbitrator from the commission's special panel of arbitrators and so notify the commission in writing of that selection, the assignment of any arbitrator for the purposes of this act shall be the responsibility of the commission, independent of and without any participation by either of the parties.  The commission shall select the arbitrator for assignment by lot.

In any proceeding where an arbitrator selected by mutual agreement is unable to serve, the two parties shall be afforded an opportunity to select a replacement. If the two parties are unable to mutually agree upon the selection of a replacement within a time period prescribed by the commission, the commission shall select the replacement in the manner hereinafter provided.

In any proceeding where an assigned arbitrator is unable to serve or, pursuant to the preceding paragraph, the two parties are unable to mutually agree upon a replacement, the commission shall assign a replacement arbitrator. The assignment shall be the responsibility of the commission, independent of and without any participation by either of the parties. The commission shall select the replacement arbitrator for assignment by lot.

(2) Appointment to the commission's special panel of arbitrators shall be for a three-year term, with reappointment contingent upon a screening process similar to that used for determining initial appointments.

The commission may suspend, remove, or otherwise discipline an arbitrator for a violation of P.L.1977, c.85 (C.34:13A-14 et seq.), section 4 of P.L.1995, c.425 (C.34:13A-16.1) or for good cause.

f. (1) At a time prescribed by the commission, the parties shall submit to the arbitrator or tripartite panel of arbitrators their final offers on each economic and non-economic issue in dispute. The offers submitted pursuant to this section shall be used by the arbitrator for the purposes of determining an award pursuant to paragraph (2) of subsection d. of this section. The commission shall promulgate rules and procedures governing the submission of the offers required under this paragraph, including when those offers shall be deemed final, binding and irreversible.

(2) In the event of a dispute, the commission shall have the power to decide which issues are economic issues. Economic issues include those items which have a direct relation to employee income including wages, salaries, hours in relation to earnings, and other forms of compensation such as paid vacation, paid holidays, health and medical insurance, and other economic benefits to employees.

(3) Throughout formal arbitration proceedings the chosen arbitrator or panel of arbitrators may mediate or assist the parties in reaching a mutually agreeable settlement.

(4) Arbitration shall be limited to those subjects that are within the required scope of collective negotiations, except that the parties may agree to submit to arbitration one or more permissive subjects of negotiation.

(5) The decision of an arbitrator or panel of arbitrators shall include an opinion and an award, and shall be rendered within 120 days of the selection of the arbitrator by the mutual agreement of both parties or the commission's assignment of that arbitrator or panel of arbitrators, as the case may be, pursuant to paragraph (1) of subsection e. of this section; provided, however, the arbitrator or panel of arbitrators, for good cause, may petition the commission for an extension of not more than 60 days. The two parties, by mutual consent, may agree to an extension. The parties shall notify the arbitrator and the commission of any such agreement in writing. The notice shall set forth the specific date on which the extension shall expire. Any arbitrator or panel of arbitrators violating the provisions of this paragraph may be subject to the commission's powers under paragraph (2) of subsection e. of this section. The decision shall be final and binding upon the parties and shall be irreversible, except:

(a) Within 14 days of receiving an award, an aggrieved party may file notice of an appeal of an award to the commission on the grounds that the arbitrator failed to apply the criteria specified in subsection g. of this section or violated the standards set forth in N.J.S.2A:24-8 or N.J.S.2A:24-9. The appeal shall be filed in a form and manner prescribed by the commission. In deciding an appeal, the commission, pursuant to rule and regulation and upon petition, may afford the parties the opportunity to present oral arguments. The commission may affirm, modify, correct or vacate the award or may, at its discretion, remand the award to the same arbitrator or to another arbitrator, selected by lot, for reconsideration. An aggrieved party may appeal a decision of the commission to the Appellate Division of the Superior Court.

(b) An award that is not appealed to the commission shall be implemented immediately. An award that is appealed and not set aside by the commission shall be implemented within 14 days of the receipt of the commission's decision absent a stay.

(6) The parties shall bear the costs of arbitration subject to a fee schedule approved by the commission.

g. The arbitrator or panel of arbitrators shall decide the dispute based on a reasonable determination of the issues, giving due weight to those factors listed below that are judged relevant for the resolution of the specific dispute. In the award, the arbitrator or panel of arbitrators shall indicate which of the factors are deemed relevant, satisfactorily explain why the others are not relevant, and provide an analysis of the evidence on each relevant factor:

(1) The interests and welfare of the public. Among the items the arbitrator or panel of arbitrators shall assess when considering this factor are the limitations imposed upon the employer by P.L.1976, c.68 (C.40A:4-45.1 et seq.).

(2) Comparison of the wages, salaries, hours, and conditions of employment of the employees involved in the arbitration proceedings with the wages, hours, and conditions of employment of other employees performing the same or similar services and with other employees generally:

(a) In private employment in general; provided, however, each party shall have the right to submit additional evidence for the arbitrator's consideration.

(b) In public employment in general; provided, however, each party shall have the right to submit additional evidence for the arbitrator's consideration.

(c) In public employment in the same or similar comparable jurisdictions, as determined in accordance with section 5 of P.L.1995, c.425 (C.34:13A-16.2); provided, however, that each party shall have the right to submit additional evidence concerning the comparability of jurisdictions for the arbitrator's consideration.

(3) The overall compensation presently received by the employees, inclusive of direct wages, salary, vacations, holidays, excused leaves, insurance and pensions, medical and hospitalization benefits, and all other economic benefits received.

(4) Stipulations of the parties.

(5) The lawful authority of the employer. Among the items the arbitrator or panel of arbitrators shall assess when considering this factor are the limitations imposed upon the employer by P.L.1976, c.68 (C.40A:4-45.1 et seq.).

(6) The financial impact on the governing unit, its residents and taxpayers. When considering this factor in a dispute in which the public employer is a county or a municipality, the arbitrator or panel of arbitrators shall take into account, to the extent that evidence is introduced, how the award will affect the municipal or county purposes element, as the case may be, of the local property tax; a comparison of the percentage of the municipal purposes element or, in the case of a county, the county purposes element, required to fund the employees' contract in the preceding local budget year with that required under the award for the current local budget year; the impact of the award for each income sector of the property taxpayers of the local unit; the impact of the award on the ability of the governing body to (a) maintain existing local programs and services, (b) expand existing local programs and services for which public moneys have been designated by the governing body in a proposed local budget, or (c) initiate any new programs and services for which public moneys have been designated by the governing body in a proposed local budget.

(7) The cost of living.

(8) The continuity and stability of employment including seniority rights and such other factors not confined to the foregoing which are ordinarily or traditionally considered in the determination of wages, hours, and conditions of employment through collective negotiations and collective bargaining between the parties in the public service and in private employment.

(9) Statutory restrictions imposed on the employer.

Among the items the arbitrator or panel of arbitrators shall assess when considering this factor are the limitations imposed upon the employer by section 10 of P.L. 2007, c.62 (C.40A:4-45.45).

h. A mediator, factfinder, or arbitrator while functioning in a mediatory capacity shall not be required to disclose any files, records, reports, documents, or other papers classified as confidential received or prepared by him or to testify with regard to mediation, conducted by him under this act on behalf of any party to any cause pending in any type of proceeding under this act. Nothing contained herein shall exempt such an individual from disclosing information relating to the commission of a crime.

L. 1977,c. 85, s. 1. Amended L. 1995, c. 425, s. 3; L. 1997, c. 183; L. 2007, c. 62, s. 14, eff. April 3, 2007.

### 34:13A-16.1. Annual continuing education program for arbitrators.

The commission shall establish an annual continuing education program for the arbitrators appointed to its special panel of arbitrators. The program shall include sessions or seminars on topics and issues of relevance and importance to arbitrators serving on the commission's special panel of arbitrators, such as public employer budgeting and finance, public management and administration, employment trends and labor costs in the public sector, pertinent court decisions, employment issues relating to law enforcement officers and firefighters, and such other topics as the commission shall deem appropriate and necessary. In preparing the curriculum for the annual education program required under this section, the commission shall solicit suggestions from employees' representatives and public employers concerning the topics and issues each of those parties deem relevant and important.

Every arbitrator shall be required to participate in the commission's continuing education program. If a mediator or an arbitrator in any year fails to participate, the commission may remove that person from its special panel of arbitrators. If an arbitrator fails to participate in the continuing education program for two consecutive years, the commission shall immediately remove that individual from the special panel.

L. 1995, c. 425, s. 4., eff. Jan. 10, 1996.

### 34:13A-16.2. Guidelines for determining comparability of jurisdictions.

a. The commission shall promulgate guidelines for determining the comparability of jurisdictions for the purposes of paragraph (2) of subsection g. of section 3 of P.L. 1977, c. 85 (C.34:13A-16).

b. The commission shall review the guidelines promulgated under this section at least once every four years and may modify or amend them as is deemed necessary; provided, however, that the commission shall review and modify those guidelines in each year in which a federal decennial census becomes effective pursuant to R.S.52:4-1.

L. 1995, c. 425, s. 5, eff. Jan. 10, 1996.

### 34:13A-16.3. Fee schedule; commission costs.

The commission may establish a fee schedule to cover the costs of effectuating the provisions of P.L.1977, c.85 (C.34:13A-14 et seq.), as amended and supplemented; provided, however, that the fees so assessed shall not exceed the commission's actual cost of effectuating those provisions.

L. 1995, c. 425, s. 6, eff. Jan. 10, 1996.

### 34:13A-16.4. Biennial reports.

The commission shall submit biennial reports to the Governor and the Legislature on the effects of this amendatory and supplementary act on the negotiations and settlements between local governmental units and their public police departments and public fire departments and to include with that report any recommendations it may have for changes in the law. The reports required under this section shall be submitted in January of even numbered years.

L. 1995, c. 425, s. 7, eff. Jan. 10, 1996.

### 34:13A-16.5. Rules, regulations.

The commission, in accordance with the provisions of the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), shall promulgate rules and regulations to effectuate the purposes of this act.

L. 1995, c. 425, s. 8, eff. Jan. 10, 1996.

### 34:13A-16.6. Survey of private sector wage increases

Beginning on the July 1 next following the enactment of P.L.1995, c.425 (C.34:13A-14a et al.) and each July 1 thereafter, the New Jersey Public Employment Relations Commission shall perform, or cause to be performed, a survey of private sector wage increases for use by all interested parties in public sector wage negotiations. The survey shall include information on a Statewide and countywide basis. The survey shall be completed by September 1 next following enactment and by September 1 of each year thereafter. The survey shall be a public document and the commission shall make it available to all interested parties at a cost not exceeding the actual cost of producing the survey.

L. 1995, c. 425, s. 9, eff. Jan. 10, 1996.

### 34:13A-17. Powers of arbitrator.

The arbitrator may administer oaths, require the attendance of witnesses, and the production of such books, papers, contracts, agreements and documents as he may deem material to a just determination of the issues in dispute, and for such purpose may issue subpoenas. If any person refuses to obey a subpena, or refuses to be sworn or to testify, or if any witness, party or attorney is guilty of any contempt while in attendance at any hearing, the arbitrator may, or the Attorney General if requested shall, invoke the aid of the Superior Court within the county in which the hearing is being held, which court shall issue an appropriate order. Any failure to obey the order may be punished by the court as contempt.

L. 1977, c.  85, s. 4, eff. May 10, 1977.

**34:13A-18. Limitations on finding, opinion, order of arbitrator.**

The arbitrator shall not issue any finding, opinion or order regarding the issue of whether or not a public employer shall remain as a participant in the New Jersey State Health Benefits Program or any governmental retirement system or pension fund, or statutory retirement or pension plan; nor, in the case of a participating public employer, shall the arbitrator issue any finding, opinion or order regarding any aspect of the rights, duties, obligations in or associated with the New Jersey State Health Benefits Program or any governmental retirement system or pension fund, or statutory retirement or pension plan; nor shall the arbitrator issue any finding, opinion or order reducing, eliminating or otherwise modifying retiree benefits which exist as a result of a negotiated agreement, ordinance or resolution because of the enactment of legislation providing such benefits for those who do not already receive them.

L. 1977, c. 85, s. 5, eff. May 10, 1977. Amended by L. 1997, c. 330, s. 4, eff. June 1, 1998.

**34:13A-19. Decision; enforcement; venue; effective date of award; amendment or modification.**

The decision of the arbitrator may be enforced at the instance of either party in the Superior Court with venue laid in the county in which the dispute arose.       The commencement of a new public employer fiscal year after the initiation of arbitration procedures under this act, but before the arbitration decision, or its enforcement, shall not be deemed to render a dispute moot, or to otherwise impair the jurisdiction or authority of the arbitrator or his decision. Increases in rates of compensation awarded by the arbitrator shall take effect on the date of implementation prescribed in the award. The parties, by stipulation, may at any time amend or modify an award of arbitration.

L. 1977, c. 85, s. 6, eff. May 10, 1977.

**34:13A-21. Change in conditions during pendency of proceedings; prohibition without consent.**

During the pendency of proceedings before the arbitrator, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other, any change in or of the public employer or employee representative notwithstanding;but a party may so consent without prejudice to his rights or position under this supplementary act.

L. 1977, c. 85, s. 8, eff. May 10, 1977.

**34:13A-22. Definitions.**

As used in this act:

"Commission" means the New Jersey Public Employment Relations Commission.

"Commissioner" means the Commissioner of Education.

"Discipline" includes all forms of discipline, except tenure charges filed pursuant to the provisions of subsubarticle 2 of subarticle B of Article 2 of chapter 6 of Subtitle 3 of Title 18A of the New Jersey Statutes, N.J.S. 18A:6-10 et seq., or the withholding of increments pursuant to N.J.S.18A:29-14.

"Employees" means employees of an employer as defined by this act.

"Employer" means any local or regional school district, educational services commission, jointure commission, county special services school district, or board or commission under the authority of the commissioner or the State Board of Education.

"Extracurricular activities" include those activities or assignments not specified as part of the teaching and duty assignments scheduled in the regular work day, work week, or work year.

"Minor discipline" includes, but is not limited to, various forms of fines and suspensions, but does not include tenure charges filed pursuant to the provisions of subsubarticle 2 of subarticle B of Article 2 of chapter 6 of Subtitle 3 of Title 18A of the New Jersey Statutes, N.J.S.18A:6-10 et seq., or the withholding of increments pursuant to N.J.S.18A:29-14, letters of reprimand, or suspensions with pay pursuant to section 1 of P.L. 1971, c. 435 (C. 18A:6-8.3) and N.J.S. 18A:25-6.

"Regular work day, work week, or work year" means that period of time that all members of the bargaining unit are required to be present and at work.

"Teaching staff member" means a member of the professional staff of any employer holding office, position or employment of such character that the qualifications, for the office, position or employment, require him to hold a valid and effective standard, provisional or emergency certificate, appropriate to that office, position or employment, issued by the State Board of Examiners. "Teaching staff member" includes a school nurse.

L. 1989, c. 269, s. 1, eff. Jan. 4, 1990.

**34:13A-23. Assignment to extracurricular activities; subject to collective negotiations.**

All aspects of assignment to, retention in, dismissal from, and any terms and conditions of employment concerning extracurricular activities shall be deemed mandatory subjects for collective negotiations between an employer and the majority representative of the employees in a collective bargaining unit, except that the establishment of qualifications for such positions shall not constitute a mandatory subject for negotiations. If the negotiated selection procedures fail to produce a qualified candidate from within the district the employer may employ from outside the district any qualified person who holds an appropriate New Jersey teaching certificate.  If the employer is unable to employ a qualified person from outside of the district, the employer may assign a qualified teaching staff member from within the district.

L. 1989, c. 269, s. 2, eff. Jan.. 4, 1990.

**34:13A-24. Imposition of minor discipline.**

14

a. Notwithstanding any other law to the contrary, and if negotiated with the majority representative of the employees in the appropriate collective bargaining unit, an employer shall have the authority to impose minor discipline on employees. Nothing contained herein shall limit the authority of the employer to impose, in the absence of a negotiated agreement regarding minor discipline, any disciplinary sanction which is authorized and not prohibited by law.

b. The scope of such negotiations shall include a schedule setting forth the acts and omissions for which minor discipline may be imposed, and also the penalty to be imposed for any act or omission warranting imposition of minor discipline.

c. Fines and suspensions for minor discipline shall not constitute a reduction in compensation pursuant to the provisions of N.J.S.18A:6-10.

L. 1989, c. 269, s.3, eff. Jan. 4, 1990.

### 34:13A-25. Transfers of employees.

Transfers of employees by employers between work sites shall not be mandatorily negotiable except that no employer shall transfer an employee for disciplinary reasons.

L. 1989, c. 269, s. 4, eff. Jan. 4, 1990.

### 34:13A-26. Withholding increment for disciplinary reasons.

Disputes involving the withholding of an employee's increment by an employer for predominately disciplinary reasons shall be subject to the grievance procedures established pursuant to law and shall be subject to the provisions of section 8 of this act.

L. 1989, c. 269, s .5, eff. Jan. 4, 1990.

### 34:13A-27. Resolution of disputes.

a. If there is a dispute as to whether a transfer of an employee between work sites or withholding of an increment of a teaching staff member is disciplinary, the commission shall determine whether the basis for the transfer or withholding is predominately disciplinary.

b. If the commission determines that the basis for a transfer is predominately disciplinary, the commission shall have the authority to take reasonable action to effectuate the purposes of this act.

c. If the commission determines that the basis for an increment withholding is predominately disciplinary, the dispute shall be resolved through the grievance procedures established pursuant to law and shall be subject to the provisions of section 8 of this act.

d. If a dispute involving the reason for the withholding of a teaching staff member's increment is submitted to the commission pursuant to subsection a. of this section, and the commission determines that the reason for the increment withholding relates predominately to the evaluation of a teaching staff member's teaching performance, the teaching staff member may file a petition of appeal pursuant to N.J.S.18A:6-9 and N.J.S.18A:29-14, and the petition shall be deemed to be timely if filed within 90 days of notice of the commission's decision, or of the final judicial decision in any appeal from the decision of the commission, whichever date is later.

L. 1989, c. 269, s. 6, eff. Jan. 4, 1990.

### 34:13A-28. Additional rights.

Nothing in this act shall be deemed to restrict or limit any right established or provided by section 7 of P.L.1968, c.303 (C.34:13A-5.3); this act shall be construed as providing additional rights in addition to and supplementing the rights provided by that section.

L. 1989, c. 269, s. 7, eff. Jan. 4, 1990.

### 34:13A-29. Grievance procedures; binding arbitration.

a. The grievance procedures that employers covered by this act are required to negotiate pursuant to section 7 of P.L.1968, c.303 (C.34:13A-5.3) shall be deemed to require binding arbitration as the terminal step with respect to disputes concerning imposition of reprimands and discipline as that term is defined in this act.

b. In any grievance procedure negotiated pursuant to this act, the burden of proof shall be on the employer covered by this act seeking to impose discipline as that term is defined in this act.

L. 1989, c. 269, s. 8, eff. Jan. 4, 1990.

### 34:13A-30. Employment with public employee labor organizations, certain; prohibited.

During the period in which an individual, pursuant to section 504 of Pub.L.86-257 (29 U.S.C.s.504), is prohibited from serving: as a consultant or adviser to any labor organization; as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer, employee or representative in any capacity of any labor organization; as a labor relations consultant or adviser to a person engaged in an industry or activity affecting commerce, or as an officer, director, agent or employee of any group or association of employers dealing with any labor organization, or in a position having specific collective bargaining authority or direct responsibility in the area of labor-management relations in any corporation or association engaged in an industry or activity affecting commerce; in a position which permits the individual to receive a share of the proceeds from providing goods or services to any labor organization, or as an officer, executive or administrative employee of any entity, the activities of which are in whole or substantial part devoted to providing goods or services to any labor organization; or in any capacity involving decision-making authority over, or custody or control of, the moneys, funds, assets or property of a labor organization, the individual shall also be prohibited from serving:

(a) As a consultant or adviser to any organization representing public employees;

(b) As an officer, director, trustee, member of any governing body, business agent, manager, organizer, employee or representative in any capacity of any organization representing public employees;

(c) As a labor relations consultant or adviser to any public employer, or as an officer, director, agent or employee of any group or association of public employers, or in a position in which the individual has collective bargaining authority or responsibility in the area of labor-management relations for a public employer;

(d) In a position which permits the individual to receive a share of the proceeds from providing goods or services to any organization representing public employees, or as an officer, executive or administrative employee of any entity the activities of which are in whole or substantial part devoted to providing goods or services to any organization representing public employees; or

(e) In any capacity involving decision-making authority over, or custody or control of, the moneys, funds, assets or property of an organization representing public employees.

For the purposes of this section, "labor organization" means a labor organization as defined in section 3 of Pub.L.86-257 (29 U.S.C. s.402).

L. 1999, c. 3, s. 1, eff. Jan. 21, 1999.

**34:13A-31. Short title.**

This act shall be known and may be cited as the "School Employees Contract Resolution and Equity Act."

L. 2003, c. 126, s. 1, eff. July 10, 2003.

**34:13A-32. Definitions relative to school employee collective negotiations.**

For the purposes of this act:

"Employer" or "public employer" means any local or regional school district, charter school and its board of trustees, vocational school district, educational services commission, jointure commission, county special services school district, community college, county college, or board or commission under the authority of the Commissioner of Education, the State Board of Education, or the New Jersey Commission on Higher Education.

"Majority representative" means the majority representative of the employees in a collective bargaining unit which is recognized or certified as the majority representative as the result of recognition or certification procedures under the "New Jersey Employer-Employee Relations Act," P.L.1941, c.100 (C.34:13A-1 et seq.), or is voluntarily recognized by the employer.

"Commission" means the New Jersey Public Employment Relations Commission.

L. 2003, c. 126, s. 2, eff. July 10, 2003.

**34:13A-33. Terms, conditions of employment under expired agreements.**

Notwithstanding the expiration of a collective negotiations agreement, an impasse in negotiations, an exhaustion of the commission's impasse procedures, or the utilization or completion of the procedures required by this act, and notwithstanding any law or regulation to the contrary, no public employer, its representatives, or its agents shall unilaterally impose, modify, amend, delete or alter any terms and conditions of employment as set forth in the expired or expiring collective negotiations agreement, or unilaterally impose, modify, amend, delete, or alter any other negotiable terms and conditions of employment, without specific agreement of the majority representative.

L. 2003, c. 126, s. 3, eff. July 10, 2003.

**34:13A-34. Participation in mandatory fact finding; report; appointment of super conciliator.**

a. In any case in which collective negotiations between an employer and a majority representative have failed to result in the parties reaching agreement on the terms of a negotiated agreement and the commission's mediation procedures have been exhausted with no final agreement having been reached, the parties shall be required to participate in mandatory fact finding, which shall be conducted by a fact finder under the jurisdiction of the commission, subject to procedures established by the commission pursuant to regulation. The fact finder shall be appointed no later than 30 days after the last meeting between the parties and the mediator in connection with the mediation pursuant to this act.

b. Following completion of such fact finding, the fact finder's report shall be made available to the parties immediately after its issuance, and to the public 10 days thereafter.

c. If the employer and the majority representative do not reach a voluntary negotiated agreement within 20 days after the issuance of the fact finder's report, the commission shall appoint a super conciliator to assist the parties, based upon procedures and subject to qualifications established by the commission pursuant to regulation.

L. 2003, c. 126, s. 4, eff. July 10, 2003.

**34:13A-35. Investigatory proceedings.**

The super conciliator shall promptly schedule investigatory proceedings. The purpose of the proceedings shall be to:

a. Investigate and acquire all relevant information regarding the dispute between the parties;

b. Discuss with the parties their differences, and utilize means and mechanisms, including but not limited to requiring 24-hour per day negotiations, until a voluntary settlement is reached, and provide recommendations to resolve the parties' differences;

c. Modify or amend the fact finder's report for reconsideration by the parties in a further effort to achieve a voluntary settlement by the parties; and

d. Institute any other non-binding procedures deemed appropriate by the super conciliator.

L. 2003, c. 126, s. 5, eff. July 10, 2003.

**34:13A-36. Final report.**

If the actions taken by the super conciliator fail to resolve the dispute, the super conciliator shall issue a final report, which shall be provided to the parties promptly and made available to the public within 10 days thereafter.

L. 2003, c. 126, s. 6, eff. July 10, 2003.

**34:13A-37. Confidentiality; exceptions.**

The mediator, fact finder, or super conciliator, while functioning in a mediatory capacity, shall not be required to disclose any files, records, reports, documents, or other papers classified as confidential which are received or prepared by him or to testify with regard to mediation conducted by him under this act. Nothing contained herein shall exempt an individual from disclosing information relating to the commission of a crime.

L. 2003, c. 126, s. 7, eff. July 10, 2003.

**34:13A-38. Report to Governor, Legislature.**

Five years after the effective date of this act, the commission shall submit a report to the Governor and to the Legislature on the effects of this act on the negotiations and settlement between school employees and their employers with any recommendations it may have for any changes in the law.

L. 2003, c. 126, s. 8, eff. July 10, 2003.

**34:13A-39. Rules, regulations.**

The commission, in accordance with the provisions of the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.) shall promulgate rules and regulations to effectuate the purposes of this act.

L. 2003, c. 126, s. 9, eff. July 10, 2003.

# Exhibit 2

# CHAPTER 17
## PUBLIC EMPLOYMENT RELATIONS COMMISSION APPEAL BOARD[i]

### N.J.A.C. 19:17 (2016)

### CHAPTER TABLE OF CONTENTS

**SUBCHAPTER 1. DESCRIPTION OF ORGANIZATION**

19:17-1.1 Description of the Appeal Board

19:17-1.2 Staff of the Appeal Board

19:17-1.3 Delegation of authority to staff of the Division of Public Employment Relations, officers of the Appeal Board

SUBCHAPTER 2. PROCEDURES

19:17-2.1 Rules to be read in conjunction with the rules of the Office of Administrative Law

SUBCHAPTER 3. AMOUNT OF REPRESENTATION FEE IN LIEU OF DUES

19:17-3.1 Designation of fiscal year

19:17-3.2 Designation of dues year

19:17-3.3 Annual notice to nonmembers; copy of demand and return system to public employer

19:17-3.4 Amount of representation fee in lieu of dues; annual adjustment

SUBCHAPTER 4. REVIEW OF REPRESENTATION FEE IN LIEU OF DUES

19:17-4.1 Period for filing of requests for review

19:17-4.2 Fees of nonmembers filing requests for review; escrow of amounts reasonably in dispute

19:17-4.3 Time for completion of demand and return system

19:17-4.4 Results of demand and return system, payment of interest on amounts returned

19:17-4.5 Time for filing petitions with Appeal Board

## SUBCHAPTER 1. DESCRIPTION OF ORGANIZATION

### § 19:17-1.1 Description of the Appeal Board

The Public Employment Relations Commission Appeal Board (the "Appeal Board") is the board established by N.J.S.A. 34:13A-5.6 to consider petitions of appeal of public employees, who are not members of the employee organization which represents the employees' collective negotiations unit, concerning the amount of the representation fee in lieu of dues paid by the nonmember employees.

CASE NOTES:

Tender by union of disputed fees rendered moot teachers' challenge to fees. Daly v. High Bridge Teachers' Ass'n, 242 N.J.Super. 12, 575 A.2d 1373 (A.D.1990), certification denied 122 N.J. 356, 585 A.2d 366

### § 19:17-1.2 Staff of the Appeal Board

The staff of the Appeal Board shall consist of the personnel of the Division of Public Employment Relations (N.J.S.A. 34:13A-5.1), and the Appeal Board may utilize the services of the personnel of the Division of Public Employment Relations as well as the offices and equipment of the said Division, to process those matters which come before it and to otherwise perform its functions pursuant to N.J.S.A. 34:13A-5.6.

### § 19:17-1.3 Delegation of authority to staff of the Division of Public Employment Relations, officers of the Appeal Board

When the personnel of the Division of Public Employment Relations are carrying out functions on behalf of the Appeal Board, it shall be understood that such personnel are acting as officers of the Appeal Board and that the Appeal Board has delegated all the powers necessary to permit the discharge of the duty or duties delegated.

## SUBCHAPTER 2. PROCEDURES

### § 19:17-2.1 Rules to be read in conjunction with the rules of the Office of Administrative Law

These rules are to be read in conjunction with the Uniform Administrative Procedure Rules of Practice (UAPRP), N.J.A.C. 1:1-1, and the rules of special applicability for hearings initiated in contested cases before the Public Employment Relations Commission Appeal Board, N.J.A.C. 1:20.

## SUBCHAPTER 3. AMOUNT OF REPRESENTATION FEE IN LIEU OF DUES

### § 19:17-3.1 Designation of fiscal year

(a) Every majority representative which collects a representation fee in lieu of dues shall establish a fiscal year system of accounting for the expenditures of such organization.

(b) The fiscal year may be the calendar year or any other 12 month period.

### § 19:17-3.2 Designation of dues year

(a) Every majority representative which collects a representation fee in lieu of dues shall establish a dues year.

(b) The dues year may be the calendar year or any other 12 month period, except that the dues year may not commence prior to the start of the fiscal year.

§ 19:17-3.3 Annual notice to nonmembers; copy of demand and return system to public employer

(a) Prior to the commencement of payroll deductions of the representation fee in lieu of dues for any dues year, the majority representative shall provide all persons subject to the fee with a notice adequately explaining the basis of the fee, which shall include:

1. A statement, verified by an independent auditor or by some other suitable method, of the expenditures of the majority representative for its fiscal year ending within 12 months prior to the date the notice required by this section is served on all persons subject to the fee. The statement shall set forth the major categories of expenditures and shall also identify expenditures of the majority representative and its affiliates which are in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment or applied toward the cost of benefits only available to members of the majority representative.

2. A copy of the demand and return system established by the majority representative pursuant to N.J.S.A. 34:13A-5.6, including instructions to persons paying the representation fee in lieu of dues as to how to request review of the amount assessed as a representation fee in lieu of dues.

3. The name and address of the financial institution where the majority representative maintains an account in which to escrow portions of representation fees in lieu of dues which are reasonably in dispute. The interest rate of the account in effect on the date the notice required by (a) above is issued shall also be disclosed.

4. The amount of the annual representation fee in lieu of dues, or an explanation of the formula by which the representation fee is set, and the schedule by which the fee will be deducted from pay.

(b) The majority representative shall provide a copy of the demand and return system referred to in (a)2 above to the public employer.

§ 19:17-3.4 Amount of representation fee in lieu of dues; annual adjustment

(a) The maximum representation fee in lieu of dues assessed nonmembers in any dues year shall be the lower of:

1. Eighty-five percent of the regular membership dues, fees and assessments charged by the majority representative to its own members.

2. Regular membership dues, fees and assessments, charged by the majority representative to its own members, reduced by the percentage amount spent during the most recently completed fiscal year by the majority representative and any affiliate of the majority representative which receives any portion of the representation fees in lieu of dues paid or payable to the majority representative on benefits available to or benefitting only its members and in aid of activities or

causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment. The amount shall be based upon the figures contained in the statement provided nonmembers prior to the start of the dues year in accordance with N.J.A.C. 19:17-3.3(a)1.

(b) Every majority representative shall annually recalculate its representation fee in lieu of dues in accordance with (a) above.

LAW REVIEW AND JOURNAL COMMENTARIES:

Public Employment--Representation Fees, P.R. Chenoweth, 134 N.J.L.J. No. 16, 61 (1993).

CASE NOTES:

Regulation requiring representative body to deduct political-activity portion of fee as to all nonmembers. New Jersey Educ. Ass'n v. New Jersey Public Employment Relations Com'n, 266 N.J.Super. 66, 628 A.2d 789 (A.D.1993), certification denied 134 N.J. 569, 636 A.2d 526.

**SUBCHAPTER 4. REVIEW OF REPRESENTATION FEE IN LIEU OF DUES**

**§ 19:17-4.1 Period for filing of requests for review**

(a) Each nonmember shall be afforded a period of at least 30 days after the majority representative has provided the information described in N.J.A.C. 19:17-3.3(a) within which to file a request for review of the amounts assessed by the majority representative as the nonmember's representation fee in lieu of dues.

(b) Any request for review of a representation fee in lieu of dues, filed within the time period set by the majority representative in accordance with (a) above, will be deemed effective to entitle the employee to a return of any portion of the employee's representation fee in lieu of dues which is determined to be non-chargeable to the employee.

**§ 19:17-4.2 Fees of nonmembers filing requests for review; escrow of amounts reasonably in dispute**

(a) Prior to receiving representation fees in lieu of dues in any dues year, the majority representative shall open an interest-bearing escrow account in any financial institution in which to place all or part of representation fees in lieu of dues to be collected from nonmembers who have filed timely requests for review pursuant to N.J.A.C. 19:17-4.1.

(b) The majority representative shall place in escrow any amount which is reasonably in dispute.

LAW REVIEW AND JOURNAL COMMENTARIES:

Public Employment--Representation Fees. P.R. Chenoweth, 134 N.J.L.J. No. 16, 61 (1993).

### § 19:17-4.3 Time for completion of demand and return system

(a) Proceedings in the demand and return system established by the majority representative pursuant to N.J.S.A. 34:13A-5.6 shall be completed within 60 days after the commencement of payroll deductions of representation fees in lieu of dues for the current dues year.

(b) After 60 days from the commencement of payroll deductions of representation fees in lieu of dues for the current dues year, or the completion of demand and return system proceedings, whichever date is earlier, any nonmember who has a pending request for review shall be deemed to have exhausted demand and return system proceedings pursuant to N.J.A.C. 1:20-4.1 and N.J.A.C. 19:17-4.5 and may file a petition of appeal with the Appeal Board in accordance with N.J.A.C. 1:20-6.1.

(c) Any majority representative which has commenced, but has not completed, demand and return system proceedings within the time set forth in (a) above shall continue such proceedings to completion, notwithstanding the filing of petitions with the Appeal Board by nonmembers who have requests for review pending with the majority representative, unless all pending requests have been withdrawn or presented to the Appeal Board.

(d) This section shall also apply to demand and return system proceedings conducted by any affiliate of the majority representative which receives any portion of the representation fees in lieu of dues paid or payable to the majority representative.

---

[i] Title 19, Chapter 17 -- Chapter Notes

CHAPTER AUTHORITY:

N.J.S.A. 34:13A-5.9.

SOURCE AND EFFECTIVE DATE:

Effective: May 26, 2015.

See: 47 N.J.R. 1651(b).

EXPIRATION DATE:

Chapter 17, Public Employment Relations Commission Appeal Board, expires on May 26, 2022.

### § 19:17-4.4 Results of demand and return system, payment of interest on amounts returned

(a) On completion of demand and return system proceedings, a written decision shall be served on each nonmember whose request for review of the fee is involved in such proceeding.

(b) If the demand and return system proceedings results in a determination that the amount charged to the nonmember was in excess of the amount allowed by statute, such excess amount shall accompany the written decision.

(c) If the amount returned is equal to or less than the portion of the nonmember's representation fee held in the majority representative's escrow account, then the actual interest earned on the amount returned shall be paid to the nonmember.

(d) If the amount returned is greater than the portion of the nonmember's representation fee held in the majority representative's escrow account, then the nonmember will receive interest payable at the judgment rate for the entire amount of the rebate. (See N.J. Court Rules, R. 4:42-11.)

### § 19:17-4.5 Time for filing petitions with Appeal Board

A petition of appeal seeking review by the Appeal Board of a representation fee in lieu of dues charged by a majority representative pursuant to N.J.S.A. 34:13A-5.5 shall be filed within six months after payroll deductions to collect the petitioner's fee have commenced.

# Exhibit 3

# AGREEMENT
## between

# CLEARVIEW REGIONAL HIGH SCHOOL DISTRICT
# BOARD OF EDUCATION

## and

# CLEARVIEW EDUCATION ASSOCIATION

## July 1, 2015- June 30, 2018

## TABLE OF CONTENTS

| ARTICLE | TITLE | PAGE NUMBER |
|---------|-------|-------------|
| | PREFACE | 1 |
| 1 | RECOGNITION | 1 |
| 2 | NEGOTIATIONS PROCEDURE | 1 |
| 3 | GRIEVANCE PROCEDURE | 2 |
| 4 | TEACHER ASSIGNMENT | 5 |
| 5 | EVALUATION PROCEDURE | 6 |
| 6 | STAFF VACANCIES AND PROMOTIONS | 7 |
| 7 | WORK TIME | 7 |
| 8 | PROFESSIONAL IMPROVEMENT POLICY | 16 |
| 9 | DEDUCTION OF DUES | 18 |
| 10 | LEAVES OF ABSENCE | 18 |
| 11 | MANAGEMENT'S RIGHTS | 22 |
| 12 | RULES | 23 |
| 13 | SEPARABILITY | 23 |
| 14 | ASSOCIATION RIGHTS | 23 |
| 15 | INSURANCE BENEFITS | 23 |
| 16 | REPRESENTATION FEE | 25 |
| 17 | SALARIES | 27 |
| 18 | DURATION OF AGREEMENT | 29 |
| SCHEDULE 1 | TEACHERS' SALARY GUIDES | 30 |
| SCHEDULE 2 | CO-CURRICULAR STIPENDS | 33 |
| SCHEDULE 3 | SECRETARIAL/CLERK SALARIES | 37 |
| SCHEDULE 4 | CUSTODIAN/GROUNDSKEEPER/MAINTENANCE SALARIES | 37 |
| SCHEDULE 5 | FOOD SERVICE HOURLY RATES | 37 |
| SCHEDULE 6 | INSTRUCTIONAL AIDE SALARIES | 37 |
| SCHEDULE 7 | NON-INSTRUCTIONAL AIDE SALARIES | 37 |
| SCHEDULE 8 | BUS DRIVER HOURLY RATES | 38 |
| SCHEDULE 9 | BUS AIDE HOURLY RATES | 38 |
| SCHEDULE 10 | LAVATORY/HALL AIDE HOURLY RATES | 38 |
| SCHEDULE 11 | CHILD DEVELOPMENT AIDE HOURLY RATES | 38 |
| SCHEDULE 12 | SECURITY GUARD SALARY | 38 |

## PREFACE

The Clearview Regional High School District Board of Education, hereinafter called the "Board," and the Clearview Education Association, hereinafter called the "Association", agree to the contents of this document as enumerated in the following.

## ARTICLE 1 - RECOGNITION

A.  The Clearview Regional High School District Board of Education hereby recognizes the Clearview Regional Education Association as the exclusive representative for all certified teaching personnel and specified non-teaching personnel, under contract or on leave, for collective negotiations purposes as defined in Chapter 123, Public Laws of 1974.

B.  The term "employee" shall include all teachers, nurses, guidance counselors, school psychologists, librarians, reading teachers, learning disability specialists, speech language specialists, learning disability teaching consultants, athletic trainer, and all other professional staff under contract, and secretaries, clerks, cafeteria workers, custodians, maintenance personnel, groundskeepers, instructional aides (classroom; classroom/special education), non-instructional aides, lavatory aides, hall monitors, bus drivers, security guards, and bus aides; but excluding confidential employees, supervisory employees, and managerial executives within the meaning of the Act.

C.  Non-teaching personnel who shall be charged with the specific responsibility to supervise and evaluate teachers, however, shall be excluded from the unit.

D.  "The term "teacher" as herein used shall include all certified professional educators. The term "support personnel" as herein used shall include all secretaries, clerks, administrative secretaries, cafeteria workers, custodians, maintenance personnel, groundskeepers, instructional aides (classroom; classroom/special education) , non-instructional aides, security guards, lavatory aides, hall monitors, bus drivers, and bus aides.

E   The term "employee(s)" as herein used shall include all teachers and support personnel.

## ARTICLE 2 - NEGOTIATIONS PROCEDURE

A.  At the first meeting of the parties, proposals will be exchanged. This meeting shall occur no later than February 28 of a negotiations year.

B.  Ground rules will be set at the first meeting.

C.  Provisions agreed upon by the negotiating representatives of the Association and the Board may be submitted individually to the parent bodies for approval.  They shall not be formally adopted, however, nor become effective until such a time as they are ratified as a total agreement by the parent bodies.

D.  The Board and the Association shall, upon request of the other party, freely exchange any pertinent information, data, or surveys which shall not constitute a breach of statutes or rules and regulations of the State Board of Education, the local Board policy, or Statutes of the State of New Jersey.  Association representatives shall have access to

the minutes of the Board, as well as the annual audit report and copies of the current year's budget.

## ARTICLE 3 - GRIEVANCE PROCEDURE

A.    Definitions:

1.    Definition of Grievance

A grievance is a claim by an employee or the Association based upon the interpretation, application or violation of this agreement, policies or administrative decisions affecting terms and conditions of employment.

2.    Non-Arbitral Grievance

A "non-arbitral grievance" is an allegation by an employee covered by this Agreement, or the Association, that there has been a violation of Board policies, or that an Administrative decision violates the rights of the employee.  The Board shall be the last step in this procedure on this type of grievance.  These non-contract grievances may not be submitted to binding arbitration.

3.    Arbitral Grievance:

An "arbitral grievance" is an allegation that there has been a violation of   a provision of this Agreement. Such grievances may be submitted through the entire grievance procedure, up to and including binding arbitration, as the final step in that procedure. Only grievances that deal with the violations of the provisions of this Agreement may be submitted to binding arbitration.

4.    Grievant:

A "grievant" is an employee who files the grievance or the Association.

5.    Representative:

A "representative" is an employee who files the grievance or the Association.

6.    Day:

"Day" means a day when district schools are open for business.

7.    Party in Interest:

"Party in Interest" is a person, agent, or agency with an interest in the grievance.

B.    Procedures:

1.    Grievances shall be processed promptly and expeditiously.

2.    Formal grievances and appeals shall be filed in writing.

3.    Communications and decisions concerning formal grievances shall be in writing.

4.  A grievant shall be permitted a representative at all levels of the procedure.

5.  There shall be no additional evidence submitted during the grievance process by either party once a grievance has been submitted to the Board.

6.  Failure by the grievant to process a grievance within the specified time shall render the grievance null and void.

7.   Failure by the Board to issue a decision within the specified time limits shall advance the grievance to the next level.

8.  Grievances shall be adjudicated according to the terms of this procedure and the filing, pendency, or hearing of any grievance shall not impede the normal management of the work force or operations of any of the activities or functions of the Board.

9.  Forms for grievance processing shall be developed between the parties, and shall be mutually agreed by the parties, and distributed on an as needed basis by either party.

10. The parties in interest will cooperate in investigating and providing pertinent information concerning a grievance being processed.

11. Notice of hearings shall be given to the grievant at least five (5) days in advance, and such hearing shall be held on mutually agreeable premises.

C.  Processing:

1.  Step One - A grievance, to be considered under this procedure, must be initiated by the grievant within fifteen (15) days from the time of its occurrence, or the time when the aggrieved became aware, or should have become aware, of the alleged grievance. Any employee covered by this Agreement who has a grievance shall discuss it first with his/her Principal, or immediate supervisor, in an attempt to resolve the matter informally at that level of supervision.

2.  Step Two - If, as a result of the above discussion, the matter is not resolved satisfactorily within five (5) school days, the grievant shall set forth his/her grievance in writing to the Principal or Director of Pupil Personnel Services, as applicable, or in the case of non-teaching personnel, to the next level of supervision, on the form provided. The Principal, Director of Pupil Personnel, or appropriate supervisor, shall communicate his/her decision to the grievant in writing within ten (10) school days after receipt of the written grievance.

The written grievance must specify the following:

- The date of the occurrence giving rise to the grievance

- The date the grievance is filed.

- The nature of the grievance

- The specific provisions of the contract or specific board policies allegedly violated

- The remedy being sought

3.   Step Three - The grievant, no later than five (5) days after receipt of the decision in the foregoing step, may appeal the decision to the Superintendent of Schools. The appeal to the Superintendent must be made on the form provided, reciting the matter as specified above, and his/her dissatisfaction with decisions previously rendered. The Superintendent shall attempt to resolve the matter as promptly as possible, but within a period not to exceed fifteen (15) days. The Superintendent shall communicate his/her decision in writing to the grievant, and all related papers and evidence shall be attached.

4.   Step Four - If the grievance is not resolved to the grievant's satisfaction, he/she may request, not later than five (5) days after receipt of the Superintendent's decision, a review by the Board. The request shall be submitted in writing to the Superintendent of Schools, and all related papers and evidence shall be attached. The Board, or a committee thereof, shall review the grievance and shall, at the option of the Board, hold a hearing with the grievant and render a decision in writing within twenty (20) days of receipt of the grievance by the Board.

5.   Step Five -

    a.   If a decision of the Board does not resolve the grievance to the satisfaction of the grievant, and the Association wishes review by a third party, the grievance may be submitted to binding arbitration, as long as the grievance concerns a matter that is an allegation that a provision of the contract has been violated. If arbitration is requested, the Association shall notify the Board of Education within ten (10) days of receipt of the Board's decision in Step Four. The notification to the Board of Education shall be submitted by certified mail to the Office of the Superintendent of Schools.

    b.   Grievances concerning (1) any matter for which a specified method of review is prescribed, either by law or in any regulation of the State Commissioner of Education, or any matter which, according to law, is either beyond the scope of the Board authority, or limited to action by the Board alone; (2) a complaint of a non-tenure teacher which arises by reason of his/her not being re-employed; (3) a complaint by any teacher occasioned by an appointment to or lack of appointment to, retention or lack of retention in these positions, in which tenure is either not possible or not required; (4) any matter not part of this Agreement; and (5) any Board policy shall not be deemed to be arbitrable.

D.    Services of an Arbitrator:

The following procedures shall be used to secure the services of an arbitrator.

1.    Once the Board of Education has received the notification within the   time limits stated in C-5, Paragraph A above, the Association may request the Public Employment Relations Commission arbitration selection procedures be invoked.  It will be the responsibility of the parties to follow those selection procedures in determining who shall serve as arbitrator in each instance.

2.    The following rules will be binding on any arbitrator and the parties.

a.    The arbitrator must first rule on the arbitrability of the grievance,   if so requested by either party.

b.    The arbitrator shall have no power to add to, subtract from, or alter the language of this Agreement. He/she will have no power to make an award inconsistent with law, and he/she shall have no power to entertain grievances that do not constitute violations of this Agreement.  The arbitrator shall rule only on the allegation that a provision of the Agreement has been violated.

c.    The arbitrator's decisions shall be final and binding on all parties on matters regarding violations of the contract.

d.    The cost of the services of the arbitrator shall be shared equally by the parties in interest.

E.    End of the Year Grievances:

If a grievance occurs at the end of the school year, and if an insufficient number of school days exist before the last day of school in which the grievance can be processed fully, the time limits may be reduced or extended by mutual agreement.

## ARTICLE 4 - TEACHER ASSIGNMENT

The building principal shall cause to be sent an electronic copy to each teacher a written notice of their class and/or subject assignments for the forthcoming year on or before August 1st, or as soon thereafter as is practicable. The teacher not advised of such assignments by August 1st shall instead be sent an electronic copy an explanation of the reason for the delay, and be given a subsequent date when they might reasonably expect such notification of assignment.  The purpose and intent of this Article is to make known to teachers their class and subject assignments as soon as factors of scheduling and staffing shall permit.

## ARTICLE 5- EVALUATION PROCEDURE

A.  Teachers:

1.  Teachers shall be evaluated only by professional employees of the district who hold bona fide state certificates for supervision, and only in terms of those documents which have been placed in their files.

2.  Signed evaluations will be completed in duplicate, with one (1) copy transmitted to the teacher.  One (1) of the copies shall be signed by the teacher and returned to the evaluator; the other will be retained by the teacher.  Should the teacher wish to make comment about his/her evaluation in general, or about any part of his/her evaluation in particular, he/she may do so on the evaluation sheet he/she signs and returns. Additional sheets may be appended to the original evaluation, but each must be signed and dated by the person originating same.

3.  Teachers shall receive a copy of any written evaluation and/or other reports, with the exception of letters of recommendation, and be given an opportunity to note differences of opinion on such reports prior to their inclusion in their personal file. Teachers wishing an interim review may initiate a request through the Association representative, or directly with the building principal. During such review, the principal shall remove from the file such data and/or reports which would seem to have become irrelevant. Within ten (10) days of the review, the teacher concerned will receive a list of the documents contained therein.

4.  Under this procedure, end-year summary evaluations will be presented, utilizing observation evaluation data previously included in the employee's file.

5.  Any provisions regarding teacher evaluations contained in this Article or anywhere else in this Agreement shall be consistent with the Board approved evaluation model and appropriate N.J. State Regulations, Administrative Code and statute.

B.  Support Personnel:

1.  Evaluation of employee performance will be conducted by an appropriate supervisor or administrator on at least one (1) occasion during the contract year. An employee will receive a written evaluation sheet after completion of the necessary evaluation activities. If the employee wishes to discuss the supervisory comments on the evaluation sheet, the employee should contact the immediate supervisor and make an appointment for said discussion.  Any disagreements the employee has with the evaluation should be made known to the immediate supervisor during the conference.

2.  All conferences held in connection with this Article will be held in strict confidence, and not in the presence of other members of the bargaining unit, or other employees of the district.

3.  The employee shall affix his/her initials to the evaluation report once the evaluation conference has been completed.

4.  Under this procedure, end-year summary evaluations will be presented, utilizing observation and evaluation data previously included in the employee's file.

5.    All employees will receive a copy of their written evaluation at least twenty-four (24) hours before a conference.

6.    Placement of employee's initials on an evaluation form signifies receipt, but not acceptance, of the contents of the form.

7.    An employee may attach a written comment to an evaluation form after the conference is concluded.  Such response shall also be sent to the employee's supervisor.

8.    If an employee wishes to review the contents of his/her personal file, the employee must notify the Superintendent for an appointment at least seventy-two (72) hours before the file is to be reviewed. No file may be reviewed without an administrator or his/her designee present, and no material may be removed from the file.

9.    If the intent of the supervisor is to take disciplinary action based on the evaluation, the employee shall be entitled to a representative at the conference to review said evaluation.

## ARTICLE 6 - STAFF VACANCIES AND PROMOTIONS

A.    The Board of Education subscribes to the belief that preference should be given to promotion of qualified staff personnel to appropriate vacancies as they occur. In consideration of its legal and moral responsibilities, however, the Board of Education, through the Superintendent, retains the right to assign and/or reassign personnel in accordance with the best interests of the educational program and the school district.

B.    To implement this policy, the Superintendent shall cause written notice to be posted in the work areas of staff who do not have access to e-mail on campus. Otherwise, notice of vacancies or change in contractual months of employment shall be delivered via e-mail (including a copy forwarded to the President of the Association). Such notices shall include the nature of the vacancy, time to submit, requirements for the position, and data pertaining to salary. This provision shall not apply when a position goes from part-time to full-time.  This provision shall not assure or guarantee that a candidate will receive an interview.

## ARTICLE 7 - WORK TIME

A.    WORK DAY:

1.    Teachers:

a.    Teachers shall signify their availability for duty by properly indicating their availability on the "check-in" board at the time designated for him/her by the building principal. Such designated time shall not be earlier than 7:20 a.m., nor later than 8:30 a.m.  Teachers may leave by properly noting their departures on the "sign-out" board four hundred and thirty minutes (430) minutes after his/her designated "check-in time," except as set forth in Paragraph b. below.  Teachers will be notified of their "sign-in time" when they are notified of their classroom assignments. The "sign-in time" will not

be modified unless required by the needs of this district.

b.   For the purpose of general faculty or departmental meetings or other meetings of a similar nature, teachers may be required to "check-in" earlier or "sign-out" later than as specified above, provided that (1) they shall be notified at least forty-eight (48) hours in advance (except in cases of emergency), (2) such earlier or later scheduling shall not exceed thirty (30) minutes, (3) such earlier or later scheduling shall not exceed four (4) in one (1) calendar month  or twenty (20) in one (1) school year.

c.   Teaching Load

    1.   The weekly teaching load for all teachers shall not exceed twenty-five (25) teaching periods and five (5) coverage periods, or thirty (30) teaching periods or an eight (8) period day. All teachers shall receive two (2) planning periods per day, while departmental chairpersons shall receive two (2) planning periods per day, and one (1) department chairperson period per day.

    2.   In order to allow for special scheduling needs, teachers in the Middle School may be given a 7th teaching assignment.  No more than four (4) world language teachers in the Middle School at any one time can be given this assignment. The total teaching time for each of these teachers shall not exceed 258 minutes per day. Additionally, the teachers assigned a 7th teaching period shall receive a stipend of $2,100.

    3.   No teacher having six (6) assignments can be assigned an extra duty.

d.   All teachers shall be entitled to a duty-free lunch period during the hours normally used for lunch periods in the school. The duty-free lunch period shall not be less than the lunch period time allowed to students.

e.   The teacher work day shall not exceed four hundred and thirty (430) minutes, and shall end no later than 3:30 p.m., except as is otherwise provided for in this Article, and in accordance with established practice regarding evening meetings, i.e. Back-to-School Nights, Achievement Night, etc.

f.   All teachers may be assigned an additional supervisory duty period per day, with a stipend of $1,800.00 per duty, for such an additional assignment.  If this supervisory duty is necessary, those teachers available during such a time who have fulfilled contractual assignments will be offered the opportunity for such an assignment. The assignment, time, and stipend shall be divided equally among those who agree to accept. If no one agrees, the assignment will be made to all those who are eligible, with the stipend to be equally divided. Department Chairpersons cannot volunteer for such an assignment, though they may be eligible, but can be required to fulfill this position with the aforementioned stipend.

g.   Individuals will be hired to supervise afternoon bus duty at the negotiated stipend listed above in section f. Should no one apply, the duty will be assigned to and distributed evenly among all eligible teachers.

h.   No teacher shall be assigned more than four (4) consecutive teaching periods during a regular full day of school. Teachers may be assigned more than four (4) consecutive periods during an abbreviated student school day. However, no teacher will be assigned consecutive classes that would encompass more than one hundred eighty (180) consecutive minutes of teaching.

i.   Work before or after the normal work day of four hundred and thirty (430) minutes shall be scheduled only by the appropriate administrator. In such cases, compensatory time equal to the time worked shall be granted.  That time shall be taken within forty (40) working days thereafter at a time mutually agreed to by the administrator and the employee. The administrator shall not unreasonably deny the scheduling of the compensatory time. Nothing in this provision shall be construed to diminish the obligations set forth in Paragraphs b. and e. above.

j.   Teachers, upon the completion of their assigned duties, shall be excused following the dismissal of pupils on Fridays and days preceding a holiday, unless otherwise directed by the principal on   the preceding day.

k.   Teachers who travel between the two buildings will not be given an assignment which forces them to travel during their scheduled duty-free lunch period.

l.   Any teacher assigned four (4) instructional classes per day for five (5) days per week will be considered a full time teacher.

m.   Teachers who base a student's assessment on performance and/or rehearsals shall attend the performance and/or rehearsal as part of their annual job responsibilities.

2.   Part time teachers (those assigned one (1) to three (3) instructional classes per day for five (5) days per week) will receive one (1) planning period per day. Part time teachers cannot be assigned or volunteer for an extra duty assignment.

3.   Administrative Secretaries, Secretaries, and Clerks:

a.   The secretarial work day will not exceed four hundred and eighty (480) consecutive minutes, and

b.   will include a sixty (60) minute duty-free lunch, and two (2) fifteen (15) minute work breaks, one (1) each morning and afternoon.

c.   Secretaries will be dismissed sixty (60) minutes after teacher dismissal on the work days prior to Thanksgiving, Christmas, and Good Friday.

d.   During an eight (8) week period occurring during the summer recess, the

secretarial work day will consist of four hundred and fifty (450) consecutive minutes, including a sixty (60) minute duty-free lunch. Lunch schedules will be at the discretion of the building administrators.

4.   Custodians:

   a.   Custodians will not work more than four hundred and eighty (480) consecutive minutes, plus a thirty (30) minute duty-free lunch. No custodian will be required to work more than four hundred and eighty (480) consecutive minutes within a twenty-four (24) hour period without receiving overtime pay, and

   b.   will be granted a fifteen (15) minute work break each morning and afternoon.

   c.   Whenever a change in hours occurs due to emergency (i.e.: snow days), it is the responsibility of the supervisor to directly contact the custodian and provide specific instructions.

5.   Food Service Employees:

   a.   No food service employee will work more than four hundred and eighty (480) consecutive minutes, including

   b.   a thirty (30) minute duty-free lunch,

   c.   but only those employees who are scheduled to work three hundred and sixty (360) minutes or more will be entitled to the thirty (30) minute duty-free lunch.

   d.   Employees who work three hundred (300) minutes will receive a fifteen (15) minute break, as scheduled by their supervisor.

6.   Bus Drivers and Transportation Aides:

   a.   Bus drivers hired prior to June 30, 2000 will be guaranteed a minimum of seven hundred and twenty (720) hours per school year, which will typically equate to twenty (20) hours weekly.

   b.   In addition to the minimum hours allocation as set forth in paragraph one, each bus driver will accept up to an additional twenty (20) hours of work per week, as assigned by their supervisor; without receiving over-time pay treatment. Said additional assignments will consist of any type of route or trips, as is determined by the supervisor.

   c.   Bus drivers will not be required to work more than forty (40) hours per week.

   d.   Any bus driver who accepts an offer by their supervisor to work more than forty (40) hours per week will receive overtime pay treatment, as set forth in the contract.

e. Each bus driver will be guaranteed a one-half (½) hour maintenance pay per work day.

f. All individual AM and PM high school, grammar school, vocational school, kindergarten, special education, sports, and late runs will be paid a minimum of one hour each. In the event that one of these runs exceeds one hour, drivers will be compensated in quarter hour increments to the next quarter hour. Actual beginning and ending times, as well as ending times for payment purposes, will be determined by the Transportation Coordinator. Every attempt will be made to provide drivers with twenty-four (24) hours' notice of any assignment. If less than twenty-four (24) hours' notice is provided, no hours will be charged against drivers who are not available.

g. In the event that there exists a period of time of one (1) hour or less between high school, special education, grammar school, and vocational school runs (AM or PM) in which the drivers are not "on the road", drivers will be compensated in quarter hour increments up to a maximum of thirty (30) minutes.

h. If a driver wishes to have their regular run certified for additional verified time, they shall, no later than September 30th of each school year, present to the Transportation Coordinator in writing a request for re-certification. Additional verified time shall be added to the drivers approved contract, and will be retroactive to the first day of driving for the year certified.

i. In the event that drivers are required to perform additional responsibilities which will be performed each day until the end of the school year, and are one (1) hour or more in duration, these hours will be added to the driver's contract retroactive to the date the change was made. If the additional time is less than one (1) hour, these hours will not be added to the contract, but will be considered in the event that the driver is unable to perform their duties due to illness or work related injury (workers compensation). If a driver's contracted time is reduced, the difference between the contracted hours and reduced time hours will be made up through additional assignments.

j. The Transportation Coordinator will make every effort to assign extra hours on an equitable basis.

k. Prior to the start of the school year, all routes will be posted for inspection no sooner than July 31, with a meeting being held no sooner than three working days later to allow drivers to request routes by seniority. These requests will be considered by the Transportation Coordinator based on seniority, with every attempt being made to honor these requests. However, the final decision as to the assignment of all routes will be made by the Transportation Coordinator. All revised or added routes after the actual date of driver selection will be posted and requests will be considered based on seniority.

l. Overnight trips will not be chargeable as extra hours.

m.  In those instances when it is necessary to reduce the pay for one (1) of the above-described employees, due to day(s) not worked, the following steps will be taken:

    (1)  If the hours are to be deducted from the employee's contracted pay, information will be provided to the payroll department, indicating the number of hours the employee did not work.

        (a)  The total number of hours not worked will be multiplied by the employee's hourly rate (excluding longevity) to determine the amount to be reduced from the employee's contracted pay.

        (b)  When reducing the pay for hourly employees, only the actual number of hours not worked will be considered.

    (2)  If the hours are to be deducted from extra hours worked, the actual hours not worked will be reduced from the appropriate time sheet before being submitted to the payroll department. In this instance, the contracted pay will not be reduced.

n.  In those instances when an hourly employee leaves or enters the district after the start of the school year, the steps listed below will be followed to determine any adjustments to the contract. Leaving during the school year:

    (1)  A calculation will be made to determine the total number of hours the employee has worked, from the beginning of the school year, until the day he/she leaves the district.

    (2)  This number will be compared to the pay the employee has actually received up until the time he/she leaves the district.

    (3)  If the total number of hours the employee has worked, multiplied by the employee's hourly wage, exceeds the amount actually paid to the employee, then an adjustment will be made, in the last pay, in which the difference owed to the employee will be added to the contracted pay.

    (4)  If the total number of hours the employee has worked, multiplied by the employee's hourly wage, is less than the amount actually paid to the employee, then an adjustment will be made, in the last pay, in which the difference owed to the district will be deducted from the contracted pay. If the amount to be deducted is greater than the contracted pay for that period, this amount will be deducted from any extra pay owed, or will be reimbursed by the employee to the district.

o.  Bus Drivers will be paid seventy-five percent (75%) of full rate for stand-by time (stand-by time being defined as the time that exists between full rate driving time for co-curricular field trips for HS & elementary districts and athletic trips).

    (1)    For trips involving stand-by time, drivers will be guaranteed a minimum of one (1) hour driving time each way. Any driving time over one (1) hour will be figured in one-quarter (1/4) hour increments.

    (2)    Drivers will be guaranteed full rate for contracted hours.

p.    Any run which starts before 6:00 A.M. will be guaranteed a minimum of four (4) hours pay, plus maintenance.

7.    Instructional & Non-instructional Aides:

The regular work day shall not exceed seven (7) hours. The regular work day shall include a duty-free lunch period equal to the same lunch period that teachers receive in the school in which they work.

8.    Lavatory Aide:

The regular work day shall not exceed seven (7) hours.

9.    Athletic Trainer

The regular work day will equal four hundred thirty (430) minutes.

B.    WORK WEEK:

The work week of all employees will be from Monday to Friday, inclusive. However, the parties recognize that bus transportation of students, at times, occurs on other days, and bus drivers and aides are required to work, as necessary, to provide that transportation. The work week of all custodians, initially, hired prior to July 1, 1996, will be from Monday to Friday, inclusive. For those hired on or after July 1, 1996, the work week will be from Monday to Sunday.

C.    WORK YEAR:

1.    Teachers:

a.    The teacher work year will not exceed one hundred and eighty-six (186) days,

b.    excluding two (2) days for the New Jersey Education Association (NJEA) Convention.

c.    Make-up days for inclement weather or other emergencies will be scheduled at the Board's discretion.

d.    The impact of scheduled make-up days will be negotiable.

2.    Administrative Secretaries, Secretaries, and Clerks:

a.    The secretarial work year will include all weeks that a secretary is under contract.

b.   The secretary will be at his/her appointed station, except on holidays and vacations as hereinafter designated, and on Saturdays and Sundays of the work week, and on days when school is closed for inclement weather.

c.   The work year of twelve-month (12) secretaries will begin on July 1st and end on June 30th following.

d.   The work year of ten-month (10) secretaries will be ten (10) consecutive calendar months long.

3.   Custodians:

a.   The custodial work year will include all weeks that a custodian is under contract.

b.   The custodian will be at his/her appointed station, except on holidays and vacations as hereinafter designated, and on Saturdays and Sundays of the work week.

c.   The custodial work year will begin on July 1st and end on the following June 30th, for twelve (12) month custodians.

d.   The work year for ten (10) month custodians will be ten (10) consecutive calendar months long.

4.   Food Service Employees:

a.   All food service hourly employees are guaranteed a minimum of one hundred and eighty (180) working days in the work year.

b.   The Board, at its discretion, may require more than one hundred and eighty (180) days per contract year without incurring an overtime rate of pay for the employee.

5.   Bus Drivers and Transportation Aides:

Ordinarily, bus transportation needs do not exceed one hundred eighty (180) days per school year. The scheduling and assigning of bus drivers shall depend upon those needs, as determined by the Board.

6.   Instructional Aides:

The regular work year shall not exceed one hundred eighty-three (183) days.

7.   Lavatory Aides:

The regular work year shall not exceed one hundred eighty (180) days.

8.   Athletic Trainer

The regular work year shall not exceed 1334 hours per year. The trainers work year will be from the first day of practice for fall athletics through the last day of

Spring athletic season

9.    Non-instructional Aides

The regular work year shall not exceed (180) days.

D.    OVERTIME:

1.    Overtime is defined as an amount of time in excess of forty (40) hours per work week
as such time is herein defined.

2.    The overtime rate of pay is one and one-half (1 ½) times the employee's
negotiated pay rate, multiplied by the amount of time worked in excess of the
negotiated time limits.

3.    Custodians who may work in any other job description for additional hours or days
shall not be entitled to be paid as custodians.

4.    Overtime rates will be paid only if the employer requires the employee to work
additional time.

5.    All employees asked to work overtime will be guaranteed a minimum of one (1)
hour per call.  One (1) week notification will be given whenever possible.
Maintenance personnel called back to work are guaranteed two (2) hours call-back
pay at time and one-half (3 and ½ hours pay).

E.    VACATIONS AND HOLIDAYS:

1.    Vacations:

a.    All twelve (12) month employees are granted two (2) weeks paid vacation
after one (1) year of employment. An additional one (1) day per year will be
added each year after the fifth (5) consecutive contract year, continuing to a
maximum of four (4) weeks.

b.    Ten (10) month employees are granted no vacation time and no vacation
pay.

c.    Vacations will normally be taken during the summer closing of school,
excluding the week after school closes and the week before it reopens, and
will be granted on the basis of seniority. Provisions for taking a vacation at
other times of the year shall be approved by the Superintendent.

d.    Any district employee who changes from a ten (10) month status to a
twelve (12) month status will receive pro-rated (10/12) years' of service
credit for years of district experience towards vacation credit.

2.    Holidays:

a.    The following days are holidays for all employees:

(1)    New Year's Eve day and New Year's Day (If both of these days

should fall on Saturday and Sunday, the preceding or following work day will be designated as the holiday.).

(2)  Martin Luther King Day.

(3)  Presidents' Day and the Friday preceding.

(4)  Good Friday.

(5)  Memorial Day.

(6)  July Fourth (If July 4th falls on a Tuesday or Thursday, it shall result in a four day weekend.  If it falls on a Saturday or Sunday, it shall be taken as a holiday on the workday designated as the National Holiday.)

(7)  Labor Day and the Friday preceding.

(8)  Thanksgiving Day and the Friday immediately following.

(9)  Christmas Eve and Christmas Day (If both of these days should fall on Saturday and Sunday, the preceding or following work day will be designated as the holiday).

b.  The following days are holidays for secretaries only.

(1)  The days between Christmas Day and New Year's Eve Day.

(2)  There shall be two (2) days during the spring recess. Should the spring recess fail to exist, due to emergency, no benefit shall automatically accrue to the secretaries, nor shall the impact be negotiable.

c.  Two days' vacation will be provided to all Custodians, Grounds and Maintenance during the winter recess when such recess exists, unless the Superintendent determines that there exists a special need which would require their attendance.

d.  Holidays will be granted only to those employees who would otherwise be working that day.

## ARTICLE 8 - PROFESSIONAL IMPROVEMENT POLICY

A.  TUITION REIMBURSEMENT - TEACHERS:

The Board will grant tuition reimbursement on the following basis:

1.  The teacher must submit the request to the Superintendent at least forty-five (45) days prior to enrollment, but not more than (90) days prior to enrollment. The request shall include the school, the course, course description, documentation of fees and a statement (or meeting with the Superintendent if applicable) explaining

how the course is directly related to the professional teaching responsibilities of the employee.

    a. The course must be for graduate credit at a minimum.

    b. On-line courses will be eligible subject to the discretion of the Superintendent and the Board.

2. The Superintendent will place the request on the Board agenda with a recommendation.

3. After the course is successfully completed (B or better), then the teacher will be reimbursed for full tuition, but not to exceed the tuition rate charged by Rowan University for graduate credit.

4. The maximum amount a teacher will be reimbursed for courses completed within one (1) year (July 1 to June 30) will be equivalent to the tuition charged by Rowan University for six (6) graduate credits.

5. The Board shall have no obligation to grant any tuition reimbursement request if the aggregate annual cap set forth below is reached.

    2015-2016:   $45,000

    One-third of the annual tuition bank shall be allocated to each trimester. If the funds are not spent in that semester, the funds will be rolled to the next semester for the remainder of the fiscal year if applicable. The annual tuition bank is available for use between July 1st and June 30th in each year of the contract.

6. To receive reimbursement, the teacher will present documentary evidence of the cost and successful completion within thirty (30) days after receiving the official grade. After receiving the documentary evidence, the teacher will receive reimbursement within sixty (60) days. If the teacher resigns or retires prior to completing the following school year, the teacher shall reimburse the Board for any tuition paid. Payment must be made within (60) days. The Board may deduct an amount, equal to the tuition due, from the final employee payroll check(s) if the reimbursement due to the Board is not paid in full.

7. The Superintendent's office shall submit a listing of all requests made under these provisions to the President of the CEA twice a year (on or before September 30 and January 30) with an accounting of money allotted from the annual cap.

8. Eligibility for tuition reimbursement will be based on the above provisions and will be made in order of receipt of request.

9. If the Board requires any employee to take a course, the Board will reimburse for one hundred percent (100%) of the books, fees, and tuition.

10. Notification of horizontal movement must be made by March 1 to be effective July 1. Horizontal movement on the salary guide will be implemented annually effective July 1 for any educational attainments earned throughout the year.

Guide placement on July 1 will remain intact through June 30.

11.   The Board may also grant tuition reimbursement outside the defined cap based on the following.  Teachers may submit a request to the Superintendent for courses that do not fit into the previously described criteria. The Superintendent may place the request on a Board agenda with a recommendation. The Board will act and the decision will be final.  If the course is approved, the criteria for reimbursement as described above will apply.

12.   Effective July 1, 2016, all paragraphs under Article 8, Section A will no longer be in force or in effect and will be removed.

B.   CUSTODIAL STAFF:

Each year, two (2) members of the custodial staff will be permitted to attend the New Jersey Education Association Convention (one day maximum). Selection will be made on a first come basis with seniority being a consideration. All staff members will be provided an equal opportunity to attend.

## ARTICLE 9- DEDUCTION OF DUES

A.   The Board of Education Secretary is directed to deduct organization dues from salary checks in accordance with written authorization from the State Association, New Jersey Statutes, and State Board of Education regulations. Payment of such dues will be made to the Association Treasurer according to provisions of the statute.

B.   The Board is absolved of any responsibility for the disbursement of dues money, once said funds are received by the Treasurer or the President of the local Association. The local Association will notify the Board of Education of the names of its officers.

## ARTICLE 10- LEAVES OF ABSENCE

A.   SICK LEAVE:

1.   All employees will be entitled to a number of sick leave days each year, equal to the number of months in their contract year (excluding leave periods, resignations or other terminations – i.e. on leave from Sept. through Oct. – return to work on Nov. 1st Work through end of school year = 8 days for 8 months). Employees will have access to their allotted sick days the 1st day of their contract.

2.   Unused sick days shall accumulate from year to year with no maximum limit.

3.   Upon the retirement from employment with the school district, pursuant to the provisions of the Teachers' Pension and Annuity Fund or the Public Employee Retirement System, whichever is applicable, the Board of Education will buy back unused accumulated sick days upon the following conditions.

a.   In order for an employee to obtain reimbursement he or she must not use more than days defined below in the final year of employment. An exception will only be made for an absence due to illness or injury that is substantiated by a doctor's note. The following table will be used in

determining whether or not an employee has met the criteria.

> Teachers – Must not use more than 9 sick days to qualify
>
> 10-month Employees – Must not use more than 10 sick days to qualify
>
> 12-month Employees – Must not use more than 11 sick days to qualify

b. The employee must have had at least ten (10) years of service in the school district prior to retirement.

c. Accumulated sick days will be subject to the buy-back provision based upon the following rates and conditions:

| Teachers: | Minimum to qualify = 25 days<br>Maximum buy back = 150 days |
| | Rate = $60.00 per day |
| Other Employees: | Minimum to qualify = 25 days<br>Maximum buy back = 150 days<br>Rate = $54.00 per day |

d. The employee will receive the reimbursement no later than sixty (60) days following retirement, providing he/she has officially notified the Board of the intent to retire by March 1st of the year preceding his/her retirement. If not, payment will be made no later than eighteen (18) months after retirement.

e. In case of death, the reimbursement will be paid to the appointed beneficiary or estate.

4. Employees shall be given a written accounting of their accumulated sick days in the month of September

5. When absence arises out of or from a school related injury, the employee shall be entitled to full salary and other benefits for the period of such absence, and shall not forfeit any sick leave days.

## B. EXTENDED LEAVE:

The Board may grant extended leaves of absence without remuneration for employees. The Board of Education may grant leaves for no longer than two (2) years. Such leaves shall be in accordance with the following procedures.

1. The employee shall write to the Superintendent, requesting the leave at least ninety (90) days prior to the requested starting date. The leave may be granted prior to the end of the ninety (90) day period. The employee shall be notified of a determination at least forty-five (45) days before the starting date of the leave.

2. The Superintendent shall transmit the request to the Board for their approval or disapproval.

3.  The Board shall send a recommendation, in writing, to the Pension and Annuity Fund, requesting that the employee be kept on the non-contributory rolls for no longer than two (2) years.

4.  The returning employee will be placed on the salary scale at the same place he/she would have reached had he/she not taken a leave. Extended leave will not be counted as time on guide for salary advancement. An employee returning from extended leave will be advanced one (1) step on the salary guide; however, no employee shall gain unearned increment on Extended Leave either in full or partial steps.

5.  Pension and Annuity credit for the time spent on leave shall be determined in accordance with the rules and regulations of the Teachers' Pension and Annuity Fund.

6.  The leave may be extended or renewed with Board approval.

7.  All benefits to which an employee was entitled at the time his/her leave of absence commenced, including unused accumulated sick leave and credits toward sabbatical eligibility, shall be restored to him/her upon his/her return, and he/she shall be assigned to the same position, if available, or, if not, to a substantially equivalent position.

## C.  PERSONAL DAYS (TEMPORARY LEAVES OF ABSENCE):

1.  Personal Days:

    Three (3) personal days per year shall be granted for personal business which cannot be conducted outside the regular work day, for example, house closing, court appearance, doctor's visit, graduation, etc. Notification of such day shall be communicated to the appropriate administrator by filling out the personal day form at least forty-eight (48) hours in advance, whenever possible, and noting the reason on the list provided. In the case of an emergency, the appropriate administrator should be contacted by telephone. Unused personal days will be accumulated as sick leave, and shall be subject to the buy-back provision (Article 11, A. 3. c.).

    Any personal days taken before or after the Winter break, Spring break, President's weekend, or on the first day or last day of the school year, shall be charged as two (2) personal days.

    If a unit member takes a personal day on the days mentioned above, and has only one (1) personal day to his/her credit, said unit member shall be docked a day's pay, plus the personal day.

    The Superintendent has the authority to grant approval for emergency reasons on the days mentioned above (not subject to paragraph 3) if a day is available.

2.  Death:

    Employees shall be granted five (5) days in any one instance in the event of death of employee's spouse, child, parent, sibling, grandparent, grandchild, or partner in

longstanding.

Employees shall be granted three (3) days in any one (1) instance in the event of death of son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, sister-in-law, and any other member of the immediate household.

An additional two (2) days can be granted by the Superintendent for special circumstances, however, no more than five (5) days will be granted at any one time.

D.  **DISABILITY LEAVE RELATED TO PREGNANCY:**

1.  A disability leave related to pregnancy shall be granted for the period of time during which an employee is unable to perform her duties due to disability directly related to the bearing and delivery of a child.

2.  Written notice of disability leave related to pregnancy shall be given to the Board at least sixty (60) days prior to the commencement of such leave. Such notice shall include the notice of anticipated return date, and confirmation by the attending physician. In the event of any change, the employee shall notify the Superintendent.

3.  Disability leave related to pregnancy leave shall be paid to the extent that the employee has sufficient sick leave days available.

4.  The Board reserves the right to require that the employee be examined by a physician of its choice and its expense.

E.  **CHILD REARING LEAVE:**

1.  A child rearing leave without pay shall, upon written request, be granted to the parent of a newly born child, or newly adopted pre-school child, said leave to commence upon the conclusion of maternal disability as medically verified.

2.  Usually, the request for child rearing leave shall be submitted at the same time as the notice and request referred to in Paragraph E.1.above.

3.  A child rearing leave granted to teachers under tenure shall be for the balance of that school year in which it is granted, and, if requested, for the entire following school year.

4.  Upon the conclusion of the child rearing leave, the teacher shall return to work either on the first work day in September, or the beginning of the third marking period. The return date shall be included in the original leave request. However, the Board may grant an employee's request to return at any time due to extenuating circumstances, if viewed to be in the best interest of the students.

5.  Child care leave for support staff and non-tenure teachers may be granted without pay for the remainder of the school year in which the leave is requested, and such leave shall not extend beyond the end of the employee's contract for the school year in which the leave is granted. No employee will be granted less than the twelve (12) weeks provided by Federal law.

6.    Upon the conclusion of the child rearing leave, the teacher shall return to work on the first teacher work day thereafter.

7.    In the event of the loss of the child, the employee shall submit a request for reinstatement thirty (30) days in advance of the intended return date.

8.    Insurance Coverage

    a.    A unit employee in a childbirth situation will be able to use her accumulated sick leave (with an assumption of 20 work days before, and 20 work days after childbirth; the actual period of valid use of accumulated sick leave may be longer depending upon the circumstances).

    b.    After b. 1. above, up to 12 weeks of additional paid insurance coverage (less the State-mandated employee premium share) during the period of unpaid child- rearing leave.

    c.    If a ten month unit employee is on leave under the terms of b. 2. above and Board-paid insurance coverage under Federal or State law would end in any month before June 30th, Board-paid insurance (less the State-mandated employee premium share) will recommence for the months of July and August if the employee has signed a letter indicating an intent to return to work on September 1. If said employee fails to return to work on September 1, she shall reimburse the District for the cost of the July/August insurance.

## ARTICLE 11 - MANAGEMENT'S RIGHTS

A.    The Board reserves to itself sole jurisdiction and authority over matters of policy and, according to provision of State law, retains the right, subject only to the limitations imposed by the language of this Agreement, in accordance with applicable laws and regulations:

1.    to hire, promote, transfer, assign, and retain employees in positions within the school district, and for just cause, to suspend, demote, discharge, or take other disciplinary action against employees.

2.    to abolish any such position for reasons of economy, or because of reduction in the number of pupils, or of change in the reorganization of the district, or for other good cause.

3.    to maintain the efficiency of the school district operations entrusted them.

4.    to determine the means by which such operations are to be conducted.

5.    to take whatever actions may be necessary to carry out the mission of the school district in situations of emergency. The rights of the Board shall include, but not be limited to, provisions set forth in this paragraph.

B.    It is understood by all parties that under the rulings of the courts of New Jersey and the State

Commissioner of Education, the Board is forbidden to waive any rights or powers granted it by law.

C.  This Agreement incorporates the entire understanding of the parties on all negotiable matters, and shall not be added to or deleted from until the subsequent reopening of negotiations, in adherence with the dates set forth in this Agreement.

## ARTICLE 12- RULES

A.  Proposed new rules, or modifications of existing rules governing working conditions, shall be negotiated with the majority representative before they are established.

B.  This does not in any way change existing Board rules as of the date of this Agreement.

## ARTICLE 13 - SEPARABILITY

If any provisions of this Agreement or any applications of this Agreement to any employee or group of employees is held to be contrary to law, then such provision or application shall not be deemed valid and subsisting, except to the extent permitted by law, but all other provisions or applications shall continue in full force in effect.

## ARTICLE 14 - ASSOCIATION RIGHTS

A.  Upon written request to the Principal, the Association may be permitted to use school facilities for Association business, at the discretion of the Principal.

B.  The Association may use school equipment, provided such use does not disrupt the educational process or program of the district, and provided that all supplies are paid for, along with any damage that occurs through Association use of equipment.

C.  The Association may have a bulletin board for its own use and of its own purchase in each building.

D.  The mail boxes and e-mail system of the school district may be used for Association notices, provided they are so identified that they pertain only to Clearview Education Association business.

E.  The Association may purchase and keep in a school building a file cabinet; however, the Board is not responsible for its safety, protection, or maintenance.

F.  The Association will be invited to send a representative as a speaker on the day or time designated as orientation for new teachers.

## ARTICLE 15 - INSURANCE BENEFITS

A.  All Insurances

   1.  Employee contributions for insurances under this Article will be accordance with Chapter 78, P.L. 2011.

2.    The Board of Education has the right to change insurance carriers, continuing to provide benefits equal to or better than those currently provided.

3.    Any employee working in the district prior to July 1, 2002 , for 20 or more hours per week and who continues to work 20 or more hours per week, will be entitled to health insurance under this Article.

      Any employee hired on or after July 1, 2002 but before July 1, 2007, for 25 or more hours per week and who continues to work 25 or more hours per week, will be entitled to health insurance under this Article.

      Any employee hired on or after July 1, 2007, working more than 25 hours per week and who continues to work more than 25 hours per week will be entitled to health insurance under this Article.

B.    Health and Hospitalization Insurance

1.    Qualified unit members as defined in A. 3. above are entitled to health and hospitalization insurance under either the AETNA 8 plan or the AETNA 5 plan.

2.    Qualified unit members as defined in A. 3. above who were enrolled, as of January 1, 2010, in the Horizon 9 plan, will be permitted to continue in the plan (which is now labeled AETNA 9) and shall continue to make contributions for the plan based upon the cost difference between the AETNA 8 plan and the AETNA 9 plan, in addition to the employee contribution required under A. 1. above. The employee premium share will be made through payroll deduction. No employee shall be permitted to enroll in the AETNA 9 plan after January 1, 2010.

3.    Co-pays under the AETNA plans are as follows:

      Office Visits  -     $15
      Specialists -        $25
      ER Visit -           $50

4.    Effective January 1, 2016, reimbursement from the medical plan for medical and prescription co-pays will no longer be paid.

C.    Prescription Insurance

1.    Qualified unit members as defined in A. 3. above are entitled to family prescription insurance.

2.    Co-pays are as follows:

| Generic Brand, | Formulary Brand, | Non-Formulary |
|---|---|---|
| $15.00 | $25.00 | $50.00 |

D.    "Opt-Out" Program under A. and B. above

1.    125 Plan

The Board of Education will continue a "125 Plan" to administer an "opt-out" program.

2.  **Health and hospitalization insurance**

    Employees with alternate health- hospitalization insurance may opt out of the insurance under B. above and receive an annual payment of $1,750.

3.  **Prescription insurance**

    Employees may opt out of the insurance under C. above and receive an annual payment of $250.

4.  Payments under 2. and 3. above shall be made in two installments, one in December and one in June.

5.  When an employee opts in or out of medical and/or prescription coverage during the course of the school year based upon a life altering event and re-enrolls in the insurance(s) during the insurance year, the opt out payment will be pro-rated.

E.  **Dental Insurance**

    1.  The Board shall continue to provide a full employee dental plan. Any change in coverage or carrier is negotiable with a minimum annual cap of $1,500.

    2.  Eligible employees shall be permitted to buy-in to family coverage at their own expense under the following guidelines:

        a.  The dental carrier must allow such buy-ins.

        b.  There shall be one open enrollment period per year.

        c.  Withdrawals during the enrollment year shall not be permitted.

        d.  The employee cost for the family coverage shall be the actual cost of the premium above the single coverage cost.

        e.  The Board's maximum contribution for dental insurance for any eligible employee shall not exceed the actual single dental premium less any employee contribution required by Chapter 78.

        f.  The benefits and limits of the family coverage shall be the same as for single dental coverage.

## ARTICLE 16- REPRESENTATION FEE

A.  **PURPOSE OF FEE:**

    If an employee does not become a member of the Association during any membership year (i.e. from September 1st to the following August 31st), which is covered in whole or in part by this Agreement, said employee will be required to pay a representation fee to

the Association for that membership year. The purpose of this fee will be to offset the employee's per capita cost of services rendered by the Association as majority representative.

B.   **AMOUNT OF FEE:**

1.   Notification:

Prior to the beginning of each membership year, the Association will notify the Board, in writing, of the amount of the regular membership dues, initiation fees, and assessments charged by the Association to its own members for that membership year. The representation fee to be paid by non-members will be determined by the Association, in accordance with the law.

2.   Legal Maximum:

In order to adequately offset the per capita costs of services rendered by the Association as majority representative, the representation fee should be equal in amount to the regular membership dues, initiation fees, and assessments charged by the Association to its own members, and the representation fee may be set up to eighty-five percent (85%) of that amount as the maximum presently allowed by law. If the law is changed in this regard, the amount of the representation fee automatically will be increased to the maximum allowed, said increase to become effective as of the beginning of the Association membership year immediately following the effective date of the change.

3.   Indemnification:

The association shall indemnify and hold the Board harmless against any and all claims, demands, suits and other forms of liability, including liability for reasonable counsel fees and other legal costs and expenses that may arise out of, or by reason of, any action taken or not taken by the Board in conformance with this provision.

C.   **DEDUCTION AND TRANSMISSION OF FEE:**

1.   Notification:

Once during each membership year, covered in whole or in part by this Agreement, the Association will submit to the Board a list of those employees who have not become members of the Association for the then current membership year. The Board will deduct from the salaries of such employees, in accordance with Paragraph 2. below the full amount of the representation fee, and promptly will transmit the amount so deducted to the Association.

2.   Payroll Deduction Schedule:

The Board will deduct the representation fee in equal installments, as nearly as possible, from the pay checks paid to each employee on the aforesaid list during

the remainder of the membership year in question.  The deduction will begin with the first pay check paid:

a.　　ten (10) days after receipt of the aforesaid list by the Board, or

b.　　thirty (30) days after the employee begins his/her employment in a bargaining unit position, unless the employee previously served in a bargaining unit position, and continued in the employee of the Board in a non-bargaining unit position, or was on layoff, in which event, the deductions will begin with the first pay check paid ten (10) days after the resumption of the employee's employment in a bargaining unit position, whichever is later.

3.　Termination of Employment:

If an employee, who is required to pay a representation fee, terminates his/her employment with the Board before the Association has received the full amount of the representation fee, to which it is entitled under this Article, the Board will deduct the unpaid portion of the fee from the last pay check paid to said employee during the membership year in question.

4.　Mechanics:

Except as otherwise provided in this Article, the mechanics of the deduction of representation fees, and the transmission of such fees to the Association, will, as nearly as possible, be the same as those used for the deduction and transmission of regular membership dues to the Association.

5.　Changes:

The Association will notify the Board, in writing, of any changes in the list provided for in Paragraph 1. above, and/or the amount of the representation fee, and such changes will be reflected in any deduction made more than ten (10) days after the Board receives said notice.

6.　New Employees:

On or about the last day of each month, beginning with the month this Agreement becomes effective, the Board will submit to the Association a list of all employees who began their employment in a bargaining unit position during the preceding thirty (30) day period. The list will include names, job title, and dates of employment for all such employees.

## ARTICLE 17 – SALARIES

A.　SALARIES

Salaries for 2015-2016, 2016-2017 and 2017-2018 are set forth in the Schedules contained in this Agreement.

**B.**   LONGEVITY

Longevity is eliminated.  Only employees with three (3) years and one (1) day of service as of 9/7/2010 are grandfathered and eligible for longevity going forward. The following monies will be added to the yearly contracted salary of each grandfathered employee of the district who is receiving his/her consecutive contract of:

| 10 to 14 years | $   200 |
| 15 to 19 years | $   500 |
| 20 to 24 years | $ 1,000 |
| 25 + years | $ 1,500 |

**C.**   ADVANCEMENT ON THE GUIDE

Upon reinstatement, employees will be assigned to a substantially equivalent position. Employees must have worked a minimum of 60% of the working year, calculated in work days, to be eligible for advancement on the salary guide.

## ARTICLE 18 - DURATION OF AGREEMENT

A.    The above Agreement by and between the Clearview Regional High School District Board of Education and the Clearview Education Association shall become effective July 1, 2015, and remain in effect through June 30, 2018, or until a successor Agreement is signed. Any other changes agreed to by the parties shall be incorporated into the Agreement.

B.    If a mutually acceptable amendment to this Agreement is negotiated by the parties, it shall be reduced to writing and approved by the Association and then by the Board, and inserted as an amendment to the existing Agreement.

C.    This Agreement shall not be modified in whole or in part by either party, except as noted in paragraph B. above.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective Presidents, attested by their respective Negotiations Chairpersons, all on the day and year first above written.

### CLEARVIEW REGIONAL BOARD OF EDUCATION

2/26/16
Date

_____
Negotiating Chairperson

--ATTEST:

_____
Negotiating Committee

### CLEARVIEW EDUCATION ASSOCIATION

_____
President/Chairperson

--ATTEST:

_____
Negotiating Secretary

## SCHEDULE 1
## TEACHER SALARY GUIDE
## 2015-2016

| STEP 14-15 | STEP 15-16 | BA | BA+30 | MA | MA+30 | DOC |
|---|---|---|---|---|---|---|
| 1 | 1 | 48972 | 50125 | 52100 | 55200 | 59100 |
| 2-4 | 2 | 49372 | 50375 | 52600 | 56200 | 59850 |
| 5 | 3 | 49762 | 50875 | 53300 | 57200 | 60850 |
| 6 | 4 | 50115 | 51600 | 53900 | 59600 | 63350 |
| 7 | 5 | 50810 | 53110 | 55308 | 60850 | 64350 |
| 8 | 6 | 51880 | 54200 | 56350 | 61820 | 65600 |
| 9 | 7 | 53270 | 55900 | 59100 | 63800 | 67100 |
| 10 | 8 | 54400 | 58100 | 61925 | 65100 | 69100 |
| 11 | 9 | 55600 | 60200 | 65300 | 67600 | 71100 |
| 12 | 10 | 58100 | 63294 | 68700 | 70850 | 74100 |
| 13 | 11 | 62100 | 66750 | 72100 | 74600 | 77100 |
| 14 | 12 | 66100 | 69750 | 75400 | 77968 | 79850 |
| 14B | 13 | 70100 | 73702 | 78900 | 81200 | 83100 |
| 14C | 14 | 74100 | 76921 | 81440 | 83910 | 85960 |
| 15 | 15 | 78050 | 80300 | 83750 | 86390 | 88590 |
| CAREER | 16 | 81690 | 83940 | 86800 | 89440 | 91640 |

Longevity: Longevity is eliminated. Only employees with three (3) years and one day of service as of 9/7/2010 are grandfathered and eligible for longevity going forward. The following monies will be added to the yearly contracted salary for each grandfathered employee of the District who is receiving his/her consecutive contract of:

10 to 14 years - $  200
15 to 19 years - $  500
20 to 24 years- $1,000
25 + years -     $1,500

Advancement on the Guide: Upon reinstatement, employees will be assigned to a substantially equivalent position. Employees must have worked a minimum of 60% of the working year, calculated in work days, to be eligible for advancement on the salary guide.

## SCHEDULE 1, continued
## TEACHER SALARY GUIDE
## 2016-2017

| STEP 15-16 | STEP 16-17 | BA | BA+30 | MA | MA+30 | DOC |
|---|---|---|---|---|---|---|
| * | 1 | 48972 | 50125 | 52100 | 55200 | 59100 |
| 1 | 2 | 49372 | 50375 | 52600 | 56200 | 59850 |
| 2 | 3 | 49762 | 50875 | 53300 | 57200 | 60850 |
| 3 | 4 | 50115 | 51600 | 53900 | 59600 | 63350 |
| 4 | 5 | 50810 | 53110 | 55308 | 60850 | 64350 |
| 5 | 6 | 51880 | 54200 | 56350 | 61820 | 65600 |
| 6 | 7 | 53270 | 55900 | 59100 | 63800 | 67100 |
| 7 | 8 | 54400 | 58100 | 61925 | 65100 | 69100 |
| 8 | 9 | 55600 | 60200 | 65300 | 67600 | 71100 |
| 9 | 10 | 58100 | 63294 | 68700 | 70850 | 74100 |
| 10 | 11 | 62100 | 66750 | 72100 | 74600 | 77100 |
| 11 | 12 | 66100 | 69750 | 75400 | 77968 | 79850 |
| 12 | 13 | 70100 | 73702 | 78900 | 81200 | 83100 |
| 13 | 14 | 74100 | 76921 | 81440 | 83910 | 85960 |
| 14 | 15 | 78050 | 80300 | 83750 | 86390 | 88590 |
| 15 | 16 | 82166 | 84416 | 87276 | 89916 | 92116 |

Longevity: Longevity is eliminated. Only employees with three (3) years and one day of service as of 9/7/2010 are grandfathered and eligible for longevity going forward. The following monies will be added to the yearly contracted salary for each grandfathered employee of the District who is receiving his/her consecutive contract of:

10 to 14 years - $  200
15 to 19 years - $  500
20 to 24 years- $1,000
25 + years -     $1,500

Advancement on the Guide: Upon reinstatement, employees will be assigned to a substantially equivalent position. Employees must have worked a minimum of 60% of the working year, calculated in work days, to be eligible for advancement on the salary guide.

## SCHEDULE 1, continued
## TEACHER SALARY GUIDE
## 2017-2018

| STEP 16-17 | STEP 17-18 | BA | BA+30 | MA | MA+30 | DOC |
|---|---|---|---|---|---|---|
| ** | 1 | 48972 | 50125 | 52100 | 55200 | 59100 |
| 1 | 2 | 49372 | 50375 | 52600 | 56200 | 59850 |
| 2 | 3 | 49762 | 50875 | 53300 | 57200 | 60850 |
| 3 | 4 | 50115 | 51600 | 53900 | 59600 | 63350 |
| 4 | 5 | 50810 | 53110 | 55308 | 60850 | 64350 |
| 5 | 6 | 51880 | 54200 | 56350 | 61820 | 65600 |
| 6 | 7 | 53270 | 55900 | 59100 | 63800 | 67100 |
| 7 | 8 | 54400 | 58100 | 61925 | 65100 | 69100 |
| 8 | 9 | 55600 | 60200 | 65300 | 67600 | 71100 |
| 9 | 10 | 58100 | 63294 | 68700 | 70850 | 74100 |
| 10 | 11 | 62100 | 66750 | 72100 | 74600 | 77100 |
| 11 | 12 | 66100 | 69750 | 75400 | 77968 | 79850 |
| 12 | 13 | 70100 | 73702 | 78900 | 81200 | 83100 |
| 13 | 14 | 74100 | 76921 | 81440 | 83910 | 85960 |
| 14 | 15 | 78050 | 80300 | 83750 | 86390 | 88590 |
| 15 | 16 | 82645 | 84895 | 87755 | 90395 | 92595 |

Longevity: Longevity is eliminated. Only employees with three (3) years and one day of service as of 9/7/2010 are grandfathered and eligible for longevity going forward. The following monies will be added to the yearly contracted salary for each grandfathered employee of the District who is receiving his/her consecutive contract of:

10 to 14 years - $  200
15 to 19 years - $  500
20 to 24 years- $1,000
25 + years -     $1,500

Advancement on the Guide: Upon reinstatement, employees will be assigned to a substantially equivalent position. Employees must have worked a minimum of 60% of the working year, calculated in work days, to be eligible for advancement on the salary guide.

## SCHEDULE 2
## CO-CURRICULAR STIPENDS
### 2015-2016, 2016-2017, and 2017-2018

| | ACTIVITY | 15-16 STIPEND | 16-17 STIPEND | 17-18 STIPEND | NO. OF POSITIONS |
|---|---|---|---|---|---|
| 1 | Class Sponsor, Grade 9 | 1,858 | 1,858 | 1,858 | 2 |
| 2 | Class Sponsor, Grade 10 | 2,183 | 2,183 | 2,183 | 2 |
| 3 | Class Sponsor, Grade 11 | 2,555 | 2,555 | 2,555 | 2 |
| 4 | Class Sponsor, Grade 12 | 2,927 | 2,927 | 2,927 | 2 |
| 5 | Student Council, HS | 2,787 | 2,787 | 2,787 | 2 |
| 6 | Student Council, MS | 2,787 | 2,787 | 2,787 | 1 |
| 7 | National Honor Society (Head) | 2,090 | 2,090 | 2,090 | 1 |
| 8 | National Honor Society (Asst.) | 1,394 | 1,394 | 1,394 | 1 |
| 9 | School Newspaper, HS | 1,904 | 1,904 | 1,904 | 1 |
| 10 | Marching Band Director | 6,504 | 6,504 | 6,504 | 1 |
| 11 | Marching Band (Asst.) | 3,902 | 3,902 | 3,902 | 1 |
| 12 | Jazz Band Director, HS | 2,323 | 2,323 | 2,323 | 1 |
| 13 | Jazz Band Director, MS | 2,323 | 2,323 | 2,323 | 1 |
| 14 | Band Front Advisor, HS | 3,902 | 3,902 | 3,902 | 2 |
| 15 | AVA Coordinator, HS | 2,277 | 2,277 | 2,277 | 1 |
| 16 | Dramatics Director | 7,572 | 7,572 | 7,572 | 1 |
| 17 | Dramatics Director (Asst.) | 4,552 | 4,552 | 4,552 | 1 |
| 18 | Dramatics Assistant (Sets) | 4,552 | 4,552 | 4,552 | 1 |
| 19 | Dramatics Assistant (Choreographer) | 2,787 | 2,787 | 2,787 | 1 |
| 20 | Dramatics Assistant (Costumes) | 2,787 | 2,787 | 2,787 | 1 |
| 21 | Dramatics Assistant (Business Mgr.) | 2,787 | 2,787 | 2,787 | 1 |
| 22 | Drama Club, MS | 1,625 | 1,625 | 1,625 | 3 |
| 23 | Yearbook Sponsor, HS | 3,716 | 3,716 | 3,716 | 2 |
| 24 | Yearbook Sponsor, MS | 1,858 | 1,858 | 1,858 | 1 |
| 25 | Vocale Ensemble (Director) | 3,020 | 3,020 | 3,020 | 1 |
| 26 | Select Choir, MS | 3,020 | 3,020 | 3,020 | 1 |
| 27 | DECA Advisor | 1,858 | 1,858 | 1,858 | 1 |
| 28 | SADD Advisor | 1,858 | 1,858 | 1,858 | 1 |
| 29 | NJ Science League | 1,161 | 1,161 | 1,161 | 1 |
| 30 | Computer Club, HS | 1,161 | 1,161 | 1,161 | 1 |
| 31 | Computer Coordinator | 4,320 | 4,320 | 4,320 | 1 |
| 32 | Computer Club, MS | 1,161 | 1,161 | 1,161 | 1 |
| 33 | Environmental Club | 1,858 | 1,858 | 1,858 | 1 |
| 34 | Peer Mediation Advisor | 1,161 | 1,161 | 1,161 | 2 |

| | ACTIVITY (CONT'D) | 15-16 STIPEND | 16-17 STIPEND | 17-18 STIPEND | POSITIONS |
|---|---|---|---|---|---|
| 35 | Detention Monitor, HS * | 3,106 | 3,106 | 3,106 | 2 |
| 36 | Detention Monitor, MS | 2,462 | 2,462 | 2,462 | 2 |
| 37 | Department Chairpersons | 5,807 | 5,807 | 5,807 | 13 |
| 38 | Team Leaders | 3,716 | 3,716 | 3,716 | 6 |
| 39 | Mock Trial | 1,161 | 1,161 | 1,161 | 2 |
| 40 | Academic Decathlon | 1,161 | 1,161 | 1,161 | 1 |
| 41 | Video Yearbook | 2,787 | 2,787 | 2,787 | 1 |
| 42 | ERASE Advisor | 1,161 | 1,161 | 1,161 | 1 |
| 43 | Health Education Careers Club | 1,161 | 1,161 | 1,161 | 1 |
| 44 | Builders Club | 1,161 | 1,161 | 1,161 | 1 |
| 45 | Key Club Advisor | 1,858 | 1,858 | 1,858 | 1 |
| 46 | FHA Advisor | 1,858 | 1,858 | 1,858 | 1 |
| 47 | Chess Team Advisor | 1,161 | 1,161 | 1,161 | 1 |
| 48 | Renaissance Sponsor | 2,090 | 2,090 | 2,090 | 1 |
| 49 | Renaissance Asst. | 1,394 | 1,394 | 1,394 | 1 |
| 50 | Art Club Advisor (MS) | 1,161 | 1,161 | 1,161 | 1 |
| 51 | Accompanist | 1,553 | 1,553 | 1,553 | 1 |
| 52 | Latin Club | 1,858 | 1,858 | 1,858 | 1 |
| 53 | Technology Association Advisor (HS) | 1,858 | 1,858 | 1,858 | 1 |
| 54 | Teen Pep | 1,035 | 1,035 | 1,035 | 3 |
| 55 | Varsity Club (HS) | 1,035 | 1,035 | 1,035 | 1 |
| | ATHLETICS | | | | |
| 56 | Football Head Coach | 9,569 | 9,569 | 9,569 | 1 |
| 57 | Football Asst. Coach | 5,714 | 5,714 | 5,714 | 5 |
| 58 | Basketball Head Coach (Boys) | 8,502 | 8,502 | 8,502 | 1 |
| 59 | Basketball Asst. Coach (Boys) | 5,110 | 5,110 | 5,110 | 1 |
| 60 | Basketball Asst. Coach (Gr. 9, Boys) | 5,110 | 5,110 | 5,110 | 1 |
| 61 | Basketball Asst. Coach (Gr. 7/8, Boys) | 1,904 | 1,904 | 1,904 | 1 |
| 62 | Baseball Head Coach | 6,736 | 6,736 | 6,736 | 1 |
| 63 | Baseball Asst. Coach | 4,041 | 4,041 | 4,041 | 3 |
| 64 | Track Head Coach (Boys) | 6,504 | 6,504 | 6,504 | 1 |
| 65 | Track Asst. Coach (Boys) | 3,902 | 3,902 | 3,902 | 2 |
| 66 | Cross Country Head Coach | 5,110 | 5,110 | 5,110 | 1 |
| 67 | Cross Country Asst. (7/8th Gr) | 1,486 | 1,486 | 1,486 | 1 |
| 68 | Soccer Head Coach (Boys) | 6,596 | 6,596 | 6,596 | 1 |
| 69 | Soccer Asst. Coach (Boys) | 3,949 | 3,949 | 3,949 | 2 |
| 70 | Soccer Head Coach (Girls) | 6,596 | 6,596 | 6,596 | 1 |
| 71 | Soccer Asst. Coach (Girls) | 3,949 | 3,949 | 3,949 | 2 |

|  | ATHLETICS (CONT'D) | 15-16 STIPEND | 16-17 STIPEND | 17-18 STIPEND | POSITIONS |
|---|---|---|---|---|---|
| 72 | Swimming Head Coach | 7,526 | 7,526 | 7,526 | 1 |
| 73 | Swimming Asst. Coach | 4,739 | 4,739 | 4,739 | 1 |
| 74 | Swimming Asst./Diving Coach | 4,739 | 4,739 | 4,739 | 1 |
| 75 | Wrestling Head Coach | 7,572 | 7,572 | 7,572 | 1 |
| 76 | Wrestling Asst. Coach | 4,785 | 4,785 | 4,785 | 2 |
| 77 | Wrestling Asst. Coach (7/8th Gr.) | 1,904 | 1,904 | 1,904 | 1 |
| 78 | Tennis Head Coach (Boys) | 5,714 | 5,714 | 5,714 | 1 |
| 79 | Tennis Asst. Coach (Boys) | 3,438 | 3,438 | 3,438 | 1 |
| 80 | Tennis Head Coach (Girls) | 5,714 | 5,714 | 5,714 | 1 |
| 81 | Tennis Asst. Coach (Girls) | 3,438 | 3,438 | 3,438 | 1 |
| 82 | Golf Coach | 4,785 | 4,785 | 4,785 | 1 |
| 83 | Golf Asst. Coach | 1,997 | 1,997 | 1,997 | 1 |
| 84 | Cheerleader Coach, HS (Winter) | 4,785 | 4,785 | 4,785 | 1 |
| 85 | Cheerleader Coach, HS (Fall) | 4,785 | 4,785 | 4,785 | 1 |
| 86 | Cheerleader Coach, Asst. (Fall) | 1,997 | 1,997 | 1,997 | 2 |
| 87 | Cheerleader Coach, Asst. (Winter) | 1,997 | 1,997 | 1,997 | 2 |
| 88 | Field Hockey Head Coach | 6,596 | 6,596 | 6,596 | 1 |
| 89 | Field Hockey Asst. Coach | 3,949 | 3,949 | 3,949 | 1 |
| 90 | Field Hockey Asst. Coach (9th Gr.) | 3,949 | 3,949 | 3,949 | 1 |
| 91 | Field Hockey Coach (7/8th Gr.) | 1,904 | 1,904 | 1,904 | 2 |
| 92 | Basketball Head Coach (Girls) | 8,502 | 8,502 | 8,502 | 1 |
| 93 | Basketball Asst. Coach (Girls) | 5,110 | 5,110 | 5,110 | 1 |
| 94 | Basketball Asst. Coach (Gr. 9, Girls) | 5,110 | 5,110 | 5,110 | 1 |
| 95 | Basketball Asst. Coach (Gr. 7/8, Girls) | 1,904 | 1,904 | 1,904 | 1 |
| 96 | Softball Head Coach | 6,736 | 6,736 | 6,736 | 1 |
| 97 | Softball Asst. Coach | 4,041 | 4,041 | 4,041 | 3 |
| 98 | Track Head Coach (Girls) | 6,504 | 6,504 | 6,504 | 1 |
| 99 | Track Asst. Coach (Girls) | 3,902 | 3,902 | 3,902 | 2 |
| 100 | Indoor Track Head Coach | 6,504 | 6,504 | 6,504 | 1 |
| 101 | Indoor Track Asst. Coach | 3,902 | 3,902 | 3,902 | 1 |
| 102 | Volleyball Head Coach (Boys) | 6,596 | 6,596 | 6,596 | 1 |
| 103 | Volleyball Asst. Coach (Boys) | 3,949 | 3,949 | 3,949 | 1 |
| 104 | Volleyball Head Coach (Girls) | 6,596 | 6,596 | 6,596 | 1 |
| 105 | Volleyball Asst. Coach (Girls) | 3,949 | 3,949 | 3,949 | 1 |
| 106 | Lacrosse Head Coach (Boys) | 6,596 | 6,596 | 6,596 | 1 |
| 107 | Lacrosse Asst. Coach (Boys) | 3,949 | 3,949 | 3,949 | 2 |
| 108 | Lacrosse Head Coach (Girls) | 6,596 | 6,596 | 6,596 | 1 |
| 109 | Lacrosse Asst. Coach (Girls) | 3,949 | 3,949 | 3,949 | 2 |
| 110 | Weight Room Director | 5,760 | 5,760 | 5,760 | 1 |

## CO-CURRICULAR STIPENDS, continued

\* Detention Monitor: Two positions each working 1 and 1/2 hours per day, 180 days per year.

Mileage Reimbursement Rate: The rate authorized by the State of New Jersey Regulations in the Annual State Appropriations Act for mileage, meals and lodging.

### Home Instruction/Summer School

Home Instruction/Summer School Hourly Rate: $ 34.03.

The members of the Association will forego payment for the first week (up to 40 hours) of professional development during the summer.  The remainder of time will be paid at the negotiated *Home Instruction/Summer School* rate as reference above. This will apply to a single workshops/training that exceeds one week.

There will be a maximum limit of two (2) staff members compensated for a workshop/training.
(e.g. - For the proposed 3 week, 14 day training in July)

- o   Week 1
  - ▪   Mon-Thurs – 6 hours per day (no payment)
  - ▪   Friday – 4 hours (no payment)

- o   Week 2
  - ▪   Mon-Thurs – 6 hours per day (paid @ $34.03)
  - ▪   Friday – 4 hours per day (paid @ $34.03)

- o   Week 3
  - ▪   Mon-Thurs. – 6 hours per day
  - ▪   Friday – n/a

- o   Total payment = 28 hours @ $ 0.00 = $     00.00
  52 hours @ $34.03 = $1,769.56

## SCHEDULE 3
### SECRETARIAL/CLERK SALARIES
#### 2015-2016, 2016-2017 and 2017-2018

|  | 12 Month Secretary | 10 Month Secretary | 10 Month Clerk |
|---|---|---|---|
| Minimum Start Salary: | $ 31,500 | $ 26,250 | $ 16,000 |

Part-time secretaries/clerks shall be pro-rated. Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.

## SCHEDULE 4
### CUSTODIAN/GROUNDSKEEPER/MAINTENANCE SALARIES
#### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Salary: $27,196. Part-time positions shall be pro-rated.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018. Percentage for custodians in 2015/2016 is pooled amongst all custodians within the group as agreed upon.

The salary for a Groundskeeper will include a $1,000 stipend.

The salary for a Maintenance employee will include a $1,500 stipend.

## SCHEDULE 5
### FOOD SERVICE HOURLY RATES
#### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Rate: $12.00 per hour.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.

## SCHEDULE 6
### INSTRUCTIONAL AIDE SALARIES (183 Days/7 Hours per Day)
#### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Salary: $21,136. Part-time positions shall be pro-rated.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.

## SCHEDULE 7
### NON-INSTRUCTIONAL AIDE SALARIES
#### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Salary: $15,120. Part-time positions shall be pro-rated.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.

## SCHEDULE 8
## BUS DRIVER HOURLY RATES
### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Rate: **$19.50** per hour.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.
Percentage for 2015/2016 is pooled amongst all bus drivers within the group as agreed upon.

## SCHEDULE 9
## BUS AIDE HOURLY RATES
### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Rate: 10.50 per hour.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.
Percentage for 2015/2016 is pooled amongst all bus aides within the group as agreement upon.

## SCHEDULE 10
## LAVATORY/HALL AIDE HOURLY RATES
### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Rate: $9.50 per hour.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.

## SCHEDULE 11
## CHILD DEVELOPMENT AIDE HOURLY RATES
### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Rate: $10.00 per hour.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.

## SCHEDULE 12
## CURRENT SECURITY GUARD ANNUAL SALARIES
### 2015-2016, 2016-2017 and 2017-2018

Minimum Start Rate: $10.00 per hour.

Yearly increases are 2.5% for 2015-2016, 2.5% for 2016-2017, and 2.5% for 2017-2018.

# Exhibit 4



**Habitat for Humanity®**
Gloucester County

**ReStore**

425 S. Broadway
Pitman, NJ 08071
Phone: (856) 256-2004
Fax: (856) 256-0047
restore@gcrestore.com

Date of Donation: _1/11/18_

Dear Gloucester County Habitat for Humanity Supporter:

Name: _Ann D. Smith_

Address: _16 Somers Ave._

City: _Clarksboro_   State _NJ_   Zip _08020_

On behalf of Gloucester County Habitat for Humanity and the ReStore, I would like to express our gratitude for your donation of:

_700.50_   _✓#739_

_____

(Additional items on back)

Which you value at $_700.50_ (*Donor establishes value).  Your generosity is greatly appreciated.   Donations like yours will enable Gloucester County Habitat for Humanity to build additional homes for families who need a better place to live.

Thank you for sharing in our ministry and helping us turn a future homeowner's dream into reality!  Please come see us at the ReStore!  The Gloucester County Habitat for Humanity ReStore is located at 425 S. Broadway in Pitman NJ and is open Tuesday thru Friday 9 am to 5 pm and Saturday from 9am to 3pm.

Sincerely,

*Dean Floro, Restore Manager*

Received:  DEAN FLORO
Gloucester County Habitat for Humanity Representative

No Goods or Services were provided for this donation.  Gloucester County Habitat for Humanity is a Charitable Non-Profit Organization Designated as a 501 3C. Federal I.D.#58-1735524

*Internal Revenue code prohibits GCHFH from placing a value on your donation. Items donated are tax deductible at fair market value.  IRS interprets fair market value as that price which a buyer is willing to pay and a seller is willing to accept. Please retain this document for your tax records.

Ann D. Smith
16 Somers Ave.
Clarksboro, NJ 08020

January 2, 2018

NJEA
c/o Marisol Ruiz
180 W. State St.
P.O. Box 1211
Trenton, N.J. 08607-1211

Dear Ms. Ruiz,

Enclosed is my required proof of rep. fee in the amount of $700.50 to Habitat for Humanity, Gloucester County, N.J. as per our agreement. The enclosed receipt satisfies my responsibility as the objecting non-member (per Clearview Regional School District, Mullica Hill, N.J.).

Sincerely,

Ann D. Smith

---

A.D. SMITH                                    739
03-10                                  55-136/312
                                            017

Pay to the
Order of  Pitman Habitat for Humanity  $ 700.50

Seven Hundred + ———————— 50/100  Dollars

🅣 Bank
America's Most Convenient Bank®

For  Alternative to NJEA dues  Ann D. Smith

⑈031201360⑈  ⑈24650922⑈  0739



New Jersey Education Association

180 West State Street Post Office Box 1211, Trenton NJ 08607-1211
Phone 609-599-4561   Facsimile 609-599-1201
www.njea.org

635,571
ANN SMITH
15-0870-00
CLEARVIEW REG.
CLEARVIEW REG EA

**Summary of Expenses from LAFAP Application for: GLOUCESTER County**

|  | Chargable | Non-Chargable | Total |
|---|---|---|---|
| Total Administrative Expenses | $ 285,389.97 | $ 33,759.49 | $ 319,149.46 |
| Meetings, Conferences, Workshops | $ 143,265.00 | $ 0.00 | $ 143,265.00 |
| Program Expenses | $ 21,689.88 | $ 56,202.99 | $ 77,892.87 |
| Total Expenses | $ 450,344.85 | $ 89,962.48 | $ 540,307.33 |
| Percentage | 83.35% | 16.65% | |

**Summary of Expenses from LAFAP Application for: CLEARVIEW REG EA**

|  | Chargable | Non-Chargable | Total |
|---|---|---|---|
| Total Administrative Expenses | $ 11,983.47 | $ 258.03 | $ 12,241.50 |
| Meetings, Conferences, Workshops | $ 1,027.00 | $ 0.00 | $ 1,027.00 |
| Program Expenses | $ 2,629.86 | $ 1,629.45 | $ 4,259.31 |
| Total Expenses | $ 15,640.33 | $ 1,887.48 | $ 17,527.81 |
| Percentage | 89.23% | 10.77% | |

**Dues Information**

|  | National | State | County | Local | Total |
|---|---|---|---|---|---|
| Total Dues subject to Rep Fee | $ 189.00 | $ 814.00 | $ 67.50 | $ 53.00 | $ 1,123.50 |
| Percentage | 38.74% | 65.09% | 83.35% | 85.00% | 62.35% |
| Rep Fee | $ 73.00 | $ 529.00 | $ 56.20 | $ 42.30 | $ 700.50 |

700.50

ANN SMITH
16 SOMERS AVE
CLARKSBORO, NJ 08020-1316

pd in full
to Habitat
V# 739
1/11/18

# Exhibit 5

§§1-5 -
C.34:13A-5.11 to
34:13A-5.15

P.L. 2018, CHAPTER 15, *approved May 18, 2018*
Assembly, No. 3686 *(First Reprint)*

**An Act** concerning public employment relations, supplementing P.L.1941, c.100 (C.34:13A-1 et seq.), and amending P.L.1967, c.310.

**Be It Enacted** *by the Senate and General Assembly of the State of New Jersey:*

    1.    (New section) This act shall be known and may be cited as the "Workplace Democracy Enhancement Act."

    2.    (New section) The Legislature finds and declares that collective negotiations promote labor stability in the public sector and enhance the delivery and avoid the disruption of public services.  The Legislature further declares that it is in the public interest to ensure that any employee organization that has been designated as the exclusive representatives of employees in a collective negotiations unit is able to effectively carry out its statutory duties by having access to and being able to communicate with the employees it represents.

    3.  (New section) a.  Public employers shall provide to exclusive representative employee organizations access to members of the negotiations units.
    b.  Access includes, but is not limited to, the following:
    (1)  the right to meet with individual employees on the premises of the public employer during the work day to investigate and discuss grievances, workplace-related complaints, and other workplace issues;
    (2)  the right to conduct worksite meetings during lunch and other non-work breaks, and before and after the workday, on the employer's premises to discuss workplace issues, collective negotiations, the administration of collective negotiations agreements, other matters related to the duties of an exclusive representative employee organization, and internal union matters involving the governance or business of the exclusive representative employee organization; and
    (3)  the right to meet with newly hired employees, without charge to the pay or leave time of the employees, for a minimum of 30 [1]and a maximum of 120[1] minutes, within 30 calendar days from the date of hire, during new employee orientations, or if the employer does not conduct new employee orientations, at individual or group meetings.
    c.  Within 10 calendar days from the date of hire of negotiations unit employees, public employers shall provide the following contact information to an exclusive representative employee organization in an Excel file format or other format agreed to by the exclusive representative employee organization: name, job title, worksite location, home address, work telephone numbers, and any home and personal cellular telephone numbers on file with the public employer, date of hire, and work email address and any personal email address on file with the public employer.  Every 120 calendar days beginning on January 1 following the effective date of this act, public employers shall provide exclusive representative employee organizations, in

an Excel file or similar format agreed to by the employee organization, the following information for all negotiations unit employees: name, job title, worksite location, home address, work, home and personal cellular telephone numbers, date of hire, and work email address and personal email address on file with the public employer.

d.   The home addresses, phone numbers, email addresses, dates of birth, and negotiation units and groupings of employees, and the emails or other communications between employee organizations and their members, [1]prospective members, and non-members,[1] are not government records and are exempt from any disclosure requirements of P.L.1963, c.73 (C.47:1A-1 et seq.).

e.   Exclusive representative employee organizations shall have the right to use the email systems of public employers to communicate with negotiations unit members regarding collective negotiations, the administration of collective negotiations agreements, the investigation of grievances, other workplace-related complaints and issues, and internal union matters involving the governance or business of the union.

f.   Exclusive representative employee organizations shall have the right to use government buildings and other facilities that are owned or leased by government entities to conduct meetings with their unit members regarding collective negotiations, the administration of collective negotiations agreements, the investigation of grievances, other workplace-related complaints and issues, and internal union matters involving the governance or business of the union, provided such use does not interfere with governmental operations. Meetings conducted in government buildings pursuant to this section shall not be for the purpose of supporting or opposing any candidate for partisan political office, or for the purpose of distributing literature or information regarding partisan elections. An exclusive representative employee organization conducting a meeting in a government building or other government facility pursuant to this section may be charged for maintenance, security and other costs related to the use of the government building or facility that would not otherwise be incurred by the government entity.

g.   Upon the request of an exclusive representative employee organization, a public employer shall negotiate in good faith over contractual provisions to memorialize the parties' agreement to implement the provisions of subsections a. through f. of this section. Negotiations shall commence within 10 calendar days from the date of a request by the employee organization, even if a collective negotiations agreement is in effect on the effective date of this act.   Agreements between a public employer and an exclusive representative employee organization implementing subsections a. through f. of this section shall be incorporated into the parties' collective negotiations agreement and shall be enforceable through the parties' grievance procedure, which shall include binding arbitration. The requirements set forth in subsections a. through f. of this section establish the minimum requirements for access to and communication with negotiations unit employees by an exclusive representative employee organization.

h.   If the parties are unable to reach agreement within 30 calendar days from the commencement of negotiations regarding access to and communications with negotiations unit members, the exclusive employee organization or the public employer may file a petition with the Public Employment Relations Commission to resolve the negotiations dispute. Upon receipt of a petition, the commission shall appoint an arbitrator, who shall issue a binding award resolving the parties' negotiations disputes consistent with subsections a. through f. of this section. The commission shall establish a panel of arbitrators to resolve negotiations pursuant to this section and shall promulgate rules to implement this section.

i.   For the purposes of this section, "exclusive representative employee organization" means an employee organization which has been designated as the exclusive representatives of employees in a collective negotiations unit.

4.   (New section) a.   A public employer shall not encourage negotiations unit members to resign or relinquish membership in an exclusive representative employee organization and shall not encourage negotiations unit members to revoke authorization of the deduction of fees to an exclusive representative

employee organization.

   b.    A public employer shall not encourage or discourage an employee from joining, forming or assisting an employee organization.

   c.    A public employer that violates any provision of subsection a. or b. of this section shall be regarded as having engaged in an unfair practice in violation of subsection a. of section 1 of P.L.1974, c.123 (C.34:13A-5.4), and, upon a finding that the violation has occurred, the Public Employment Relations Commission, in addition to implementing any other remedies authorized by that section, shall order the public employer to make whole the exclusive representative employee organization for any losses suffered by the organization as a result of the public employer's unlawful conduct and any other remedial relief deemed appropriate.


   5.    (New section) a. All regular full-time and part-time employees of the public employer who perform negotiations unit work shall be included in the negotiations unit represented by the exclusive representative employee organization.

   b.    Negotiations unit work means work that is performed by any employees who are included in a negotiations unit represented by an exclusive representative employee organization without regard to job title, job classification or number of hours worked, except that employees who are confidential employees or managerial executives, as those terms are defined by section 1 of P.L.1941, c.100 (C.34:13A-3), or elected officials, members of boards and commissions, or casual employees, may be excluded from the negotiations unit. Casual employees are employees who work an average of fewer than four hours per week over a period of 90 calendar days.

   c.    Employees who are performing negotiations unit work and who are not included in a negotiations unit because they did not meet the threshold of hours or percent of time worked as set forth in a certification of representative, recognition clause or other provision in a collective negotiations agreement, shall be included in the negotiations unit by operation of this act, within 90 calendar days from the effective date of this act.

   d.    The Public Employment Relations Commission shall promulgate rules to implement this section, including rules to resolve disputes over the inclusion of employees performing negotiations unit work in the appropriate negotiations unit. The rules promulgated by the commission shall provide for the resolution of disputes that arise under this section, within 60 calendar days from the submission of the dispute to the commission by either the exclusive representative employee organization or the public employer.


   6.    Section 1 of P.L.1967, c.310 (C.52:14-15.9e) is amended to read as follows:

   1.    Whenever any person holding employment, whose compensation is paid by this State or by any county, municipality, board of education or authority in this State, or by any board, body, agency or commission thereof shall indicate in writing, including by electronic communications, and which writing or communication may be evidenced by the electronic signature of the employee, as the term electronic signature is defined in section 2 of P.L.2001, c.116, (C.12A:12-2), to the proper disbursing officer his desire to have any deductions made  from his compensation, for the purpose of paying the employee's dues to a bona  fide employee organization, designated by the employee in such request, and of  which said employee is a member, such disbursing officer shall make such deduction from the compensation of such person and such disbursing officer shall transmit the sum so deducted to the employee organization designated by  the employee in such request.

   [Any such written authorization may be withdrawn by such person holding employment at any time by the filing of notice of such withdrawal with the above-mentioned disbursing officer. The filing of notice of withdrawal shall be effective to halt deductions as of the January 1 or July 1 next succeeding the date on which notice of withdrawal is filed.]

<u>Employees who have authorized the payroll deduction of fees to employee organizations may revoke such authorization by providing written notice to their public employer during the 10 days following each anniversary date of their employment.  Within five days of receipt of notice from an employee of revocation of authorization for the payroll deduction of fees, the public employer shall provide notice to the employee organization of an employee's revocation of such authorization.  An employee's notice of revocation of authorization for the payroll deduction of employee organization fees shall be effective on the 30th day after the anniversary date of employment.</u>

Nothing herein shall preclude a public employer and a duly certified majority representative from entering into a collectively negotiated written agreement which provides that employees included in the negotiating unit may only request deduction for the payment of dues to the duly certified majority representative.  Such collectively negotiated agreement may include a provision that existing written authorizations for payment of dues to an employee organization other than the duly certified majority representative be  terminated.  Such collectively negotiated agreement may also include a provision specifying the effective date of a termination in deductions as of the July 1 next succeeding the date on which notice of withdrawal is filed by an employee with the public employer's disbursing officer.

This authorization for negotiation of exclusive dues deduction provisions shall not apply to any negotiating unit which includes employees of any local school district or county college.

As used in this section, dues shall mean all moneys required to be paid by the employee as a condition of membership in an employee organization and any voluntary employee contribution to a committee or fund established by such organization, including but not limited to welfare funds, political action committees, charity funds, legal defense funds, educational funds, and funds for donations to schools, colleges, and universities.
(cf: P.L.1981, c.345, s.1)


7.   This act shall take effect immediately.

————————————


"Workplace Democracy Enhancement Act."