# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| ANN SMITH, LEONARDO SANTIAGO, MICHAEL C. SANDBERG, KARL HEDENBERG, MELISSA H. POULSON, RACHEL CURCIO, | |
| Plaintiffs, | Civil No. 18-10381 (RMB/KMW) |
| v. | |
| NEW JERSEY EDUCATION ASSOCIATION, NATIONAL EDUCATION ASSOCIATION, CLEARVIEW EDUCATION ASSOCIATION, HARRISON TOWNSHIP EDUCATION ASSOCIATION, KINGSWAY EDUCATION ASSOCIATION, CLEARVIEW REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION, PHIL MURPHY, JOEL M. WEISBLATT, PAUL BOUDREAU, PAULA B. VOOS, JOHN BONANNI, DAVID JONES, | |
| Defendants. | |
| SUSAN FISCHER AND JEANETTE SPECK, on behalf of themselves and those similarly situated, | |
| Plaintiffs, | Civil No. 18-15628 (RMB/KMW) |
| v. | **OPINION** |
| PHIL MURPHY, in his official capacity as Governor of New Jersey; NEW JERSEY EDUCATION ASSOCIATION; TOWNSHIP OF OCEAN EDUCATION ASSOCIATION, | |
| Defendants. | |

**APPEARANCES:**

ZIMOLONG LLC
By: Walter S. Zimolong, Esq.
P.O. Box 552
Villanova, Pennsylvania 19085

MITCHELL LAW PLLC
By: Jonathan F. Mitchell, Esq.
106 East Sixth Street, Suite 900
Austin, Texas 78701

TALCOTT FRANKLIN P.C.
By: Talcott J. Franklin, Esq.; Shannon W. Conway, Esq.
1920 McKinney Avenue, 7th Floor
Dallas, Texas 75201
    Counsel for Ann Smith, Leonardo Santiago, Michael C.
    Sandberg, Karl Hedenberg, Melissa H. Poulson, and Rachel
    Curcio

MESSINA LAW FIRM, P.C.
By: Michael P. Laffey, Esq.
961 Holmdel Road
Holmdel, New Jersey 07733

NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION
By: William L. Messenger, Esq.; Aaron B. Solem, Esq.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
    Counsel for Susan Fischer and Jeanette Speck

STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY GENERAL
By: Melissa Dutton Shaffer, Assistant Attorney General; Jeremy M.
Feigenbaum, Assistant Attorney General; Lauren A. Jensen, Deputy
Attorney General; Jana R. DiCosmo, Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625-0112
    Counsel for Phil Murphy, in his official capacity as
    Governor of New Jersey

STATE OF NEW JERSEY, PUBLIC EMPLOYMENT RELATIONS COMMISSION
By: Don Horowitz, Senior Deputy General Counsel
495 West State Street, P.O. Box 429
Trenton, New Jersey 08625
    Counsel for Joel M. Weisblatt, Paul Boudreau, Paula B. Voos,
    John Bonani, and David Jones, in their official capacities as
    Chariman and members of the New Jersey Public Employment
    Relations Commission

ZAZZALI, FAGELLA & NOWAK, KLEINBAUM & FRIEDMAN
By: Raymond M. Baldino, Esq.; Robert A. Fagella, Esq.
570 Broad Street, Suite 1402
Newark, New Jersey 07102

BREDHOFF & KAISER, PLLC
By: Leon Dayan, Esq.; Ramya Ravindran, Esq.
805 15th Street NW, Suite 1000
Washington, DC 20005

NATIONAL EDUCATION ASSOCIATION
By: Eric Harrington, Esq.
1201 16th Street NW
Washington, DC 20036
    Counsel for National Education Association, New Jersey
    Education Association, Clearview Education Association,
    Harrison Township Education Association, Kingsway Education
    Association, and Township of Ocean Education Association

PARKER McCAY
By: Frank P. Cavallo, Jr., Esq.; Andrew W. Li, Esq.
900 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
    Counsel for Clearview Regional High School
    District Board of Education


**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

    These actions are brought in the wake of the United States

Supreme Court's decision in Janus v. AFSCME, Council 31, et al.,

138 S.Ct. 2448 (2018), which held that public sector unions could

no longer deduct compulsory "fair share" agency fees from non-

consenting employees.  In both matters presently before this

3

Court, Plaintiffs filed putative class action complaints against the Union Defendants and Governor Phil Murphy, in his official capacity (the "State Defendant"), seeking monetary and injunctive relief under 42 U.S.C. § 1983 for alleged First Amendment violations.

Plaintiffs in these cases, Susan Fischer, Jeanette Speck, Leonardo Santiago, Michael C. Sandberg, Melissa H. Poulson, and Rachel Curcio (the "Member Plaintiffs") are current or former New Jersey public school teachers who, following Janus, expressed objections to continued payment of membership dues to various local affiliates of the New Jersey Education Association ("NJEA") and the National Education Association ("NEA")(collectively, with the local affiliates, the "Union Defendants"). The Member Plaintiffs argue that their union dues authorization forms, which were signed before the Janus decision, are invalid, and were not "freely given," because employees were not afforded the option to abstain from paying any fees to the unions. Plaintiffs contend that, previously, employees were given an illusory choice between paying full union dues (with all privileges of union membership) or paying an 85-percent "fair share" representation fee (without the privileges of union membership).

The Member Plaintiffs also argue that the First Amendment gives member employees a right to withdraw from the union, and revoke union dues authorization at any given time, without

restriction.  On that point, the Member Plaintiffs argue that the revocation requirements set forth in § 52:14-15.9e of the New Jersey Employer-Employee Relations Act, N.J.S.A. § 34:13A-1, et seq. (the "EERA"), as recently amended by the Workplace Democracy Enhancement Act, P.L.2018, C.15, § 6, eff. May 18, 2018 (the "WDEA"), unconstitutionally restrict employees' First Amendment rights.

Meanwhile, Plaintiffs Ann Smith and Karl Hedenberg (the "Non-Member Plaintiffs") are teachers who never joined the union for ideological reasons and now seek a refund of agency fees paid prior to the Janus decision.  The Smith Plaintiffs also asserted claims against the members of the New Jersey Public Employee Relations Commission (the "PERC Defendants") and the Clearview Regional High School District Board of Education (the "Clearview BOE").

These matters, which involve substantially similar issues, now come before the Court upon various motions and cross-motions. Ultimately, this Court finds that the union dues authorizations, signed by Plaintiffs, were valid and enforceable contracts. Additionally, because the Union Defendants' deduction of representation fees from non-member employees was conducted in good-faith reliance on the Supreme Court decision overruled by Janus, Abood v. Detroit Bd. Of Ed., 431 U.S. 209 (1977), the Court declines to order retrospective monetary relief.

5

For the reasons outlined herein, the Motions for Summary Judgment, filed by the Smith Plaintiffs [Civ. No. 18-10381, Dkt. No. 160] and the Fischer Plaintiffs [Civ. No. 18-15628, Dkt. No. 38], will be **DENIED**, and the Cross-Motions for Summary Judgment, filed by the Union Defendants [Civ. No. 18-10381, Dkt. No. 171; Civ. No. 18-15628, Dkt. No. 40], the State Defendant [Civ. No. 18-10381, Dkt. No. 173; Civ. No. 18-15628, Dkt. No. 41], will be **GRANTED**. The Motion for Judgment on the Pleadings by the Clearview BOE [Civ. No. 18-10381, Dkt. No. 166] and the Motion to Dismiss by the PERC Defendants [Civ. No. 18-10381, Dkt. No. 169] will also be **GRANTED**. Additionally, the Fischer Plaintiffs' Motion for Class Certification [Civ. No. 18-15628, Dkt. No. 39] will be **DENIED**, as moot.

## I.    FACTUAL BACKGROUND

Upon commencement of their employment in the New Jersey public school system, Plaintiffs in this case were offered two options: (1) elect to join the NJEA-NEA and pay full union dues, which afforded full rights and privileges of union membership (such as voting rights, life insurance, and other discounts), or (2) abstain from union membership, but pay a compulsory "agency fee" of approximately 85% of full union dues, without most of the rights and privileges of union membership. Given these choices, not surprisingly, the Member Plaintiffs each opted for union

membership and signed a "NJEA-NEA Active Membership Application,"
which authorized the payment of full union dues through automatic
payroll deductions (the "Union Dues Authorization Form"). In
these Union Dues Authorization Forms, the Member Plaintiffs
agreed as follows:

> This authorization may be terminated only by prior
> written notice from me effective January 1 or July 1 of
> any year.

See Smith Pls.' Union Dues Authorizations [Civ. No. 18-
10381, Dkt. No. 140-5]; Fischer Pls.' Union Dues
Authorizations [Civ. No. 18-15628, Dkt. No. 38-3 at 5 and
Dkt. No. 38-3 at 6]. On the other hand, the Non-Member
Plaintiffs, Ms. Smith and Mr. Hedenberg, chose to forgo the
benefits of union membership, instead paying the compulsory
agency fee.

### A.    *The Workplace Democracy Enhancement Act*

Prior to May 2018, the revocation language used in the Union
Dues Authorization Forms paralleled the language in § 52:14-15.9e
of the New Jersey Employer-Employee Relations Act, N.J.S.A. §
34:13A-1, et seq., which provided that:

> Any such written authorization may be withdrawn by such
> person holding employment at any time by the filing of
> notice of such withdrawal with the above-mentioned
> disbursing office. The filing of notice of withdrawal shall
> be effective to halt deductions as of the January 1 or July
> 1 next succeeding the date on which notice of withdrawal
> is filed.

<u>Id.</u> However, on May 18, 2018, New Jersey Governor Phil Murphy

signed into law the Workplace Democracy Enhancement Act,

P.L.2018, C.15, § 6, eff. May 18, 2018, which amended N.J.S.A. §

52:14-15.9e by striking the prior revocation language and

replacing it with the following:

> Employees who have authorized the payroll deduction of fees to employee organizations may revoke such authorizations by providing written notice to the public employer during the 10 days following each anniversary date of their employment.  Within five days of receipt of notice from an employee of revocation of authorization for the payroll deduction of fees, the public employer shall provide notice to the employee organization of an employee's revocation of such authorization.  An employee's notice of revocation of authorization for the payroll deduction of employee organization fees shall be effective on the 30th day after the anniversary date of employment.

N.J.S.A. § 52:14-15.9e (as amended by the WDEA).  The WDEA

itself does not clarify what impact this new language has

on employees who signed Union Dues Authorization Forms that

contained the language with two opt-out dates.

## B.    *The <u>Janus</u> Decision*

One June 27, 2018, the United States Supreme Court issued

its decision in <u>Janus</u>, holding that "States and public-sector

unions may no longer extract agency fees from nonconsenting

employees." <u>Janus</u>, 138 S.Ct. at 2486.  In doing so, the Court

overturned forty-year-old precedent from <u>Abood</u>, which permitted

public sector unions to compel agency fees from non-member

employees for costs "germane" to collective bargaining, so long as non-members were not forced to contribute to political or ideological causes. See Abood, 431 U.S. 235-36.  The Court explained that the framework set forth in Abood failed to appreciate the inherently political nature of public sector collective bargaining and "violate[d] the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern."  Janus, 138 S.Ct. at 2460.  Moving forward, the Court stated as follows:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); see also Knox, 567 U.S., at 312-313, 132 S.Ct. 2277. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Curtis Publishing Co. v. Butts, 388 U.S. 130, 145, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (plurality opinion); see also College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 680-682, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

Janus, 138 S. Ct. at 2486.

C.  *Post-Janus Resignation and Refund Requests*

Following Janus, a number of the Member Plaintiffs informed the Union Defendants that they wished to resign their union membership and cease dues deductions, effective immediately.

On June 28, 2018, Plaintiff Michael C. Sandberg emailed his union representative and requested the immediate cessation of dues deductions.  Although his Union Dues Authorization Form entitled him to opt-out effective July 1st, the union instead attempted to dissuade Mr. Sandberg from resigning his membership before inquiring about the anniversary of his date of hire.  Mr. Sandberg's union dues continued to be deducted until the end of September 2018.  The Union Defendants contend that the continued deduction of Mr. Sandberg's dues after his written notice was an oversight[1] and that all dues deducted from July 1st through October 2018 have been refunded, with interest.

Plaintiff Melissa H. Poulson also expressed her desire to resign from the union on June 28, 2018, but did so through a telephone call to her union representative, rather than in writing.  The Union states that it rejected this telephone resignation because it was not in writing, as required by the terms of the Union Dues Authorization Form.  Ms. Poulson's union dues were deducted through the end of September 2018, which was approximately thirty days after the anniversary of her date of hire (September 1, 2003).  The Union Defendants state that they accepted Ms. Poulson's inclusion in the Second Amended <u>Smith</u>

---

[1] The Union Defendants state that Mr. Sandberg's revocation was mistakenly registered as being received on July 10, 2018, the date he sent a follow-up email to the union representative inquiring about the status of his opt-out request.

Complaint [Civ. No. 18-10381, Dkt. No. 43], which was filed on July 24, 2018, as written notice of her intent to resign, even though it was not submitted during the 10-day window following the anniversary of her date of hire.

In mid-July 2018, Plaintiffs Susan Fischer and Jeanette Speck notified the Union Defendants, in writing, of their desire to resign from the union and halt dues. However, because these notices were provided after the July 1st opt-out date, Ms. Fischer and Ms. Speck were informed that their next opportunity to resign would be thirty days after the anniversary of their dates of hire by submitting a new notice, in writing, during the 10 day period following the anniversary of their date of hire. Ms. Fischer and Ms. Speck followed the outlined procedures and dues deductions were halted in October 2018.

Plaintiff Leonardo Santiago notified his union representative, in writing, of his decision to resign from the union on August 8, 2018. Finding that Mr. Santiago's notice was too late for the July 1st revocation date, the union ceased dues deductions at the end of September 2018. By ceasing deductions thirty days after the anniversary of Mr. Santiago's date of hire, even though Mr. Santiago had not filed a new notice during the WDEA's 10-day revocation period, the Union Defendants state that Mr. Santiago benefited from an earlier opt-out date than he

otherwise would have been entitled to under the terms of his Union Dues Authorization Form.

As stated in the Fifth Amended _Smith_ Complaint [Civ. No. 18-10381, Dkt. No. 140], Plaintiff Rachel Curcio has never submitted written notice of her intent to resign from the union, despite her desire "to legally and legitimately quit paying dues to NJEA and NEA." To this Court's knowledge, Ms. Curcio continues to pay full union dues. Somewhat inconsistently, it does not seem that the Union Defendants have interpreted Ms. Curcio's inclusion in this case as written notice of her intent to resign from the union, as was done for Ms. Poulson. It appears that Ms. Curcio's position is that no opt-out is necessary, since the union should have sought her affirmative consent to continue collecting dues post-_Janus_.

Unlike the other Plaintiffs, who were full-fledged union members, Plaintiffs Ann Smith and Karl Hedenberg never joined the union. Instead, throughout their employment, Ms. Smith and Mr. Hedenberg paid the approximately 85% agency fee. Following the _Janus_ decision, the union halted any further deduction of agency fees from non-member employees, such as Ms. Smith and Mr. Hedenberg. Because the agency fees were deducted from the Non-Member Plaintiffs' salaries without their affirmative consent, they now seek a refund of all pre-_Janus_ agency fees.

D.    *Application and Enforcement of Dues Deductions*

In addition to Plaintiffs' overarching constitutional challenges to the WDEA and the validity of pre-Janus consent, the Smith Plaintiffs assert a claim against the Clearview BOE for continuing to deduct union dues from employees who had signed pre-Janus Union Dues Authorization Forms, but had not provided new "affirmative consent" authorizations, post-Janus. The Smith Plaintiffs also bring claims against the PERC Defendants for instructing employers to comply with the WDEA and for issuing orders preventing employers from soliciting post-Janus union dues authorizations from employees.

## II.    **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012).  A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of

13

the nonmoving party. Melrose, Inc. v. City of Pittsburgh, 613
F.3d 380, 387 (3d Cir. 2010).  However, a mere "scintilla of
evidence," without more, will not give rise to a genuine dispute
for trial. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.
2001).  Moreover, a court need not adopt the version of facts
asserted by the nonmoving party if those facts are "utterly
discredited by the record [so] that no reasonable jury" could
believe them. Scott v. Harris, 550 U.S. 372, 380 (2007).  In the
face of such evidence, summary judgment is still appropriate
"where the record taken as a whole could not lead a rational
trier of fact to find for the nonmoving party." Walsh v. Krantz,
386 F.App'x 334, 338 (3d Cir. 2010).

        The movant has the initial burden of showing through the
pleadings, depositions, answers to interrogatories, admissions on
file, and any affidavits "that the non-movant has failed to
establish one or more essential elements of its case." Connection
Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir.
2009).  "If the moving party meets its burden, the burden then
shifts to the non-movant to establish that summary judgment is
inappropriate." Id.  In the face of a properly supported motion
for summary judgment, the nonmovant's burden is rigorous: he
"must point to concrete evidence in the record"; mere
allegations, conclusions, conjecture, and speculation will not
defeat summary judgment. Orsatti v. New Jersey State Police, 71

F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594
F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced
Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir.
2009)("[S]peculation and conjecture may not defeat summary
judgment."). Moreover, "the court need only determine if the
nonmoving party can produce admissible evidence regarding a
disputed issue of material fact at trial"; the evidence does not
need to be in admissible form at the time of summary judgment.
FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

## III. **ANALYSIS**

In both matters presently before the Court, Plaintiffs argue
that (1) Union Dues Authorization Forms signed before the Janus
decision are invalid, (2) the First Amendment gives employees a
right to resign union membership and cease paying dues without
any temporal restrictions, and (3) the revocation language in the
WDEA is unconstitutional. This Court disagrees with Plaintiff on
the first two points. Although the Court agrees that the
revocation language in the WDEA is unduly restrictive and,
therefore, unconstitutional, the Court finds that Plaintiffs have
failed to establish standing to challenge the WDEA, because it
has never been enforced against them to their detriment.

**A.    *Validity of Pre-Janus Authorizations***

Although the Member Plaintiffs acknowledge that they signed Union Dues Authorization Forms at the commencement of their employment, Plaintiffs claim that these authorizations are invalid because they were obtained before Janus clarified their rights to abstain from paying any dues to the union.  Unlike Mr. Janus, who was an agency fee paying non-member who never agreed to any dues deduction, the Member Plaintiffs all voluntarily agreed to union membership, with full deduction of dues. However, Plaintiffs argue that the Union Authorization Dues Forms must now be considered involuntary, because Plaintiffs could not have freely and knowingly waived a right that they did not know they had (the right to avoid paying union fees as a non-member, as Janus now holds).  This argument fails as a matter of law, because "changes in intervening law – even constitutional law – do not invalidate a contract." Smith v. Bieker, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019)(citing Brady v. United States, 397 U.S. 742, 757 (1970)); see also Oliver v. Serv. Employees Int'l Union Local 668, 2019 WL 5964778, at *3 (E.D. Pa. Nov. 12, 2019)(a "subsequent change in the law does not permit a party to a contract who has enjoyed the benefit of the bargain to rescind it with the benefit of hindsight") (citing Coltec Industries, Inc. v. Hobgood, 280 F.3d 262, 274-75 (3d Cir. 2002)).

The Janus decision may have established a more appealing

alternative for Plaintiffs than what existed under the Abood

framework, but the existence of a better alternative does not

invalidate prior signed contracts.  Indeed, District Courts

around the country have already rejected similar claims, finding

that the fact that union members "voluntarily chose to pay

membership dues in exchange for certain benefits, and '[t]he fact

that plaintiffs would not have opted to pay union membership fees

if Janus had been the law at the time of their decision does not

mean their decision was therefore coerced.'" Babb v. California

Teachers Ass'n, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019)(quoting

Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1007–09 (D. Alaska

2019)); see also Belgau v. Inslee, 2018 WL 4931602, at *5 (W.D.

Wash. Oct. 11, 2018)("Plaintiffs' assertions that they didn't

knowingly give up their First Amendment rights before Janus rings

hollow. Janus says nothing about people [who] join a Union, agree

to pay dues, and then later change their mind about paying union

dues."); O'Callaghan v. Regents of the Univ. of Cal., 2019 WL

2635585, at *3 (C.D. Cal. June 10, 2019)("[N]othing in Janus's

holding requires unions to cease deductions for individuals who

have affirmatively chosen to become union members and accept the

terms of a contract that may limit their ability to revoke

authorized dues-deductions in exchange for union membership

rights, such as voting, merely because they later decide to

resign membership."). Plaintiffs have a right to resign from the union and cease paying union dues, but Janus does not serve to invalidate union members' previously signed Union Dues Authorization Forms.

**B.    *Post-Janus Resignation Rights***

The Member Plaintiffs also argue that, in addition to invalidating pre-Janus dues authorizations, the Janus decision broadly gives union member employees a right to resign their membership at any given time.  This Court finds no support for this assertion.

As previously noted, Janus does not invalidate the existing contractual relationships between unions and their members. See, e.g., Smith v. Bieker, 2019 WL 2476679, at *2 ("Smith contends that Janus entitles him to elect to stop paying dues to the union at the drop of a hat. But Janus did not concern the relationship of unions and members; it concerned the relationship of unions and non-members. Besides, 'the First Amendment does not confer ... a constitutional right to disregard promises that would otherwise be enforced under state law'")(quoting Cohen v. Cowles Media Co., 501 U.S. 663, 672 (1991)).

The Member Plaintiffs in these matters all agreed to be bound by authorization agreements that set forth an opt-out procedure (prior written notice) with two available resignation

dates (January 1st and July 1st of each year).  It is possible
that unreasonably restrictive or burdensome opt-out procedures
could be found to impinge upon First Amendment rights, but this
is not the case here.  The available resignation procedures give
union members reasonable opportunities to exercise their First
Amendment rights to resign from the union.  In fact, after the
passage of the WDEA, Plaintiffs were apparently afforded a third
possible resignation date (effective thirty days after the
employee's anniversary of employment).  Plaintiffs, such as Ms.
Curcio, may freely resign from the union, but they must do so
under the terms of the Union Dues Authorization Forms.  Because
the Member Plaintiffs' resignations were all processed under the
terms of their agreements, or under more advantageous terms,
Plaintiffs are not entitled to the reimbursement of union dues
deducted in the months before their union resignations took
effect.

### C.   *Workplace Democracy Enhancement Act*

Next, Plaintiffs argue that the restrictive revocation
procedure set forth in N.J.S.A. § 52:14-15.9e, as amended by the
WDEA, violates their First Amendment rights to resign from the
union.  The plain language of the revocation language in N.J.S.A.
§ 52:14-15.9e restricts union members to one opt-out date per
year, with a draconian requirement that employees can only do so

by submitting written notice in a very specific 10-day window (which would be unique to each employee). If it were enforced as written, the Member Plaintiffs are correct that the WDEA's revocation procedure would, in the absence of a contract providing additional opt-out dates and a more reasonable notice requirement (as is present here), unconstitutionally restrict an employee's First Amendment right to opt-out of a public-sector union. However, in these cases, with discovery now closed, the record indicates that the WDEA's revocation procedure was not enforced against Plaintiffs as written. Because Plaintiffs have not established that they suffered (or are likely to suffer) an "injury-in-fact," based on the manner in which the WDEA's revocation procedure was enforced against them, they lack standing to challenge its constitutionality.

The record demonstrates that neither the State Defendant nor the Union Defendants strictly enforced the WDEA's revocation procedure against restrictions against Plaintiffs. In these cases, the Union Defendants continued to honor the multiple opt-out dates set forth in the Union Dues Authorization Forms. In fact, rather than using the WDEA to limit Plaintiffs to a single opt-out opportunity, the Union Defendants' applied the WDEA in a way that afforded Plaintiffs a third opt-out opportunity, in addition to the two opportunities already available under the terms of the Union Dues Authorization Forms. This additional

resignation date (which ended up being at the end of September 2018), permitted Ms. Poulson, Mr. Santiago, Ms. Fischer, and Ms. Speck to resign their union memberships earlier than they otherwise would have been entitled to under the previous EERA language or the terms of the Union Dues Authorization Forms (January 1, 2019). The Union Defendants also did not force Ms. Poulson and Mr. Santiago to comply with the strict terms of the WDEA's unreasonable 10-day notice period and, instead, consistent with the terms of the Union Dues Authorization Forms, only required Ms. Poulson and Mr. Santiago to submit prior written notice of their desire to opt-out.

Based on the record, the Member Plaintiffs cannot establish that they have suffered (or are likely to suffer) an "injury-in-fact" to their First Amendment rights. "To have Article III standing, [Plaintiffs] must first demonstrate that [they have] suffered an injury-in-fact. This injury must be concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical." Pitt News v. Fisher, 215 F.3d 354, 360 (3d Cir. 2000)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). If Plaintiffs demonstrated that State Defendant or the Union Defendants were using the WDEA's revocation language to override and narrow contractually agreed upon resignation rights,

such enforcement would certainly have established an injury.[2] However, no such circumstances existed in these matters. Here, the Union Defendants used the WDEA's newly created opt-out date to supplement, rather than narrow, the two opt-out dates that union members were already entitled to under the Union Dues Authorization Forms. As such, the Member Plaintiffs were never harmed and, in this instance, benefited from the manner in which the Union Defendants applied the WDEA.[3] Therefore, Plaintiffs lack Article III standing to challenge the constitutionality of the WDEA revocation language.

**D.** ***Refund of Agency Fees***

In light of <u>Janus</u>, the Non-Member Plaintiffs argue that they should be reimbursed for agency fees that were deducted from

---

[2] In this case, this Court need not determine the precise parameters of a constitutionally permissible opt-out procedure. This Court, however, would go so far as to say that, if Defendants were to enforce the statute in the absence of additional opt-out opportunities, the WDEA's revocation procedure – which allows only a single opt-out opportunity and can be taken advantage of only through a perfectly-timed written notice – would unconstitutionally infringe upon an employee's First Amendment rights. Moreover, even if the WDEA's revocation procedure was incorporated into a contract, such as the Union Dues Authorization Form, it would be unconstitutional if it were the public employee's sole method to resign membership.

[3] Although Ms. Curcio has not yet resigned from the Union, she freely admits that she has not even tried to do so. Because the Union Defendants and the State Defendants have, thus far, not held union members to the strict resignation procedures outlined in the WDEA, Ms. Curcio's potential to suffer an "injury-in-fact" due to the WDEA is "conjectural or hypothetical."

their pay for years, without their affirmative consent, to subsidize the unions in violation of the First Amendment.  While Plaintiffs' arguments are well-taken, this Court finds that the Union Defendants would prevail based upon their good-faith belief that these agency fee deductions, which were sanctioned by the Supreme Court in Abood, complied with statutory and constitutional law.  Indeed, numerous federal courts, including some within the Third Circuit, have already held that "good-faith reliance on prior precedent defeats refund claims in the aftermath of Janus." Oliver, 2019 WL 5964778, at *7 (E.D. Pa. Nov. 12, 2019); see also Babb, 378 F. Supp. 3d at 871-72.  This Court also notes that in Janus, the Supreme Court stated as follows:

> We recognize that the loss of payments from nonmembers may cause unions to experience unpleasant transition costs in the short term, and may require unions to make adjustments in order to attract and retain members. But we must weigh these disadvantages against the considerable windfall that unions have received under Abood for the past 41 years. It is hard to estimate how many billions of dollars have been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment. Those unconstitutional exactions cannot be allowed to continue indefinitely.

Janus, 138 S. Ct. at 2485-86.  In noting that the "windfall" received by unions over the past forty years offsets the short-term adjustments and losses that unions would experience by losing agency fee contributions, the Supreme Court seemingly acknowledged that unions would not be forced to return all money

collected in reliance on Abood.  Thus, the Supreme Court's language suggests that it only intended for Janus to apply prospectively, rather than retroactively.

### E.  *Clearview BOE and the PERC Defendants*

Based on this Court's findings as to the overarching issues in this case, the claims against the Clearview BOE and the PERC Defendants must be dismissed.  Indeed, because this Court finds that the pre-Janus Union Dues Authorization Forms remained valid and that Plaintiffs could not resign from the union without temporal restrictions, the Clearview BOE did not violate the Plaintiffs' constitutional rights by continuing to deduct dues and the PERC Defendants did not violate Plaintiffs' rights by ordering the school districts to continue honoring the existing authorization agreements.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' respective Motions for Summary Judgment [Civ. No. 18-10381, Dkt. No. 160; Civ. No. 18-15628, Dkt. No. 38], will be **DENIED**, and the Cross-Motions for Summary Judgment, filed by the Union Defendants [Civ. No. 18-10381, Dkt. No. 171; Civ. No. 18-15628, Dkt. No. 40], the State Defendant [Civ. No. 18-10381, Dkt. No. 173; Civ. No. 18-15628, Dkt. No. 41], will be **GRANTED.**  Additionally, the Motion for Judgment on the Pleadings by the Clearview BOE [Civ. No. 18-

10381, Dkt. No. 166] and the Motion to Dismiss by the PERC

Defendants [Civ. No. 18-10381, Dkt. No. 169] will be **GRANTED**.

Finally, the Fischer Plaintiffs' Motion for Class Certification

[Civ. No. 18-15628, Dkt. No. 39] will be **DENIED**, as moot.

Appropriate Orders shall issue on this date.

DATED: November 27, 2019

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE